## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORI SANBORN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VIRIDIAN ENERGY, INC.,<br><br>Defendant. | No. 3:14-cv-1731<br><br><br>**CLASS ACTION COMPLAINT** |

1.      Plaintiff Lori Sanborn ("Plaintiff"), on behalf of herself and all persons similarly situated, by and through her attorneys, alleges as follows.

### INTRODUCTION

2.      Plaintiff Lori Sanborn brings this action on behalf of herself and a class of all similarly situated customers against Defendant Viridian Energy, Inc. ("Viridian") in Connecticut and Massachusetts, arising out of Viridian's unfair, deceptive, unconscionable and bad faith billing for "supplying" electricity to residential consumers.

3.      Viridian entices residential customers to sign up for its service by offering low initial rates for electricity.  When the "teaser rate" period expires, however, customers are rolled over into a month-to-month variable rate plan with exorbitant rates.

4.      Viridian represents in its marketing materials and in its contracts that it offers a "variable rate" electricity plan to residential consumers that is tied to the market rate in the wholesale power market.  However, contrary to Viridian's representations and obligations, Viridian consistently and improperly charges an extraordinarily high premium rate for electricity *regardless* of fluctuations in the underlying market price.  Indeed, as set forth below, Viridian

routinely charges its consumers *four, five and even six times* the underlying market rate, notwithstanding Viridian's representations that its variable rates "reflect" monthly wholesale electric prices.

5. Specifically, Viridian's rates go *up* to match spikes in the underlying market price. However, when the market price goes *down*, Viridian's rate remains at an inflated level several times higher than the market rate. Through this scheme, Viridian subjects consumers to consistent and unlawful "heads I win, tails you lose" pricing.

6. This unfair and deceptive scheme of charging inflated electric prices that match *increases* in the underlying market price while failing to pass-along *decreases* is intentionally designed to maximize revenue for Viridian.

7. Plaintiff and other Viridian customers have been injured by Viridian's unlawful practices. Accordingly, Plaintiff, on behalf of herself and the class, seeks damages, restitution and injunctive relief for Viridian's violation of state consumer protection statutes (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and unjust enrichment (Count III).

## PARTIES

8. Plaintiff Lori Sanborn is a resident of Stoughton, Massachusetts.

9. Defendant Viridian Energy, Inc. is a corporation organized under the laws of Nevada whose principal place of business is located at 1055 Washington St., Stamford, CT 06901.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this civil action under 28 U.S.C. § 1332(d) because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in controversy exceeds $5,000,000 and there are members of the Class who are citizens of a different state than Defendant Viridian.

11.     This Court has personal jurisdiction over Viridian because Viridian maintains an office in Connecticut and because Viridian has tens of thousands of customers in Connecticut and thereby conducts business in this state.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Viridian resides in Stamford, Connecticut.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**A.      Energy Deregulation and the Role of Electric Suppliers**

13.     In the late 90s and early 2000s, many states moved to deregulate at least part of the electricity supply services then performed by large public utilities.  Delivery of electricity to a consumer requires both the creation of electricity and the transmission of that electricity from the power plant to the consumer. The typical pattern was to require the public utilities to divest their power generation assets such as coal, gas and nuclear power plants.  But, the regulated utilities continued distributing power from these power plants to consumers through transmission lines.

14.     When deregulation occurred, the business of power *supply* was opened to competition and consumers were allowed to select the companies from whom they would purchase their power.  However, states generally set a "standard offer" or "default rate," available to all customers in each public utility's service area.  In some states, such as Connecticut, the standard offer is a single, flat rate which is fixed for a period of months, while other states such as Massachusetts have both a fixed rate standard offer and a standard offer rate that varies each month.

15.     As a result of the deregulation of power supply, several different parties are now involved in the supply of electric power to residential consumers.  Certain companies, such as

3

Dominion, produce electric power ("Generation Companies"). Other companies, such as Connecticut Light & Power ("CL&P") in Connecticut and the National Grid in Massachusetts, distribute electricity from Generation Companies to the end user ("Distribution Companies"). Although some Generation Companies have sold power directly to consumers, including residential customers, most sell the power on the wholesale market to companies that market to retail customers ("Electric Suppliers").

