**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| LORI SANBORN, on behalf of herself and all others similarly situated,<br><br>          Plaintiff,<br>   v.<br><br>VIRIDIAN ENERGY, INC.,<br><br>          Defendant. | No. 3:14-cv-01731 (SRU) |

**DEFENDANT VIRIDIAN ENERGY, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# **TABLE OF CONTENTS**

I. PRELIMINARY ARGUMENT IN REPLY ................................................................................1

II. ARGUMENT ...............................................................................................................................2

    A. Plaintiff Fails To State A Claim Under CUTPA or the MCPA ...............................2

        1. Plaintiff Concedes That Viridian Never Represented That Its Rates Would Track the Wholesale Market Rate Exclusively ...............................2

        2. Plaintiff Fails to Explain How Rule 9(b) Is Satisfied .................................5

        3. The CUTPA Claim Fails Because It Only Applies to Unfair Trade Practices Occurring Within Connecticut And Plaintiff Alleges None ........................................................................................................6

        4. Plaintiff's Complaint Does Not State an "Unfairness" Claim .....................7

        5. Plaintiff's MCPA Claim Fails Because She Failed to Send Viridian the Required Pre-Suit Notice .....................................................................8

    B. Plaintiff Fails to State a Claim That Viridian Breached the Implied Covenant of Good Faith and Fair Dealing ................................................................8

    C. Plaintiff Cannot Allege Her Unjust Enrichment Claim in the Alternative ..............9

III. CONCLUSION ...........................................................................................................................10

## **TABLE OF AUTHORITIES**

**CASES**

*Banks Building Co. v. Malanga Family Real Estate Holding*,
 885 A.2d 204 (Conn. App. 2005) .................................................................................... 10

*Beare v. Millington*,
 No. 07-cv-3391, 2014 WL 1236750 (E.D.N.Y. Mar. 25, 2014).......................................... 10

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
 448 F.3d 573 (2d Cir. 2006).............................................................................................. 10

*Capstone Bldg. Corp. v. Am. Motorists Ins. Co*,
 67 A.3d 961 (Conn. 2013) ................................................................................................. 8

*Chen v. Hiko Energy, LLC*,
 No. 14 CV 1771, 2014 WL 7389011 (S.D.N.Y. Dec. 29, 2014).............................. 4, 5, 9, 10

*Faistl v. Energy Plus Holdings, LLC*,
 No. 12-2879, 2012 WL 3835815 (D.N.J. Sept. 4, 2012) ...................................................... 9

*Hassler v. Sovereign Bank*,
 374 Fed. Appx. 341 (3d Cir. 2010) .................................................................................... 9

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
 No. 09MD2087, 2010 WL 1734948 (S.D. Cal. Apr. 26, 2010) ........................................... 7

*MD Drilling & Blasting Inc. v. MLS Construction*,
 902 A.2d 686 (Conn. App. 2006) .................................................................................... 10

*Morgan Distrib. Co., Inc. v. Unidynamic Corp.*,
 868 F.2d 992 (8th Cir. 1989) ............................................................................................. 4

*N. Am. Energy Sys., LLC v. New England Energy Mgmt., Inc.*,
 No. 3:01CV1230, 2002 WL 32124964 (D. Conn. Sept. 9, 2002) ..................................... 4, 9

*Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharms., Inc.*,
 No. 3:14-cv-405 (SRU), 2015 WL 144728 (D. Conn. Jan. 12, 2015).................................. 3

*Slack v. Suburban Propane Partners, L.P.*,
 No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010)..................................................... 9

*United Coastal Indus. v. Clearheart Constr. Co.*
 802 A.2d 901 (Conn. App. 2002) .................................................................................... 10

*W. Dermatology Consultants, P.C. v. Vital Works, Inc.*,
 78 A.3d 167 (Conn. App. 2013), *cert. granted*, 81 A.3d 1182 (Conn. 2013) ........................ 7

**RULES**

Federal Rule of Civil Procedure 9(b)................................................................................ 5, 6

**OTHER AUTHORITY**

Iso-New England, *2015 Monthly Wholesale Load Cost Report* ........................................... 4

Defendant Viridian Energy, Inc. ("Viridian") respectfully submits this reply brief in further support of its Motion to Dismiss (Docket No. 15) Plaintiff's Complaint (Docket No. 1) in its entirety.

