UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORI SANBORN, BDK ALLIANCE LLC, IRON MAN LLC and STEPHANIE SILVER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIRIDIAN ENERGY, INC.,<br><br>Defendant. | No. 3:14-cv-1731<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT** |

1. Plaintiffs Lori Sanborn, BDK Alliance LLC, Iron Man LLC and Stephanie Silver ("Plaintiffs"), on behalf of themselves and all persons similarly situated, by and through their attorneys, allege as follows.

**INTRODUCTION**

2. Plaintiffs bring this action on behalf of themselves and a class of all similarly situated customers in Connecticut and Massachusetts against Defendant Viridian Energy, Inc. ("Viridian") arising out of Viridian's unfair, deceptive, unconscionable and bad faith billing for "supplying" electricity to residential consumers.

3. Viridian entices residential customers to sign up for its service by offering low initial rates for electricity. When the "teaser rate" period expires, however, customers are rolled over into month-to-month variable rate plans with exorbitant rates.

4. Viridian represents that it offers a "variable rate" electricity plan to residential consumers that is tied to the market rate in the wholesale power market. However, contrary to Viridian's representations and obligations, Viridian consistently and improperly charges an

extraordinarily high premium rate for electricity *regardless* of fluctuations in the underlying market price. Indeed, as set forth below, Viridian routinely charges its consumers *four, five and even six times* the underlying market rate, notwithstanding Viridian's representations that its variable rates "reflect" monthly wholesale electric prices.

5. In particular, Viridian's rates go *up* to match spikes in the underlying market price. However, when the market price goes *down*, Viridian's rate remains at an inflated level several times higher than the market rate. Through this scheme, Viridian subjects consumers to consistent and unlawful "heads I win, tails you lose" pricing.

6. This unfair and deceptive scheme of charging inflated electric prices is intentionally designed to maximize revenue for Viridian.

7. Plaintiffs and other Viridian customers have been injured by Viridian's unlawful practices. Accordingly, Plaintiffs, on behalf of themselves and the class, seek damages, restitution and injunctive relief for Viridian's violation of state consumer protection statutes (Count I) and breach of the implied covenant of good faith and fair dealing (Count II).

## PARTIES

8. Plaintiff Lori Sanborn is a resident of Stoughton, Massachusetts.

9. Plaintiff BDK Alliance is limited liability corporation with its principal place of business in Guilford, Connecticut.

10. Plaintiff Iron Man LLC is a limited liability corporation with its principal place of business in Monroe, Connecticut.

11. Plaintiff Stephanie Silver is a resident of Enfield, Connecticut.

12. Defendant Viridian Energy, Inc. is a corporation organized under the laws of Nevada whose principal place of business is located at 1055 Washington St., Stamford, CT 06901.

2

Upon information and belief, Viridian does not have an office or keep assets in the state of Massachusetts.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this civil action under 28 U.S.C. § 1332(d) because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in controversy exceeds $5,000,000 and there are members of the Class who are citizens of a different state than Defendant Viridian.

14. This Court has personal jurisdiction over Viridian because Viridian maintains an office in Connecticut and because Viridian has tens of thousands of customers in Connecticut and thereby conducts business in this state.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Viridian resides in Stamford, Connecticut.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Energy Deregulation and the Role of Electric Suppliers

16. In the late 90s and early 2000s, many states moved to deregulate at least part of the electricity supply services then performed by large public utilities. Delivery of electricity to a consumer requires both the creation of electricity and the transmission of that electricity from the power plant to the consumer. The typical pattern was to require the public utilities to divest their power generation assets such as coal, gas and nuclear power plants. But, the regulated utilities continued distributing power from these power plants to consumers through transmission lines.

17. When deregulation occurred, the business of power *supply* was opened to competition and consumers were allowed to select the companies from whom they would purchase their power. However, states generally set a "standard offer" or "default rate," available to all

customers in each public utility's service area.  In some states, such as Connecticut, the standard offer is a single, flat rate which is fixed for a period of months, while other states such as Massachusetts have both a fixed rate standard offer and a standard offer rate that varies each month.