16.     The market for wholesale power in the New England States is under the administration of an independent, not-for-profit corporation formed in accordance with the recommendations of the Federal Energy Regulatory Commission, called ISO New England (for "Independent System Operator"). ISO New England coordinates and directs the generation and flow of electricity throughout the region, ensuring that electric supply exactly meets demand throughout the network. The wholesale market managed by ISO New England determines where and when electricity will be made by Generation Companies and the wholesale prices that will be paid for that electricity through competitive bids. "More than 500 companies participate in these markets, buying and selling between $6-$14 billion of electric power and related products annually." http://www.iso-ne.com/about/what-we-do/three-roles/administering-markets. The bid process determines the Generation Company that will make each unit of electricity and the wholesale price each Energy Supplier will pay to each Generator for each unit of energy delivered to specific locations throughout the region.

17.     Electric Suppliers play a middleman role:  they purchase power directly or indirectly from Generation Companies and sell that electricity to end-user consumers. However, Electric Suppliers do not *deliver* that electricity to consumers. Rather, Generation Companies deliver the electricity to Distribution Companies, which in turn deliver the electricity to the

4

ultimate consumer.  Electric Suppliers merely buy electricity at the wholesale rate and then sell that power to end-users with a mark-up. Thus, Electric Suppliers are essentially brokers and traders: they neither make nor deliver electricity, but merely buy electricity from the Generation Companies and re-sell it to end users.

18.     Like other Electric Suppliers, Viridian purchases power on the wholesale market and sells it to consumers.  As Viridian admits in its "Disclosure Label," the New England power grid receives power from a variety of power plants and transmits that power throughout New England as needed. Viridian buys and resells "System Power" pursuant to "system power contracts," which is power purchased from the New England regional electricity market, not from specific power generation pants.

19.     Viridian's prices are not approved by states' regulatory authorities such as Connecticut's Public Utility Regulatory Authority ("PURA") or the Massachusetts Department of Public Utilities. Rather, Viridian and other Electric Suppliers are free to set their own rates for supplying electricity to consumers.  And Viridian, like all other suppliers, relies upon the Distribution Companies to deliver the electricity it purchases on the wholesale market to its customers.  The Distribution Companies charge separately for their services, using rates that are reviewed and approved by the states' regulatory agencies.

20.     Electric Suppliers may contract with consumers to supply electricity on either a "Fixed" or "Variable" rate basis.  Under a Fixed contract, the Supplier agrees to supply electricity at a set rate for a certain number of months.

21.     Under a Variable rate contract, the Supplier may vary the rate it charges on a periodic basis (often monthly).

**B.      Viridian's Excessive Rates**

22.      Viridian has offered various Fixed and Variable rate plans, including contracts that charge a low promotional "teaser" rate which is fixed for a set number of months before automatically rolling into a Variable rate plan.

23.      Throughout its contracts, marketing materials and required disclosures, Viridian represents that its Variable rate plan is based upon the wholesale market rate.  Indeed, that is the entire hook by which Viridian attracts consumers to Variable rate plans.

24.      For example, Viridian's Connecticut "Disclosure Label" says only that "any potential savings will fluctuate with month-to-month market conditions." The Massachusetts Disclosure Statement says that the variable rate "may fluctuate from month to month' based on applicable "wholesale market conditions."

25.      Most importantly, Viridian's Variable rate "Terms of Service" for both Massachusetts and Connecticut also make this express link between the Variable rate charged by the company and the underlying wholesale market rate set by ISO-New England and charged by Generation Companies, stating the variable rate "will vary based on several factors, including but not limited to, market conditions, operations costs, and other factors. . . ."

26.      Accordingly, a reasonable consumer would understand that Viridian's Variable rates fluctuate in a manner correlated with the underlying wholesale market rate, and that, although prices would go up when wholesale prices rose, they would also go down when wholesale prices decreased, enabling consumers to take advantage of market lows.

27.      Instead, and contrary to reasonable consumer expectation, Viridian used its Variable rates as a pure profit center, increasing the rates charged to class members when

wholesale prices rose, but staying at a level as much as ***four, five or even six times*** the wholesale market rates when the wholesale prices fell.