## I. PRELIMINARY ARGUMENT IN REPLY

Plaintiff's claims are styled as various causes of action, but the underlying substance is identical – namely that the variable rates Viridian charged for electricity were too high compared to the rate charged by the public utility, and not sufficiently aligned with the average wholesale electricity market rates as reported by ISO-New England, the independent body authorized by the Federal Energy Regulatory Commission to be responsible for the wholesale energy market in the region. The trouble is that neither the purportedly high rates – which were charged during a time period that, as a matter of public record, was marked by unanticipated and unprecedented extreme winter weather conditions – nor an alleged disparity between Viridian's rates and the average wholesale market rate is sufficient, without more, to state a viable claim. At a minimum, Plaintiff must allege that Viridian violated a contractual term, made a specific false or misleading representation, or engaged in deceptive or unfair conduct. Plaintiff has not and cannot do so.

Plaintiff makes no argument in opposition to Viridian's Motion to Dismiss that cures this fundamental defect. In fact, Plaintiff concedes that Viridian's Contract discloses to customers that the variable rate charged will fluctuate monthly based on "wholesale market conditions" generally, and that "Viridian's prices may be higher or lower than the [distribution company's] rate . . . " Docket No. 15-2, at 2. Viridian's "Massachusetts Terms & Conditions of Service" elaborates that its variable rate will fluctuate based on a laundry list of non-exclusive and discretionary factors, including "market conditions, operations costs, and other factors . . . " Docket No. 15-3, ¶ 4(b). The term "market rate" used repeatedly by Plaintiff is conspicuously absent from Viridian's actual representations. Out of desperation, Plaintiff resorts to rhetorical questions as to why a consumer

1

would select a variable rate contract. Pl.'s Opp'n, at 5.  But, such conjecture and speculation do not suffice, especially where, as here, the terms of the Contract and other documents speak for themselves, and unequivocally demonstrate that Viridian made no misrepresentation concerning the specific formula by which it sets its rates.  As detailed below and in Viridian's Motion to Dismiss, each of Plaintiff's claims fail.

## II.     ARGUMENT

### A.     Plaintiff Fails To State A Claim Under CUTPA or the MCPA

#### 1.     Plaintiff Concedes That Viridian Never Represented That Its Rates Would Track the Wholesale Market Rate Exclusively

Plaintiff alleges that Viridian represents to consumers that its variable rates will be "based upon the wholesale market rate," but instead charges rates in excess of that rate. Compl., ¶¶ 4, 23, 27, 35.  Yet, this allegation is belied by the express terms of Viridian's actual Contract and other disclosures.  Indeed, Plaintiff does not point to a single representation by Viridian using the term "wholesale market rate," much less any promise that Viridian's rates will be based exclusively upon or rigidly tied to it.  *See* Mot. to Dismiss, at 7-8.  As such, there can be no unfair trade practices or consumer protection claim.

Plaintiff now concedes the point, admitting that her Contract with Viridian states that the variable rate will depend on "several factors," only one of which is "market conditions."  Pl.'s Opp'n, at 8.  Plaintiff further acknowledges that Viridian could "consider various factors beyond simply the wholesale power price in setting its variable rate," including "operations costs" and "other factors."  *Id.* at 9.  These admissions severely and fatally undermine Plaintiff's consumer protection act claims because the factual allegations in the Complaint demonstrate nothing more than a purported difference between Viridian's rates and the average wholesale market rate for electricity.  Not a single factual allegation in the Complaint supports the claim that Viridian failed

to set its rates based on anything other than the non-exclusive list of factors upon which its rate may be based, including but not limited to, "market conditions" and "operations costs."