18. As a result of the deregulation of power supply, several different parties are now involved in the supply of electric power to residential consumers.  Certain companies, such as Dominion, produce electric power ("Generation Companies"). Other companies, such as Connecticut Light & Power ("CL&P") in Connecticut and the National Grid in Massachusetts distribute electricity from Generation Companies to the end user ("Distribution Companies"). Although some Generation Companies have sold power directly to consumers, including residential customers, most sell the power on the wholesale market to companies that market to retail customers ("Electric Suppliers").

19. The market for wholesale power in the New England States is under the administration of an independent, not-for-profit corporation formed in accordance with the recommendations of the Federal Energy Regulatory Commission, called ISO New England (for "Independent System Operator"). ISO New England coordinates and directs the generation and flow of electricity throughout the region, ensuring that electric supply exactly meets demand throughout the network. The wholesale market managed by ISO New England determines where and when electricity will be made by Generation Companies and the wholesale prices that will be paid for that electricity through competitive bids.  "More than 500 companies participate in these markets, buying and selling between $6-$14 billion of electric power and related products annually."  http://www.iso-ne.com/about/what-we-do/three-roles/administering-markets. The bid process determines the Generation Company that will make each unit of electricity and the

wholesale price each Energy Supplier will pay to each Generator for each unit of energy delivered to specific locations throughout the region.

20. Electric Suppliers play a middleman role: they purchase power directly or indirectly from Generation Companies and sell that electricity to end-user consumers. However, Electric Suppliers do not *deliver* that electricity to consumers. Rather, Generation Companies deliver the electricity to Distribution Companies, which in turn deliver the electricity to the ultimate consumer. Electric Suppliers merely buy electricity at the wholesale rate and then sell that power to end-users with a mark-up. Thus, Electric Suppliers are essentially brokers and traders: they neither make nor deliver electricity, but merely buy electricity from the Generation Companies and re-sell it to end users.

21. Like other Electric Suppliers, Viridian purchases power on the wholesale market and sells it to consumers. For example, as Viridian admits in its "Disclosure Label," the New England power grid receives power from a variety of power plants and transmits that power throughout New England as needed. Viridian buys and resells "System Power" pursuant to "system power contracts," which is power purchased from the regional electricity market, not from specific power generation plants.

22. Viridian's prices are not approved by states' regulatory authorities such as Connecticut's Public Utility Regulatory Authority ("PURA") or the Massachusetts Department of Public Utilities. Rather, Viridian and other Electric Suppliers are free to set their own rates for supplying electricity to consumers. And Viridian, like all other suppliers, relies upon the Distribution Companies to deliver the electricity it purchases on the wholesale market to its customers. The Distribution Companies charge separately for their services, using rates that are reviewed and approved by the states' regulatory agencies.

23. Electric Suppliers may contract with consumers to supply electricity on either a "Fixed" or "Variable" rate basis. Under a Fixed contract, the Supplier agrees to supply electricity at a set rate for a certain number of months.

24. Under a Variable rate contract, the Supplier may vary the rate it charges on a periodic basis (often monthly).

### B.   Viridian's Excessive Rates

25. Viridian has offered various Fixed and Variable rate plans, including contracts that charge a low promotional "teaser" rate which is fixed for a set number of months before automatically rolling into a Variable rate plan.

26. Viridian represents that its Variable rate plan is based upon the wholesale market rate. Indeed, that is the entire hook by which Viridian attracts consumers to Variable rate plans.

27. For example, Viridian's Massachusetts Disclosure Statement states that the variable rate "may fluctuate from month to month' based on applicable "wholesale market conditions."

28. Most importantly, Viridian's Variable rate "Terms of Service" make this express link between the variable rate charged by the company and the underlying wholesale market rate set by ISO-New England and charged by Generation Companies.

29. Viridian's Massachusetts Terms of Service state that the variable rate "will vary based on several factors, including but not limited to, market conditions, operations costs, and other factors. . . ."

30. Viridian's Connecticut Terms of Service state that the variable rate "may fluctuate each month based on the wholesale market conditions applicable" in the customer's area.

31. Accordingly, a reasonable consumer would understand that Viridian's Variable rates would be reasonably related to and fluctuate in a manner correlated with the underlying

6

wholesale market rate, and that, although prices would go up when wholesale prices rose, they would also go down when wholesale prices decreased, enabling consumers to take advantage of market lows.