28.     For example, the chart below sets forth (1) the average wholesale price (in dollars per kilowatt hour) of electricity delivered to Connecticut for each month during the period from October 2013 through October 2014, as reported by ISO-New England; (2) the non-promotional variable rates Viridian charged to consumers in Connecticut for 100% renewable electricity for those same months;[1] and (3) the resulting percentage premium that Viridian charged consumers over the wholesale rate on an average per-month basis:

|  | OCT-13 | NOV-13 | DEC-13 | JAN-13 | FEB-14 | MAR-14 | APR-14 | MAY-14 | JUN-14 | JUL-14 | AUG-14 | SEPT-14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Average Wholesale** | $0.0345 | $0.0447 | $0.088 | $0.1664 | $0.1539 | $0.1092 | $0.045 | $0.0373 | $0.0381 | $0.0379 | $0.0305 | $0.0345 |
| **Viridian** | 0.1449 | 0.1449 | $0.1549 | $0.1649 | $0.2349 | $0.2399 | $0..2399 | $0..2399 | $0..2399 | $0.2349 | $0.2349 | $0.2349 |
| Viridian Premium ***ABOVE*** Wholesale Price | **320%** | **224%** | **76%** | **-1%** | **53%** | **120%** | **433%** | **543%** | **529%** | **520%** | **670%** | **581%** |

29.     There was, accordingly, a huge disparity between the wholesale rates Viridian paid for power[2] and the variable rates that it charged its customers.  This is graphically shown by the following chart, which shows the wholesale price paid by Viridian and the retail price it charged

---

[1] Connecticut presently only requires that electricity be derived from 18% renewable sources.  However, upon information and belief, the increased cost to Viridian for providing 100% (rather than 18%) renewable energy is negligible.  For example, CL&P offers a "Sterling Energy" ***100%*** renewable energy plan for only ***$0.01*** more than its Standard rate.

[2] The wholesale price for power in the three pricing zones ISO New England established in Massachusetts and the single pricing zone it established in Connecticut is not always identical, but it is always very close.  For example, since January of 2012, the difference in the monthly average wholesale price in Connecticut and in Southeast Massachusetts where Plaintiff resides was no more than 4 percent for 30 months; in the remaining three months, it was 5 percent, 8.5 percent and 9 percent.

its Connecticut customers during the period from October 2013 through October 2014 (with CL&P's Standard Service Rate during the same period added for comparison):



30.     Accordingly, Viridian routinely charges class members a Variable electric rate that is as much as six times higher than the underlying market rate.  Additionally, upon information and belief, none of Viridian's non-promotional variable rates have matched, much less beat, the standard offer fixed rates in over two years.

31.     Moreover, Viridian's essential representation to consumers concerning its Variable pricing plan – that the Variable rate is "market-based"– is patently false.  Although Viridian *increases* its Variable rate in response to *rising* wholesale prices (as illustrated in the period from November 2013 through January 2014 above), Viridian fails to *decrease* its prices in response to a ***falling*** wholesale market price.  For example, the average wholesale price dropped every month

8

from January to May of 2014, ending the period at a price that was 78 percent lower than the January high. During the same period, Viridian's price actually *rose* by *42* percent from January to February, and *stayed* at the astronomical rate of 23.49 cents per kilowatt hour from February through September. At one point, Viridian's price premium was an incredible *670 percent* above the wholesale price.

32.     Viridian's Variable rate for consumers who did not purchase 100% renewable electricity was only slightly less egregious. For example, throughout the summer and fall of 2014, Viridian charged these customers 17.49 cents rather than 23.99 cents per kwh, which is still, outrageously, roughly *five times* the wholesale rate.[3]

33.     Notably, Viridian charges these exorbitant premiums without adding any value to the consumer whatsoever. As detailed above, Viridian does not either produce or transport electricity. It has no role in running or maintaining power plants or power lines; it does no hook-ups or emergency response. Indeed, Viridian does not even handle customer billing: that, too, is handled by the Distribution Company. Essentially, all that Viridian does is act as a trader in the transaction. Yet it charges several multiples of the amount the Generation Companies receive for making electricity and the Distribution Companies receive for transmitting power, maintaining power lines, and handling emergency services and customer billing and calls.[4]

---

[3] Given that it does not cost Energy Suppliers that much more to offer plans that can be marketed as "100 percent renewable," Viridian's decision to charge its 100 percent renewable customers over *six cents more* per kilowatt hour flies in the face of the Company's claim that its "unique and inspiring value proposition" is to "[c]hange the way customers see green energy" and demonstrate "that green energy *doesn't have to cost more* . . . ." http://www.viridian.com/Custom/Cust077/PersonalPages/ AboutViridian.aspx (emphasis added).