Plaintiff's belated attempts – in opposition to Viridian's motion – to equate "market conditions" with "market rate" fail. On its face, the term "market conditions" clearly has far broader reach than "market rate." Only through gross oversimplification and distortion can Plaintiff argue that Viridian "simply contracts for its power . . . at ISO New England's wholesale rate." *See* Pl.'s Opp'n, at 4. In reality, there is nothing simple at all about energy markets, and there are many "market conditions" besides the wholesale price that affect variable pricing.[1] Nonetheless, it is not Viridian's burden to present evidence of all of the many market conditions affecting its rates for purposes of its Motion, despite Plaintiff's suggestion to the contrary. *See* Pl.'s Opp'n, at 5 n.5. Rather, it is Plaintiff's burden to allege facts sufficient to support her claim that Viridian's representation that its rates are based on "market conditions, operations costs, and other factors" (Docket No. 15-3, ¶ 4(b)) is deceptive or misleading. Not a single fact alleged by Plaintiff, however, refers to any "market condition" other than the "wholesale market rate," a term absent from Viridian's Contract and disclosures. *See id.*; Docket No. 15-2.

Plaintiff attempts to do an end-run around this pleading shortcoming by switching the focus of her claim. Now, rather than claiming deceptive representations based on a deviation from the wholesale rate, Plaintiff argues that the representations were false because Viridian purportedly

---

[1] The wholesale price of electricity is just one of many inputs used by Viridian and other suppliers in determining their variable rates; it is not the exclusive component as Plaintiff believes. For example, Viridian incurs costs associated with purchasing "green certificates" or renewable energy credits ("RECs") – as it was required to purchase for the premium offering Plaintiff selected – and has numerous capacity costs (including costs associated with maintaining the reliability of its electricity network during periods of high customer use), operating costs (such as costs relating to customer care, including staffing its call center with additional employees during periods of volatility in energy prices; overhead; rent; etc.), and ancillary costs (such as certain mandatory payments to generators; customer acquisition costs; etc.), among other things.

"used its price-setting freedom as a pure profit center, disconnected from its actual underlying costs." *See* Pl.'s Opp'n, at 9, 12. Without any factual support, Plaintiff contends that Viridian had "no other market costs"[2] and no other "variable cost" besides the wholesale price of power. Pl.'s Opp'n, at 3, 5, 8. She further asserts, wrongly and without any factual underpinning, that Viridian "does not have any operating expenses relating to the actual delivery of electricity," and that "Viridian's only electricity-related cost is the wholesale rate it pays to ISO New England." *Id*. at 3, 5. According to Plaintiff, Viridian's operating costs are "standard and relatively fixed overhead and expenses," and, thus, "could not remotely justify the massive increase in Viridian variable rates or the failure to reduce those rates after the collapse of wholesale prices." *See id*. at 5, 7.

Such speculation and conclusions do not support a claim for relief. More importantly, they are found nowhere in the Complaint; no allegation relates to Viridian's costs, outside of the average wholesale price it purportedly paid for electricity.[3] Compl., ¶ 29. Nor is there any factual support for Plaintiff's newfound theory that Viridian's operating costs are fixed and would not vary during periods of extreme weather. As such, Plaintiff's arguments about these alleged "costs" should be ignored. *N. Am. Energy Sys., LLC v. New England Energy Mgmt., Inc.*, No. 3:01CV1230, 2002 WL 32124964, at *1 (D. Conn. Sept. 9, 2002) (citing *Morgan Distrib. Co., Inc. v. Unidynamic Corp*., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")).[4]

---

[2]   Even ISO-New England, the source relied upon by Plaintiff in her Complaint for the average wholesale rate, acknowledges that the average rates it reports exclude costs associated with hedging mechanisms, such as bilateral contracts, day ahead bidding, or financial transmission rights contracts, as well as unique charges and fees imposed by ISO, among other things. ISO-New England, *2015 Monthly Wholesale Load Cost Report*, at Appx. § 4.1, Assumptions (*available for download at* http://www.iso-ne.com/isoexpress/web/reports/load-and-demand/-/tree/mthly-whl-load-cost-rpt) (last accessed Mar. 13, 2015).