32. Instead, and contrary to reasonable consumer expectation, Viridian used its Variable rates as a pure profit center that was not tied to underlying whoelsale market rates. For example, increased the rates charged to class members when wholesale prices rose, but kept them level as much as *four, five or even six times* the wholesale market rates when the wholesale prices fell.

33. For example, the chart below sets forth (1) the average wholesale price (in dollars per kilowatt hour) of electricity delivered to Connecticut for each month during the period from November 2013 through March 2015, as reported by ISO-New England;[1] (2) the highest non-promotional variable rates Viridian charged to consumers in Connecticut for those same months;[2] (3) the resulting spread between Viridian's rates and the average wholesale price; and (4) the Viridian price compared to the average wholesale price, expressed as a percentage.

---

[1] This is the "Total Wholesale Rate" paid by Suppliers, including not only the wholesale price of power but also all of ISO-New England's charges, such as its charges for capacity, Net Commitment Period Compensation (NCPC), Ancillary Markets, and Wholesale Market Services, as reported in ISO New England's monthly Wholesale Load Cost Reports.

[2] The information for the period from March of 2014-March of 2015 comes from Viridian's website, where, pursuant to Connecticut law, it is now required to post its highest and lowest rates for the past 12 months. For months prior to March of 2014, the chart includes Viridian's rates for its 100% renewable power option, as reported in filings Viridian made to PURA, which appears to correspond to Viridian's highest rate charged. This is a more than fair point of comparison, since on information and belief the cost to Viridian of purchasing the necessary Renewable Energy Credits, or "RECs", to market its plan as 100% renewable, is negligible. For example, CL&P offers a "Sterling Energy" 100% renewable energy plan for only *$0.01* more than its Standard rate.

| Month | Total Wholesale Rate for Connecticut (cents/kilowatt hour) | **Viridian** Price (cents/kilowatt hour) | Viridian's Spread (cents/kilowatt hour) | Viridian's Price as Percentage of Wholesale Rate |
|---|---|---|---|---|
| **November 2013** | 5.344 | 14.49 | 9.146 | 271% |
| **December 2014** | 10.588 | 15.49 | 4.902 | 146% |
| **January 2014** | 18.615 | 16.49 | -2.125 | 89% |
| **February 2014** | 15.803 | 23.49 | 7.687 | 149% |
| **March 2014** | 12.312 | 24.00 | 11.688 | 195% |
| **April 2014** | 4.689 | 24.00 | 19.311 | 512% |
| **May 2014** | 4.192 | 24.00 | 19.808 | 573% |
| **June 2014** | 4.538 | 24.00 | 19.462 | 529% |
| **July 2014** | 4.182 | 24.00 | 19.818 | 574% |
| **August 2014** | 3.755 | 24.00 | 20.245 | 639% |
| **September 2014** | 4.632 | 24.00 | 19.368 | 518% |
| **October 2014** | 3.748 | 24.00 | 20.252 | 640% |
| **November 2014** | 5.140 | 19.00 | 13.86 | 370% |
| **December 2014** | 5.199 | 19.00 | 13.801 | 365% |
| **January 2015** | 7.382 | 20.00 | 12.618 | 271% |
| **February 2015** | 13.443 | 18.90 | 5.457 | 141% |
| **March 2015** | 6.669 | 18.90 | 12.231 | 283% |

34.     There was, accordingly, a huge disparity between the wholesale rates Viridian paid for power[3] and the variable rates that it charged its customers.  There was also a huge disparity between the Viridian variable rate and the fixed, no risk, market based rate offered by CL&P which

---

[3] The wholesale price for power in the three pricing zones ISO New England established in Massachusetts and the single pricing zone it established in Connecticut is not always identical, but it is always very close. For example, during the 20-month period covered by the chart in Paragraph 34, the difference in the monthly average wholesale price in Connecticut and in Southeast Massachusetts where Plaintiff resides was only higher than 4 percent during one month (September of 2014), when it was 5 percent, and during 14 of the months the difference was less than 2 percent.

was not reasonable given how low wholesale rates were.  This is graphically shown by the following chart, which shows the total wholesale price paid by Viridian and the retail price it charged its Connecticut customers during the period from August of 2013 through March of 2015 (with CL&P's Standard Service Rate during the same period added for comparison):



35.     Accordingly, Viridian routinely charges class members a Variable electric rate that is as much as six times higher than the underlying market rate.  Additionally, upon information and belief, none of Viridian's non-promotional variable rates have matched, much less beat, the standard offer fixed rates in over two years.