[4] For example, CL&P currently charges 6.4 cents per kilowatt hour plus a flat charge of $16 for distribution services, while Viridian's price for its services is 23.49 cents per kilowatt hour for customers on its 100 percent renewable plan. According to the U.S. Energy Information Administration, the average household in       Connecticut       uses       731       kilowatt       hours       per       month. http://www.eia.gov/tools/faqs/faq.cfm?id=97&t=3   Such an average household would pay CL&P about

C.    **Plaintiff Lori Sanborn Suffered Injury Due To Viridian's Improper Business Practices**

34.    Plaintiff Lori Sanborn has been on Viridian's Variable rate plan since January, 2014.

35.    Plaintiff reasonably relied on Viridian's false statements that Viridian's Variable rate was based on the underlying wholesale market rate.

36.    Plaintiff paid Viridian's exorbitant Variable electricity rates and thereby suffered monetary damages as a result of Viridian's conduct as set forth above. For example, from April through October, 2014, Plaintiff paid Viridian 17.49 cents per kwh, the same amount charged comparable customers in Connecticut, roughly *5 times* the wholesale rate.[5]

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure behalf of herself and the following class of similarly situated persons:

> All persons enrolled in a Viridian Energy, Inc., variable rate electric plan in connection with a property located within Connecticut and Massachusetts at any time within the applicable statutes of limitations preceding the filing of this action through and including the date of class certification (the "Class").

38.    Plaintiff reserves the right to modify or amend the definition of the proposed Class or to propose sub-classes as might be necessary or appropriate.

39.    Excluded from the Class are Defendant, including any parent, subsidiary, affiliate or person controlled by Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families.

---

$63 for distribution services, while paying Viridian $171 – nearly three times as much.

[5] As noted above, the wholesale rates in southeastern Massachusetts vary slightly from the wholesale rates in Connecticut referenced in paragraph 28 above. They variance was typically less than five percent and never more than nine percent.

40.     The proposed Class and meets all requirements for class certification.  The Class satisfies the numerosity standard.  The Class is believed to number in the tens of thousands of persons.  As a result, joinder of all class members in a single action is impracticable.   On information and belief, class members can be identified by Viridian and Distribution Company records.

41.     There are questions of fact and law common to the Class which predominate over any questions affecting only individual members.  The questions of law and fact common to the Class arising from Viridian's actions include, without limitation, whether Viridian:

       a.  Committed unfair or deceptive trade practices by its Variable electric rate policies and practices;

       b.  breached its covenant of good faith and fair dealing with regard to its Variable electric rate contracts;

       c.  was unjustly enriched through its Variable electric rate policies and practices; and

       d.  continues to commit wrongdoing through its Variable electric rate policies and practices.

42.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity to other available methods for the fair and efficient adjudication of this controversy.

43.     Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the members of the class she seeks to represent.  The interests of the members of the Class will be fairly and adequately protected by Plaintiff and her undersigned counsel, who have extensive experience prosecuting complex class action litigation.

44.     Plaintiff's claims are typical of the claims of the Class because they arise out of the same conduct, policies, and practices of Viridian with respect to its Variable electric rate policies and practices.  Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other putative class member.

45.     Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy.  It would be impracticable and undesirable for each class member who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

46.     Notice can be provided to Class members by using techniques and forms of notice similar to those customarily used in other class actions.

## CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF STATE UNFAIR TRADE PRACTICES ACTS,

47.     Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

48.     Plaintiff brings this count individually and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the Class.

49.     Viridian is engaged in "trade" and "commerce" as it offers electricity for sale to consumers.

50.     Viridian's conduct as alleged above constitutes unfair practices:

a.  Viridian's contracts do not accurately describe the rates the customer will be paying or the circumstances under which the rates may change.

b.  Viridian's acts and practices with regard to its exorbitant Variable electric rates as alleged above are immoral, unethical, oppressive and unscrupulous.

c.  Viridian's conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for electricity but for Viridian's immoral, unethical, oppressive and unscrupulous practices and procedures.  Consumers have thus overpaid for their electricity and such injury is not outweighed by any countervailing benefits to consumers or competition. No benefit to consumers or competition results from Viridian's conduct, nor could consumers reasonably have avoided the injury.