[3]   As Plaintiff acknowledges, prices reported by ISO-New England are merely "average" wholesale rates, and do not reflect what Viridian actually paid. Pl.'s Opp'n, at 6, 7 n.6.

[4]   Plaintiff's reliance on *Chen v. Hiko Energy, LLC*, No. 14 CV 1771, 2014 WL 7389011 (S.D.N.Y. Dec. 29, 2014) is misplaced. Plaintiff compares the contract in *Chen* to Viridian's, arguing, "*[a]s here*, the contract provision

In sum, it is undisputed that Viridian never represented that its rates are tied exclusively to the wholesale market, and no reasonable consumer could think otherwise. Thus, Plaintiff's Complaint does not state a claim that Viridian made any false or misleading statement.

### 2. Plaintiff Fails to Explain How Rule 9(b) Is Satisfied

Plaintiff does not dispute that Fed. R. Civ. P. 9(b) governs her fraud claims. *See* Mot. to Dismiss, at 15-18 (describing the specific pleading deficiencies in Plaintiff's Complaint). Rather, she argues in conclusory fashion that she has satisfied Rule 9(b)'s heightened pleading standard. Pl.'s Opp'n, at 11. In fact, she has not done so.

Plaintiff identifies the "specific misrepresentation at issue" as Viridian's representation that its variable price is based on "wholesale market conditions," *id*. at 11, specifically citing to three different Viridian statements, only one of which – in the Contract (Docket No. 15-2) – even uses the term "wholesale market conditions." *See* Compl., ¶¶ 24-24. Throughout the rest of her Complaint, Plaintiff avoids these statements and claims that Viridian falsely represented in its contracts, unidentified marketing materials,[5] and disclosures that its variable rates were "tied to the market *rate*," and/or "based upon the wholesale market *rate*." *Id*. at ¶¶ 4, 23, 35 (emphasis added). These allegations do not satisfy Rule 9(b) because Plaintiff fails to identify a single Viridian reference to the "wholesale market rate." Perhaps that is because, in fact, none exists.

---

at issue in *Yang Chen* specified that the variable rates would 'reflect the ***wholesale cost of electricity*** (including capacity, energy balancing, settlement, ancillaries), transmission and distribution charges, and other market related factors . . ." Pl.'s Opp'n, at 9 n.8 (emphasis added). Viridian's Contract, however, is materially different than the variable rate contract at issue in *Chen* as Viridian's makes no representations about its rates reflecting the "wholesale cost of electricity." In fact, Plaintiff mischaracterizes the *Chen* defendant's rates as being "two to three times the ***underlying wholesale rates***," Pl.'s Opp'n, at 23 (emphasis added), when in fact the defendant's prices were two to three times ***the utility's*** price – not the wholesale rate. *Chen*, 2014 WL 7389011, at *4. This price differential was the lynchpin to the court's finding that it was plausible that the defendant's rates were not reflective of the "wholesale cost of electricity or gas." *Id*.

[5] Plaintiff fails to provide any information whatsoever about these phantom "marketing materials" that allegedly tie Viridian's variable rates to the wholesale market rate.

5

Additionally, Plaintiff's claim fails because she never alleges that she actually saw any particular representation by Viridian concerning its variable rates ***prior to enrolling***. The fact that Viridian made statements in its contracts regarding "wholesale market conditions" being one of many elements that it considers when setting its variable rates does not absolve Plaintiff of her obligations under Rule 9(b) to plead that she read these statements and when. These facts are crucial to her CUTPA and MCPA claims because, if Plaintiff did not see the representations before she enrolled, they necessarily could not have been part of her enrollment decision.