36.     Viridian's Variable rate for consumers who did not purchase 100% renewable electricity was only slightly less egregious. For example, throughout the summer and fall of 2014, Viridian charged Connecticut customers 17.49 cents rather than 23.99 cents per kwh, which is still, outrageously, over ***four times*** the total wholesale rates during that period.[4]

---

[4] Given that it does not cost Energy Suppliers that much more to offer plans that can be marketed as "100

9

37.     Notably, Viridian charges these exorbitant premiums without adding any value to the consumer whatsoever.  As detailed above, Viridian does not either produce or transport electricity.  It has no role in running or maintaining power plants or power lines; it does no hook-ups or emergency response.  Indeed, Viridian does not even handle customer billing: that, too, is handled by the Distribution Company.  Essentially, all that Viridian does is act as a trader in the transaction.  Yet it charges several multiples the amount the Generation Companies receive for making electricity and the Distribution Companies receive for transmitting power, maintaining power lines, and handling emergency services and customer billing and calls.[5]

38.     Moreover, Viridian's costs, other than its wholesale cost of power, were relatively fixed and could not have justified the massive increases alleged above. For example, charges as ancillary and capacity charges and other regulatory costs did not fluctuate to any material extent and, in particular, did not fluctuate to a material extent in relation to wholesale power prices (these additional costs are included in the "total wholesale rate" in the charts shown in paragraphs 33 and 34 above). Viridian's other material costs were for operations, and included costs, for example, relating to rent, equipment, overhead, employees, etc. were also relatively fixed and could not justify the price variations alleged above.

---

percent renewable," Viridian's decision to charge its 100 percent renewable customers over ***six cents more*** per kilowatt hour flies in the face of the Company's claim that its "unique and inspiring value proposition" is to "[c]hange the way customers see green energy" and demonstrate "that green energy ***doesn't have to cost more*** . . . ."  http://www.viridian.com/Custom/Cust077/PersonalPages/ AboutViridian.aspx (emphasis added).

[5] For example, CL&P currently charges 6.7 cents per kilowatt hour plus a flat charge of $19.25 for distribution services, while Viridian's price for its services is 18.9 cents per kilowatt hour for customers on its 100 percent renewable plan. According to the U.S. Energy Information Administration, the average household in Connecticut uses 731 kilowatt hours per month. http://www.eia.gov/tools/faqs/faq.cfm?id=97&t=3   Such an average household would pay CL&P about $68 for distribution services, while paying Viridian $138 – more than twice as much.

39. Accordingly, Viridian's essential representation to consumers concerning its Variable pricing plan – that the Variable rate is "market-based"– is patently false. In particular, although Viridian may *increase* its Variable rate in response to *rising* wholesale prices (as illustrated in the period from November 2013 through January 2014 in paragraph 33 above), Viridian fails to *decrease* its prices in response to a *falling* wholesale market price. For example, the average wholesale price in Connecticut dropped every month from January to May of 2014, ending the period at a price that was 77 percent lower than the January high. During the same period, Viridian's price actually *rose* by *42* percent from January to February, and *stayed* at the astronomical rate of 24 cents per kilowatt hour through September. At one point, Viridian's price premium was an incredible *640 percent* above the total wholesale price.

C.   **Plaintiffs Suffered Injury Due To Viridian's Improper Business Practices**

40. Plaintiff Lori Sanborn has been on Viridian's Variable rate plan since January, 2014.

41. Plaintiff Sanborn paid Viridian's exorbitant Variable electricity rates and thereby suffered monetary damages as a result of Viridian's conduct as set forth above. For example, from April through October, 2014, Plaintiff paid Viridian 17.49 cents per kwh, the same amount charged comparable customers in Connecticut, over *4 times* the total wholesale rate when she should have paid a substantially lower amount.[6]

42. Plaintiff Sanborn suffered an ascertainable loss. Defendant's acts as alleged above were a reasonably foreseeable result of and a substantial factor in causing that loss.