51.    Viridian's conduct as alleged above also constitutes a deceptive act or practice. Viridian's Variable electric rate representations as set forth above were and are likely to mislead consumers and Viridian intended that consumers rely upon those representations.  Plaintiff and other reasonable consumers reasonably interpreted Defendant's representations to mean that Viridian's Variable rates track the underlying wholesale power rates (when in fact they do not). Viridian's representations were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of power from Viridian pursuant to Variable rate contracts.

52.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiff and the Class to suffer an ascertainable loss and substantial injury when they paid an exorbitant premium for electricity over wholesale market rates.

13

53.     The foregoing actions constitute unfair and deceptive practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq* the Massachusetts Regulation of Business Practices for Consumers' Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 1.

54.     Plaintiff and the Class are entitled to recover damages and other appropriate relief, as alleged below.

## COUNT II

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

55.     Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

56.     All contracts contain an implied covenant of good faith and fair dealing, including Plaintiff's and Class members' contracts with Viridian.

57.     Viridian's Terms of Service with customers gives Viridian discretion concerning the monthly rates charged under Variable rate contracts and any increases or decreases to the rate to reflect the changes in the wholesale power market.

58.     As alleged herein, Viridian has used its discretion to bill exorbitant rates that are not tied to the wholesale market and to *increase* the monthly Variable rate when wholesale markets rise, but not to commensurately *decrease* the monthly Variable rate when wholesale markets fall. As a result, consumers are billed exorbitant electric rates several multiples of the wholesale market rate.

59.     Viridian's performance of its discretionary functions under the Terms of Service as alleged herein to maximize its revenue from Variable electric rates impedes the right of Plaintiff

and other Class Members to receive benefits that they reasonably expected to receive under the contract.

60.     On information and belief, Viridian's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Viridian's revenue at the expense of its customers and in contravention of their reasonable expectations as customers of Viridian.

61.     Viridian has breached the covenant of good faith and fair dealing in the Terms of Service through its Variable electric rate policies and practices as alleged herein.

62.     Plaintiff and members of the putative Class have sustained damages as a result of Viridian's breaches as alleged herein.

## COUNT III

### UNJUST ENRICHMENT

63.     Plaintiff repeats and realleges the preceding and subsequent paragraphs as though set forth herein.

64.     Viridian has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein to the detriment of Plaintiff and the Class.

65.     Viridian has been enriched by a benefit in the form of payment of exorbitant Variable electric rates.

66.     Viridian's enrichment was at the expense of Plaintiff and the Class.

67.     It would be unjust to allow Viridian to retain the benefit.

68.     Plaintiff and the Class are entitled to disgorgement and restitution of all wrongfully-obtained gains received by Viridian as a result of its wrongful conduct alleged herein.

69.     Plaintiff and members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the putative Class, requests that this Court enter judgment against Defendant and in favor of Plaintiff and award the following relief:

(a)     Certification of the proposed Class;

(b)     Injunctive relief enjoining Viridian from charging exorbitant Variable electric rates under their current policies and from engaging in the wrongful, deceptive, unfair, and unconscionable practices alleged herein;

(c)     Damages in an amount to be determined at trial, including actual and punitive damages;

(d)     Disgorgement and restitution of all exorbitant rates paid to Viridian by Plaintiff and the putative Class as a result of the wrongs alleged herein;

(f)     Pre- and post- judgment interest at the maximum rate permitted by applicable law;

(g)     Attorneys' fees, costs, and expenses as available under the law.

(h)     Such other and additional relief as the Court may find just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: November 19, 2014

PLAINTIFF

By: Robert A. Izard (ct01601)
Seth R. Klein (ct18121)
Nicole A. Veno (ct29373)
Izard Nobel LLP
29 South Main Street, Suite 305
West Hartford, CT  06107
(860) 493-6292