Finally, Plaintiff's Complaint is silent as to why any of Viridian's actual representations were fraudulent. The most she does is allege that the variable rate charged was not based exclusively on one factor – the wholesale market rate. This alone is insufficient to support her claims. Indeed, Plaintiff concedes that Viridian disclosed to customers that its rates would vary based on "several factors" (beyond simply wholesale energy prices) and that Viridian had the right to consider these various factors in setting its variable rate. *See* Pl.'s Opp'n, at 8-9. The newly concocted explanation that Viridian's statements were misleading because Viridian's variable rates were "divorced from its actual costs" fares no better. *See id*. at 12. This allegation is nowhere in the Complaint, and even if it were, it would be pure conjecture as the Complaint contains no facts regarding Viridian's actual costs; even the wholesale power prices provided are mere "average[s]." Compl., ¶ 28.[6] Accordingly, because Plaintiff has failed to allege the essential "who, what, when, where, or how" of the alleged fraud, Count I should be dismissed under Rule 9(b).

### 3. The CUTPA Claim Fails Because It Only Applies to Unfair Trade Practices Occurring Within Connecticut And Plaintiff Alleges None

CUTPA "proscribes only unfair trade practices occurring ***within the state of Connecticut.***"

---

[6] Plaintiff puts much stock in the chart (Compl., ¶ 28) purporting to compare the "average wholesale" price of electricity as reported by ISO-New England to Viridian's rate. That chart, however, shows that, in certain months, such as January 2013, Viridian's rate actually was ***lower*** than the average wholesale price of electricity.

6

*W. Dermatology Consultants, P.C. v. Vital Works, Inc.*, 78 A.3d 167, 187-88 (Conn. App. 2013) (emphasis added), *cert. granted*, 81 A.3d 1182 (Conn. 2013); Mot. to Dismiss, at 8-9 (citing cases). Plaintiff argues in her Opposition that she is not attempting to bring a CUTPA claim on behalf of herself, but, rather, on behalf of unnamed putative class members who are Connecticut customers. Pl.'s Opp'n, at 17. Yet, according to her Complaint, Plaintiff's claims for violation of CUTPA and the MCPA are joined in a single count (Count I), which she brings "on behalf of ***herself*** and the Class." Compl., ¶ 48 (emphasis added). As a Massachusetts resident who purchased energy from Viridian in that state, she can assert no CUTPA claim.

Moreover, Plaintiff's CUTPA claim on behalf of a putative class of unnamed Connecticut consumers also fails. While Plaintiff claims it is premature to address whether she can represent the class until the class certification stage, she misses the point. Viridian's argument is that Plaintiff has failed to allege the necessary elements of a CUTPA claim in the first place – namely an unfair practice within the state of Connecticut. It is not enough for Plaintiff to rely on the theoretical claims of unnamed class members to survive dismissal. *See In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09MD2087, 2010 WL 1734948, at *5 (S.D. Cal. Apr. 26, 2010) (holding that "the assertion that the same acts or practices may have also deceived some unnamed, theoretical consumers in New York is not enough").

### 4.     Plaintiff's Complaint Does Not State an "Unfairness" Claim

In response to Viridian's argument that she fails to allege an "unfair" act under the CUTPA and MCPA because her Complaint does little more than parrot the elements of such a claim in conclusory fashion, Mot. to Dismiss at 11-12, Plaintiff clarifies that her claim is rooted in Viridian's alleged "misrepresentations." Pl.'s Opp'n, at 16. Try as she may to transform her CUTPA and MCPA "deception" claims into ones based on "unfairness," they are nothing more than false advertising claims at their core. For the reasons discussed above and detailed in

7

Viridian's moving brief, such claims do not lie and should be dismissed.