---

[6] As noted above, the total wholesale rates in southeastern Massachusetts vary slightly from the total wholesale rates in Connecticut referenced in paragraph 28 above. The variance was typically less than two percent and almost never more than 4 percent.

43. Plaintiff BDK Alliance was on Viridian's Variable rate plan from March to September, 2014.

44. Plaintiff BDK Alliance paid Viridian's exorbitant Variable electricity rates and thereby suffered monetary damages as a result of Viridian's conduct as set forth above. Its rate in March was 16.99 cents per kwh, and it was 17.49 cents per kwh for each month thereafter when it should have paid a substantially lower amount.

45. Plaintiff BDK Alliance suffered an ascertainable loss. Defendant's acts as alleged above were a reasonably foreseeable result of and a substantial factor in causing that loss.

46. Plaintiff Iron Man LLC was on Viridian's Variable rate plan from June 2013 to February, 2015.

47. Plaintiff Iron Man LLC paid Viridian's exorbitant Variable electricity rates and thereby suffered monetary damages as a result of Viridian's conduct as set forth above. While its rate in 2013 ranged from 11.99 to 13.99 cents per kwh, it skyrocketed from February 2014 to February 2015, where it ranged between 16.99 and 17.99 cents per kwh for each month during that period when it should have paid a substantially lower amount.

48. Plaintiff Iron Man LLC suffered an ascertainable loss. Defendant's acts as alleged above were a reasonably foreseeable result of and a substantial factor in causing that loss.

49. Plaintiff Stephanie Silver was on Viridian's Variable rate plan from July, 2013 to January, 2014.

50. Plaintiff Silver paid Viridian's exorbitant Variable electricity rates and thereby suffered monetary damages as a result of Viridian's conduct as set forth above. For example, from July through December, 2014, Plaintiff paid Viridian 12.99 cents per kwh, and paid 14.99 cents per kwh in December and January when she should have paid a substantially lower amount.

51.     Plaintiff Silver suffered an ascertainable loss. Defendant's acts as alleged above were a reasonably foreseeable result of and a substantial factor in causing that loss.

## CLASS ACTION ALLEGATIONS

52.     Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure behalf of themselves and the following class of similarly situated persons:

> All persons enrolled in a Viridian Energy, Inc., variable rate electric plan in connection with a property located within Connecticut and Massachusetts at any time within the applicable statutes of limitations preceding the filing of this action through and including the date of class certification (the "Class").

53.     Plaintiff reserves the right to modify or amend the definition of the proposed Class or to propose additional sub-classes as might be necessary or appropriate.

54.     Excluded from the Class are Defendant, including any parent, subsidiary, affiliate or person controlled by Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families.

55.     The proposed Class meets all requirements for class certification. The Class satisfies the numerosity standard. The Class is believed to number in the tens of thousands of persons. As a result, joinder of all class members in a single action is impracticable. On information and belief, class members can be identified by Viridian and Distribution Company records.

56.     There are questions of fact and law common to the Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Viridian's actions include, without limitation, whether Viridian:

  a. committed unfair or deceptive trade practices by its Variable electric rate policies and practices;

  b. breached its covenant of good faith and fair dealing with regard to its Variable electric rate contracts;

  c. and continues to commit wrongdoing through its Variable electric rate policies and practices.

57. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity to other available methods for the fair and efficient adjudication of this controversy.

58. Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seeks to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who have extensive experience prosecuting complex class action litigation.

59. Plaintiffs' claims are typical of the claims of the Class because they arise out of the same conduct, policies, and practices of Viridian with respect to its Variable electric rate policies and practices. Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other putative class member.

60. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each class member who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

61.     Notice can be provided to Class members by using techniques and forms of notice similar to those customarily used in other class actions.