### 5. Plaintiff's MCPA Claim Fails Because She Failed to Send Viridian the Required Pre-Suit Notice

Service of a pre-suit demand letter is an essential element of an MCPA claim that must specifically be pled by Plaintiff in order to survive dismissal. Mot. to Dismiss, at 12-13 (citing cases). Plaintiff failed to follow this simple and basic rule before filing suit. Instead, she argues – but does not allege in her Complaint – that she is excused from such "procedural requirement," because Viridian does not maintain a place of business or assets in Massachusetts. Pl.'s Opp'n, at 20. She also argues that Viridian has not provided her with proof that it has either. Plaintiff cannot shift her burden of alleging each essential element of an MCPA claim in her Complaint, to Viridian to prove the negative – that she is not excused from the pre-suit notice requirement. If Plaintiff is confused about Viridian's facilities or assets within Massachusetts, she simply could have served a pre-suit notice and pled the same in her Complaint. She did not. This, alone, is grounds for dismissal of her MCPA claim. *See* Mot. to Dismiss, at 12-13.

### B. Plaintiff Fails to State a Claim That Viridian Breached the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's claim that Viridian breached the implied covenant of good faith and fair dealing fails because she can point to no contractual obligation that Viridian failed to fulfill, and she admits the "covenant of good faith and fair dealing" does not create new contractual obligations. Pl.'s Opp'n, at 21. Further, where a contract vests discretion in a party, that party's exercise of its discretion cannot give rise to a breach of implied covenant claim. *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 67 A.3d 961, 987 (Conn. 2013) (Rogers, C.J.). In any event, while Plaintiff contends that, contrary to her expectation, Viridian's rates did not fluctuate in a manner tied directly to the wholesale market rate, she points to no contractual term that reasonably could create such an expectation. *Id.* at 22.

8

Moreover, the "bad faith" that Plaintiff bases her claim upon is Viridian's alleged goal of "maximiz[ing] its revenue from Variable electric rates." Compl., ¶ 59. "[S]imply seeking profit," however, does not form the predicate for a breach of implied covenant claim. *Hassler v. Sovereign Bank*, 374 Fed. Appx. 341, 345 (3d Cir. 2010) (affirming dismissal of breach of implied covenant claim). There also could be no "bad faith" because as Plaintiff admits, Viridian was entitled to set its rates based on a number of factors aside from the wholesale market rate. *See* Pl.'s Opp'n, at 9.[7] While Plaintiff seeks to inject bad faith into the Complaint by arguing in her Opposition that Viridian's only market cost was the wholesale rate of power, and that its operating costs are "fixed," Pl.'s Opp'n, at 22, but, nonetheless, Viridian's rate exceeded the wholesale market price, such arguments about Viridian's costs are not factual allegations that form her Complaint, and they cannot be construed as such. *N. Am. Energy Sys.*, 2002 WL 32124964, at *1. These conclusory statements, without more, do not satisfy the pleading standard necessary to survive a motion to dismiss. *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012) (dismissing breach of implied covenant claim against energy supplier). Plaintiff's breach of implied covenant claim (Count II) should be dismissed.

### C. Plaintiff Cannot Allege Her Unjust Enrichment Claim in the Alternative

An unjust enrichment claim cannot lie where an express contract governs the parties' relationship. *See* Mot. to Dismiss, at 21 (citing cases). Plaintiff does not disagree. *See* Pl.'s Opp'n,

---

[7] Plaintiff relies heavily on *Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010), and *Chen* in support of her argument that she has stated a claim for breach of the implied covenant. As detailed above, *supra* at n.4, the facts and price term of the variable rate contract involved in *Chen* are materially different than those in this case, and do not aid Plaintiff here. Further, the *Slack* court, in its order denying reconsideration of its decision refusing to dismiss the plaintiff's breach of implied covenant claim, clarified that it was the "specific allegations made by Plaintiff concerning 'after-the-fact price reductions'" for customers who complained, which "allowed the Court to draw the reasonable inference" that the defendant knowingly exercised its discretion in setting the price of the contract "arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits." *Slack v. Suburban Propane Partners, L.P.* No. 10-2548 (D.N.J. Feb. 14, 2011), Docket No. 70, at 7-8. Here, Plaintiff does not allege any after-the-fact price reductions that would allow her implied covenant claim to proceed as the plaintiff did in *Slack*.