## CLAIMS FOR RELIEF

## COUNT I

### VIOLATION OF STATE UNFAIR TRADE PRACTICES ACTS

62.     Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

63.     Plaintiffs bring this count individually and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the Class.

64.     Viridian is engaged in "trade" and "commerce" as it offers electricity for sale to consumers.

65.     Viridian's conduct as alleged above constitutes unfair practices:

   a. Viridian's contracts do not accurately describe the rates the customer will be paying or the circumstances under which the rates may change.

   b. Viridian's acts and practices with regard to its exorbitant Variable electric rates as alleged above are immoral, unethical, oppressive and unscrupulous.

   c. Viridian's conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for electricity but for Viridian's immoral, unethical, oppressive and unscrupulous practices and procedures.  Consumers have thus overpaid for their electricity and such injury is not outweighed by any countervailing benefits to consumers or competition.

>No benefit to consumers or competition results from Viridian's conduct, nor could consumers reasonably have avoided the injury.

66. Viridian's conduct as alleged above also constitutes a deceptive act or practice. Viridian's Variable electric rate representations as set forth above were and are likely to mislead consumers and Viridian intended that consumers rely upon those representations. Plaintiffs and other reasonable consumers reasonably interpreted Defendant's representations to mean that Viridian's Variable rates track the underlying wholesale power rates (when in fact they do not). Viridian's representations were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of power from Viridian pursuant to Variable rate contracts.

67. The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiffs and the Class to suffer an ascertainable loss and substantial injury, and were a substantial factor causing that injury, when Plaintiffs and Class members paid an exorbitant premium for electricity over wholesale market rates.

68. The foregoing actions constitute unfair and deceptive practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq* the Massachusetts Regulation of Business Practices for Consumers' Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 1.[7]

69. Plaintiffs and the Classes are entitled to recover damages and other appropriate relief, as alleged below.

---

[7] Although not required as alleged above, Plaintiff Sanborn has made demand under Mass. Gen. Laws Ann. ch. 93A.

## COUNT II

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

70. Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

71. All contracts contain an implied covenant of good faith and fair dealing, including Plaintiffs' and Class members' contracts with Viridian.

72. Viridian's Terms of Service with customers gives Viridian discretion concerning the monthly rates charged under Variable rate contracts and any increases or decreases to the rate to reflect the changes in the wholesale power market.

73. As alleged herein, Viridian has used its discretion to bill exorbitant rates that are not tied to the wholesale market. For example, Viridian has used its discretion to *increase* the monthly Variable rate when wholesale markets rise, but not to commensurately *decrease* the monthly Variable rate when wholesale markets fall. As a result, consumers are billed exorbitant electric rates several multiples of the wholesale market rate.

74. Viridian's performance of its discretionary functions under the Terms of Service as alleged herein to maximize its revenue from Variable electric rates impedes the right of Plaintiffs and other Class Members to receive benefits that they reasonably expected to receive under the contract.

75. On information and belief, Viridian's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Viridian's revenue at the expense of its customers and in contravention of their reasonable expectations as customers of Viridian.

76. Viridian has breached the covenant of good faith and fair dealing in the Terms of Service through its Variable electric rate policies and practices as alleged herein.

77. Plaintiffs and members of the putative Class have sustained damages as a result of Viridian's breaches as alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the putative Class, request that this Court enter judgment against Defendant and in favor of Plaintiffs and award the following relief:

(a) Certification of the proposed Class;

(b) Injunctive relief enjoining Viridian from charging exorbitant Variable electric rates under their current policies and from engaging in the wrongful, deceptive, unfair, and unconscionable practices alleged herein;

(c) A declaration that Defendant's actions as alleged herein are unlawful;

(d) Damages in an amount to be determined at trial, including actual and punitive damages;

(e) Disgorgement and restitution of all exorbitant rates paid to Viridian by Plaintiff and the putative Class as a result of the wrongs alleged herein;

(f) Pre- and post- judgment interest at the maximum rate permitted by applicable law;

(g) Attorneys' fees, costs, and expenses as available under the law.

(h) Such other and additional relief as the Court may find just and equitable.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: June 8, 2015

                              PLAINTIFF

                      \s\ Robert A. Izard
                By: Robert A. Izard (ct01601)
                    Seth R. Klein (ct18121)
                    Nicole A. Veno (ct29373)
                    Izard Nobel LLP
                    29 South Main Street, Suite 305
                    West Hartford, CT  06107
                    (860) 493-6292