9

at 25 ("Plaintiff acknowledges that . . . she cannot recover under both breach of contract and unjust enrichment theories.")  Rather, she argues that she may plead her unjust enrichment claim in the alternative.  *Id*. at 25-26. Plaintiff's argument is inapplicable here.

Although courts will permit a plaintiff to plead alternative theories of breach of contract of unjust enrichment, this is permissible *only* "if there is a dispute as to the agreement's validity or enforceability."  *Beare v. Millington*, No. 07-cv-3391, 2014 WL 1236750, at *6 (E.D.N.Y. Mar. 25, 2014); *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586–87 (2d Cir. 2006).   Here, Plaintiff's Complaint is devoid of any allegation that the Contract is invalid or unenforceable.  To the contrary, Plaintiff pleads the existence of a valid contract between the parties.  Compl., at ¶¶ 56-61.  Thus, her unjust enrichment claim cannot be pled in the alternative and should be dismissed with prejudice.[8]  In any event, Plaintiff's unjust enrichment claim fails even if pled in the alternative because Viridian has not retained any benefit (*i.e.*, payment) without providing a service in exchange (*i.e.*, the energy services that Plaintiff requested and consumed).[9]  Mot. to Dismiss, at 22.

### III.   CONCLUSION

For the foregoing reasons and those stated in Viridian's Motion to Dismiss, the Court should dismiss with prejudice all claims asserted in Plaintiff's Complaint.

---

[8] The state procedural law cases cited by Plaintiff, *see* Pl.'s Opp'n at 26, are inapposite.  For instance, in *Banks Building Co. v. Malanga Family Real Estate Holding*, the court merely noted in a footnote that both breach of contract and unjust enrichment claims were alleged.  885 A.2d 204, 205 n.2 (Conn. App. 2005).  In *MD Drilling & Blasting Inc. v. MLS Constr.*, the court held only that a judgment of strict foreclosure on a mechanic's lien did not render moot the plaintiff's claims for breach of contract and unjust enrichment, alleged against two separate defendants.  902 A.2d 686, 688-89 (Conn. App. 2006).  And in *United Coastal Indus. v. Clearheart Constr. Co*., after finding against the plaintiff-subcontractor on its breach of contract claim against defendant-contractor, the court held that the plaintiff nonetheless could recover on its *quantum meruit* theory for partial completion of work encompassed by the written contract.  802 A.2d 901, 905 (Conn. App. 2002).

[9] Notably, in *Chen*, the court dismissed an unjust enrichment claim similar to the one asserted by Plaintiff here.  2014 WL 7389011, at *7 ("This case does not present the 'unusual' circumstances needed top state an unjust enrichment claim.").

Dated:  March 16, 2015    LAW OFFICES OF PATRICK McHUGH

            By: <u>/s/ Patrick J. McHugh</u>
               Patrick J. McHugh (ct14072)
               2425 Post Road, Suite 205
               Southport, CT  06890
               Telephone: (203) 955-1702
               Facsimile: (203) 286-1741
               pmchugh@patrickmchughlaw.com

               - and -

               Of Counsel

               Daniel S. Blynn
               Shahin O. Rothermel
               VENABLE LLP
               575 5th Street, NW
               Washington, DC 20004
               Telephone: (202) 344-4000
               Facsimile: (202) 344-8300
               dsblynn@venable.com
               sorothermel@venable.com

           *Attorneys for Defendant Viridian Energy, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/DOCKET NO. System.

            By: <u>/s/ Patrick J. McHugh</u>
               Patrick J. McHugh