# VENABLE LLP

575 SEVENTH STREET NW   WASHINGTON, DC 20004
T 202.344.4000   F 202.344.8300   www.Venable.com

**Via Overnight and Email Delivery**

February 16, 2016

Daniel S. Blynn
T 202.344.4619
F 202.344.8300
dsblynn@venable.com

Hon. Stefan R. Underhill
United States District Judge for the District of Connecticut
United States Courthouse
915 Lafayette Boulevard - Suite 411
Bridgeport, Connecticut 06604

Re:   *Sanborn, et al. v. Viridian Energy, Inc.*, No. 3:14-cv-01731-SRU (D. Conn.)

Dear Judge Underhill:

We represent defendant Viridian Energy, Inc. ("Viridian") in the above-referenced action. We write jointly with Plaintiffs' counsel regarding three discovery issues that have arisen recently, only one of which is disputed. The parties approach the Court consistent with Chamber's practices regarding discovery disputes. To that end, the parties have met-and-conferred telephonically on February 9 and 11, 2016 regarding the above-described issues. Not having reached agreement on one of them and, because the other requires a Court order to effectuate, the parties believe that a conference call at the Court's earliest convenience can resolve the issues. The parties' respective positions on each discovery issue are set forth below.

The parties have reached agreement on several issues:

- The parties *agree*, subject to the Court's approval, that fact discovery should be re-opened until March 15, 2016 for the limited purpose of allowing (i) Viridian to depose, James Glaser ("Glaser"), a non-party witness who was identified by Plaintiff Lori Sanborn ("Sanborn") during her deposition on February 4, 2016, and, (ii) if the Court so orders, further deposition of Viridian's Rule 30(b)(6) witness, and will file a formal motion if the Court wishes.

- The parties further *agree* that Viridian may depose a Glaser during this time period.

- Finally, Plaintiffs' expert resigned to become the Chief Economist for the electricity market regulator for the mid-Atlantic states. Plaintiffs have retained a new expert. As a result, Plaintiffs request, and Viridian agrees to, an extension of the expert disclosure date of 30 days (to April 1, 2016) and of the date for filing Plaintiffs' motion for class certification by 15 days (also to April 1), as discussed further in Plaintiffs' position statement below.



Hon. Stefan R. Underhill
February 16, 2016
Page 2

The parties *disagree*, however, as to whether Plaintiffs may continue the 30(b)(6) deposition of Defendant.[1] Accordingly, the dispute to be resolved by the Court is whether Plaintiffs are entitled to additional testimony by the corporate Defendant, and if so, whether Defendant may respond in writing, or, if by oral testimony, whether that testimony should be limited to 1.5 hours.

The parties will proceed as the Court deems fit, including whether this letter and the attached exhibits should be docketed as a motion for limited discovery relief. It bears noting that Parikh's deposition transcript was designated as "Confidential" pursuant to the Standing Protective Order entered on November 19, 2014 (Docket No. 4) given that it contains substantial testimony regarding Viridian's and its corporate parent's confidential trade secrets and proprietary business information. Thus, should the Court be inclined to have this joint letter docketed, Viridian respectfully requests that it be accorded the opportunity to redact the confidential testimony excerpted herein and seal the transcript itself.

## I.    GENERAL PROCEDURAL POSTURE OF THE CASE

Disputes concerning the pleadings were resolved on August 18, 2015 when the Court denied Viridian's motion to dismiss the Second Amended Complaint.

Document production was completed in bulk by the Plaintiffs on December 4, 2015, with follow-up responses on January 15 and February 1, 2016. Document production was completed in bulk by Viridian on December 14, 2015, with supplemental productions on January 7 (seven telemarketing and third-party verification scripts)[2] and January 29, 2015 (one copy each of Viridian's recently revised, current Connecticut and Massachusetts contracts). Viridian also produced on January 25, 2016, a little more than 100 emails and their attachments, pursuant to Plaintiffs' January 6, 2016 request for electronic discovery (discussed *infra*).

Although fact discovery closed on February 1, 2016, the parties agreed that Viridian would depose Plaintiffs on February 4 and 5, 2016 (two each day at Plaintiffs' counsel's office in West Hartford,

---

[1]     The Court has previously granted one extension of the case schedule (including discovery deadlines) by order of September 9, 2015 [Docket No. 67], which approved a stipulated schedule submitted by the parties [Docket No. 66].

[2]     Viridian did not place telemarketing calls to any Plaintiff nor did any Plaintiff enroll via telephone. All claim to have been solicited by Independent Viridian Associates ("IVAs") face-to-face. Viridian does not provide its IVAs with scripts or standardized marketing materials. Nonetheless, on January 7, 2016, Viridian's counsel wrote to Plaintiffs' counsel: "Although Plaintiffs have represented several times to the Court throughout this litigation that their claims rest entirely on the variable language set forth in their respective contracts with Viridian, *see, e.g.*, Apr. 1, 2015 Hrg. Tr. at 29:8-13; Aug. 18, 2015 Hrg. Tr., at 42:6-7, as a courtesy, please find enclosed a CD-ROM containing a supplemental production of Viridian's third-party verification (TPV) and telemarketing scripts (Bates range VIR-SAN-067268 to -331)." Jan. 7, 2016 Letter from D. Blynn to S. Klein.

VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 3

Connecticut). Following the deposition of Sanborn, Viridian concluded that it wished to take Glaser's deposition. Plaintiffs do not object to Viridian's request to re-open fact discovery for the limited purpose of allowing that deposition to be being taken by March 15, 2016.

In its initial disclosures on May 29, 2015, Defendant identified numerous employees with relevant knowledge of the issues in this case, including numerous senior employees and members of Viridian's "supply team," such as Christian McArthur (Viridian's Executive Vice President of Procurement, Pricing and Product Engineering). Thereafter, on October 20, 2015, Viridian produced a list of nearly 40 "decision-makers" who were employed during the statutory period. The parties met and conferred on deposition issues. Rather than depose many different employees of Defendant, Plaintiffs decided that they would take a single Rule 30 (b)(6) deposition. Although Plaintiffs asked to take the deposition the week of January 4, due to all parties' various scheduling issues, the parties agreed that the deposition of the proffered witness, the Chief Operating Officer of Defendant's corporate parent, Chaitu Parikh ("Parikh"), would occur on January 29, 2016. However, following the deposition and review of the transcript and after consultation with Plaintiffs' experts, Plaintiffs concluded that they would need to continue the deposition of the corporate Defendant to obtain information that Parikh was not able to provide, and offered to do so also by the proposed March 15 deadline. Defendant objects to this deposition.

## II. VIRIDIAN'S POSITIONS

### A. Relevant Background

Viridian apologizes to the Court in advance for the length of this procedural background section. However, the chronology is important to set the stage for the the discovery issues noted above.

This case has been pending for nearly 15 months and Plaintiffs still have not moved for class certification despite their September 2, 2015 acknowledgment "of this Court's preference for prompt class certification motions" and their assurance that they "will strive to file their Motion in advance of this date [March 15, 2016] and as soon as practicable." Docket No. 66, at 3 n.2. The parties exchanged their Rule 26(a) initial disclosures on May 29, 2015. In its Initial Disclosures, Viridian identified, among other individuals likely to have discoverable information:[3]

---

[3] Plaintiffs identified themselves only in their Initial Disclosures: "Plaintiffs Lori Sanborn, Kelly Carney (on behalf of BDK Alliance LLC), Christopher Kirk (on behalf of Iron Man LLC) and Stephanie Silver each has discoverable information concerning his or her own transactions with Defendant at issue in this litigation."

VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 4

| 3 | Chaitu Parikh, Chief Operating Officer (Current Employee), Viridian Energy, LLC | Knowledge of Viridian's purchases of electricity. |
|---|---|---|
| 4 | Christian McArthur, Executive Vice President of Procurement, Pricing and Product Engineering (Current Employee), Viridian Energy, LLC | Knowledge of Viridian's purchases of electricity; knowledge of Viridian's rate setting methodology and hedging practices; and knowledge of Viridian's various costs. |
| 5 | Kevin Bhuva, Director of Finance and Risk (Current Employee), Viridian Energy, LLC | Knowledge of Viridian's various costs; knowledge of Viridian's purchase of green/renewable energy certificates and the costs associated therewith. |

On October 20, 2015, Viridian produced a list of nearly 40 "decision-makers" who were employed during the statutory period to aid Plaintiffs as they pursued their discovery. On December 11, 2015, Plaintiffs' counsel wrote to Viridian's counsel, documenting several discovery agreements that the parties had reached, including that:

> The parties agreed that Viridian would confirm the availability of a first 30(b)(6) witness for January in response to our [Rule 30(b)(6) deposition] notice. We'd like to set that deposition for the week of January 4 if possible; in that regard, please bear in mind that Bob [Izard] is unavailable the week of 1/11-17[, 2016]."

Dec. 11, 2015 Email from S. Klein to D. Blynn (attached hereto as Exhibit "1"). Viridian's attorney responded that same afternoon that "Viridian will confirm the availability of its Rule 30(b)(6) witness to be deposed in January and will work with Plaintiffs to identify a mutually agreeable time factoring all parties' counsel's [sic] availability." Dec. 11, 2015 Email from D. Blynn to S. Klein (attached hereto as Exhibit "2"). Subsequently, Viridian and Plaintiffs agreed that Parikh would be deposed as Viridian's Rule 30(b)(6) witness on January 29, 2016.

Plaintiffs also agreed that "Viridian need not search its custodian's emails [for documents responsive to Plaintiffs' requests for production] until after the aforementioned deposition takes place and Plaintiffs can assess the need for such an email search." Exh. 1. They quickly recanted, however, and demanded on or about January 6, 2016 -- just over three weeks before Parikh's January 29 deposition -- that Viridian run several search terms across three-year's worth of two custodian's emails. Plaintiffs assured Viridian that, "[i]f we are able to agree on the above, **Plaintiffs agree not to** add any additional search terms for electronic discovery in this litigation or

# VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 5

to *attempt to recall Mr. Parikh for a second deposition.*" Jan. 8, 2016 Email from S. Klein to D. Blynn (emphasis added) (attached hereto as Exhibit "3"). Viridian complied with Plaintiffs' belated demands and produced all non-privileged documents responsive to Plaintiffs' production requests (along with a privilege log).

Fact discovery closed in this litigation on February 1, 2016. However, more than four months before that deadline, on September 28, 2015, Viridian served on Sanborn a first set of interrogatories; pursuant to Fed. R. Civ. P. 33(B)(2), Sanborn's responses were due on October 28, 2015. Sanborn's attorneys initially requested a 30-day extension of the response date – to November 27, 2015 – to which Viridian agreed. Sanborn's counsel, then, requested an additional week to respond – to December 4, 2015. Viridian also agreed to that extension, but its counsel explained to Sanborn's attorneys:

> ... I have no objection to Plaintiffs taking an additional week to ... provide written responses to Viridian's first sets of discovery. That new due date will be December 4. My concern, as I explained, is simply that Viridian has sufficient time to review the responses, meet-and-confer with you about those responses if necessary, depose the plaintiffs *(and other individuals should that be needed depending on the discovery responses)*, and have enough time to serve follow-up discovery if need be before the February 1, 2016 fact discovery cut-off date. I do not intend to interrupt your clients' holiday plans. However, I agree with you that, should Viridian or Plaintiffs be pressed for time, we can seek a short extension of the discovery deadline from Judge Underhill.

November 17, 2015 Email from D. Blynn to S. Klein (emphasis added) (attached hereto as Exhibit "4").

Sanborn served her responses to Viridian's first set of interrogatories on December 4, 2015. As the result of several weeks of teleconferences and written correspondence relating to perceived deficiencies Viridian identified in Sanborn's discovery responses, she agreed to amend her interrogatory answers and serve them upon Viridian "promptly." Dec. 30, 2015 Email from S. Klein to D. Blynn (attached hereto as Exhibit "5"). On January 7, 2016, still not having received Sanborn's amended interrogatory responses, Viridian's counsel emailed Plaintiffs' counsel inquiring as to when the amended answers would be served. Jan. 7, 2016 Email from D. Blynn to S. Klein ("Finally, we are still waiting on plaintiffs' supplemental interrogatory responses that you and I discussed on December 29. When do you expect those will be provided?") (attached hereto as Exhibit "6").

Sanborn ultimately served her amended responses on January 15, 2016. Relevant to this dispute, Viridian's Interrogatory No. 4 requested that Sanborn identify "all communications (whether

# VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 6

written or oral) that you have had with any person . . . relating to or concerning Viridian . . . and/or the Subject Matter of this Action. For each communication, identify . . . the names of the individuals who engaged in the communication . . . and describe in detail the content of the communication." Plaintiff asserted several boilerplate objections and objected to the extent that the Interrogatory sought Sanborn's communications with counsel, but responded:

> Response: Subject to the General Objections set forth above, Sanborn responds that she has had no communications with any third parties (other than her counsel) concerning Viridian or the Subject Matter of this Action. Sanborn reserves the right to supplement this response should she identify additional responsive communications.[4]

To accommodate the parties' and their counsels' respective schedules, the parties agreed that Viridian would depose Plaintiffs on February 4 and 5, 2016 (two each day at Plaintiffs' counsels' office in West Hartford, Connecticut), even though that would be beyond the discovery cutoff.[5]

Despite declaring under penalty of perjury on January 14, 2016 that she had spoken with no other people about Viridian, its rates, or this litigation, Sanborn testified only three weeks later during her deposition the afternoon of February 4 that, in fact, she had spoken with someone else about Viridian and filing suit against it – her employer, Jim Glaser, a Massachusetts attorney who operates a case referral network and has some sort of personal or business relationship with her counsel in this case. See Feb. 4, 2016 Tr. of Sanborn Deposition, at 18:16-19:25.[6] More specifically, Sanborn testified as follows:

> Q. How did you go about deciding that you needed to file a lawsuit?
> A. Well, I was cancelling -- I was on the phone with Viridian cancelling Viridian. And somebody had overheard the conversation and said if you are interested, put me in touch with Seth.
> Q. Who put you in touch with Mr. Klein?
> A. Somebody that I work with.

---

[4]  A complete copy of Sanborn's Revised Objections and Responses to Viridian's First Set of Interrogatories is attached hereto as Exhibit "7."

[5]  Plaintiff BDK Alliance LLC unilaterally decided to cancel its deposition scheduled for February 5, 2016 that morning due to snow (although, upon information and belief, BDK Alliance's Rule 30(b)(6) witness appears to have been able to drive to work at one of her restaurants that morning instead). On February 15, 2016, Plaintiffs' counsel notified Viridian's attorneys that: "Ms. Carney [i.e., BDK Alliance] has opted not to continue as a lead plaintiff due to separate business pressures that have arisen and are taking all of her time. Accordingly, we will not be advancing her as a class representative." Thus, this case is dismissed as to BDK Alliance.

[6]  A complete copy of Sanborn's deposition transcript is attached hereto as Exhibit "8."

# VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 7

> Q. Who is that?
> A. Jim Glaser.
> Q. And who is Jim glazer?
> A. What do you mean who is he? My relationship with him?
> Q. Yes.
> A. He's my boss.
> Q. And what communications did you have with Jim Glaser that led to him that you contact Seth Klein to file a lawsuit against Viridian?
> A. Can you say that again?
> Q. Describe the circumstances where Jim Glaser recommended that you contact Seth Klein to file a lawsuit?
> A. He said to me -- I said to him I'm getting rid of Viridian. I'm paying too much money for it. It's ridiculous. I said this is crazy. And he said to me, why don't you speak to my buddy Seth about this or my colleague Seth or somebody I know Seth. Not his colleague. It's not his colleague.

*Id.*; *see also id.* at 122:3-24. Sanborn further testified that that conversation with Glaser took place during the six-day period between when she called Viridian to terminate her variable rate plan, decided to sue Viridian, and the date this lawsuit was filed (November 13 to November 19, 2014). *Id.*, at 120:18-124:2. She also explained that Glaser receives compensation for the cases that he refers to other attorneys, but she is unaware if he was paid by her attorneys for referring this case to them. *Id.*, at 22:5-24; 133:17-134:4.

What is missing from Sanborn's testimony, however, are specifics as to, among other things, (i) what Glaser actually told her, which caused her to file suit against Viridian; (ii) whether he told her that a lawsuit already was in the works and was just missing a named plaintiff (*see id.*, at 122:14-17); (iii) what she told Glaser; and (iv) whether Glaser was paid by Plaintiffs' counsel for referring his employee to them to serve as their lead plaintiff. Viridian seeks to depose Glaser for a period of not longer than four hours regarding these issues, which may provide evidence useful to Viridian's opposition to Plaintiffs' forthcoming motion for class certification and its own motion for summary judgment. Plaintiffs do not oppose re-opening discovery for the limited purpose of allowing such deposition to move forward.

### B. Argument

#### a. Viridian's Unopposed Request to Re-Open Discovery for the Limited Purpose of Deposing Glaser

"A trial court is given broad discretion in managing a trial, and this discretion includes a certain amount of latitude to deviate from the terms of the pretrial order." *HBE Leasing Corp. v. Frank*,

VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 8

22 F.3d 41, 45 (2d Cir. 1994) (internal citations to other Second Circuit authority omitted). It is within the Court's discretion to reopen discovery upon a showing of "good cause." Fed. R. Civ. P. 16(b)(4). Under this standard, the Court should grant Viridian's unopposed request to re-open discovery for the limited purpose of permitting Viridian to depose Glaser.

Viridian has diligently pursued discovery in this case, having served its first sets of discovery more than four months before the close of discovery. Sanborn, however, failed to identify Glaser or any other individual as having communicated with her, other than the Independent Viridian Associate ("IVA") who purportedly solicited her on or about the day that she enrolled with Viridian. She did not disclose Glaser in her initial disclosures as an "individual likely to have discoverable information" as is required by Fed. R. Civ. P. 26(a)(1)(A)(i); she did not identify him in her interrogatory responses. In fact, as detailed above, she explicitly stated without qualification that **"she has had no communications with any third parties (other than her counsel) concerning Viridian or the Subject Matter of this Action."** Exh. 7, at Interrog. No. 4 (emphasis added). It was not until she was questioned at her deposition on February 4, 2016 that she finally relented and identified Glaser as having been someone with whom she spoke about Viridian and who directed her to her attorneys to file suit less than six days after she terminated her Viridian variable rate electricity plan.

Good cause exists to support the limited relief that Viridian requests and to which Plaintiffs' do not object. Without an order re-opening discovery for the limited purpose of allowing Viridian to depose Glaser, Viridian will be prejudiced by not being able to conduct discovery of relevant information that it was unable to obtain prior to the close of discovery. Rather, Sanborn will benefit from her discovery gamesmanship and patently false answer to Viridian's Interrogatory No. 4. By reopening discovery to allow Viridian an opportunity to depose Glaser, the Court could restore Viridian's discovery rights and right to due process and a fair trial. Finally, re-opening discovery in the limited manner Viridian requests would pose no prejudice to Plaintiffs or cause any delay as Viridian does not seek to have any existing deadlines continued. No trial date is set and Plaintiffs already have obtained all the discovery they need to move for class certification on March 15, 2016. Glaser is not Sanborn's attorney and, thus, there is no concern that his conversations with her are privileged. *See* Sanborn Tr., at 4:16-25 (testifying that she is not represented by any attorneys other than putative class counsel). Even if he did represent Sanborn, Sanborn testified numerous times as to the general substance of her communications with Glaser, thereby waiving any attorney-client privilege that might attach to such testimony in the first instance. Viridian is entitled to explore the specifics of Sanborn's conversations with Glaser and whether putative class counsel paid Glaser for providing them with his employee to serve as their lead plaintiff. In short, Plaintiffs would suffer no prejudice if Viridian were permitted to depose Glaser, especially since the need for this discovery resulted from Sanborn's own failure to comply with her disclosure obligations and refusal to answer Viridian's Interrogatory No. 4 truthfully. Nor do Plaintiffs' suggest that they would suffer any prejudice or object to the relief Viridian requests.

VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 9

Accordingly, Viridian respectfully requests the Court to re-open discovery and allow it to depose Glaser as expeditiously as possible. No other pretrial dates need be altered to accord Viridian with the limited discovery it seeks.

### b. Viridian's Rule 30(b)(6) Witness Was Adequate and Provided Complete Testimony

On February 11, 2016 – for the first time since Parikh's Rule 30(b)(6) deposition and only after Viridian raised with Plaintiffs the issue of re-opening discovery for the limited purpose of deposing Glaser – Plaintiffs' counsel emailed Viridian's attorneys as follows:

> . . . I have looked over Mr. Parikh's transcript, and he wasn't able to answer some of my questions. So, we will need a little follow-up, probably with someone from the supply group. So, given the additional discovery you want, I think our suggestion of extending fact discovery 60 days, and other deadlines 30 days, makes sense.

Feb. 11, 2016 Email from R. Izard to D. Blynn.

During the parties' telephonic meet-and-confer later that morning, Viridian's counsel asked Plaintiffs' counsel to identify those specific questions that he felt Parikh failed to adequately answer; Plaintiffs' counsel refused to do so and simply said "look at the transcript." Viridian accepted Plaintiffs' invitation and has reviewed the transcript to identify those questions that Parikh was unable to answer. Of the 947 total questions that Parikh was asked by Plaintiffs' counsel, he responded "I don't know" or expressed his inability to answer approximately 50 times.[7] And the overwhelming majority of those responses were to very specific and detailed questions, many of which are beyond the scope of the Rule 30(b)(6) deposition topics Plaintiffs' noticed and are unlikely to be relevant to Plaintiffs' forthcoming motion for class certification, including, for example:

---

[7] See Jan. 29, 2016 Tr. of Chaitu Parikh Dep. Tr. (attached hereto as Exhibit "9"), at 10:25-11:5; 17:10:15; 17:25-18:7; 19:6-17; 22:2-5; 25:15-20; 28:14-18; 36:14-16; 37:21-38:3; 39:6-18; 39:25-40:2; 40:3-4; 41:7-42:2; 43:23:25; 47:9-15; 56:6-9; 71:7-15; 73:11:15; 85:12-86:2; 87:16-25; 92:6-11; 111:10-18; 137:10-13; 150:5-19; 156:3-10; 160:21-25; 169:21-25; 172:12-21; 184:15-185:4; 191:6-16; 192:14-23; 197:6-8; 202:5-25; 203:21-25; 204:16-20; 210:21-211:5; 217:5-8; 218:7-11; 221:7-115. By way of comparison, Sanborn responded "I don't know" (30 times), "I can't recall" (12 times), "I'm not sure" (four times), or "I can't [or don't] remember" (six times) no less than 52 times in her own deposition in response to questions regarding the facts of her case, the operative complaint in this litigation, and her own experience with Viridian.

VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 10

- The date when the Massachusetts public utility commission began handling account collections (Parikh Tr. at 10:25-11:5);
- The specific physical locations of various "trading points" and "hub zones" in Massachusetts (*id.*, at 17:10:15; 17:25-18:7);
- Parikh's familiarity with certain terms used by Plaintiffs' counsel, such as "registered market participant" (*id.*, at 22:2-5);
- The specific percentage of "distribution loss" in Connecticut and Massachusetts (electricity physically lost as part of the standard distribution process) (*id.*, at 39:6-18; 39:25-36:2);
- Specific percentages of renewable energy credits Viridian buys per kilowatt hour, which vary by state, and their exact costs (*id.*, at 41:7-42:2; 43:23-25; 47:9-15);
- The specific times of the day that constitute "peak" versus "non-peak" hours (*id*, at 56:6-9);
- The meaning of certain sentences excerpted from the nearly 80,000 pages of documents that Viridian has produced in this litigation (*id.*, at 85:12-86:2);
- How many rate changes the Massachusetts public utility commission can process at any given time (*id.*, at 92:6-11);
- The specific number of times Viridian has not passed on commodity price movements to its variable rate customers (*id.*, at 111:10-18);
- Whether specific numbers contained within the thousands of spreadsheets that Viridian has produced are correct, the source for those numbers, and the meaning of each and every column heading in those spreadsheets (*id.*, at 191:6-16; 192:14-23; 197:6-8; 202:5-25; 204:16-20);
- The identity of each Viridian customer that received a specific variable rate (*id.*, at 203:21-25); and
- Information about Viridian's "3DOM" plans, which are not at issue in this or any of the other variable litigations against Viridian pending before this Court (*id.*, at 210:21-211:5).

As explained below, Viridian complied with Rule 30(b)(6)'s requirements and Plaintiffs, who have had more than a year to conduct the class and merits discovery they need, should not be permitted to extend discovery by two more months and depose additional Viridian employees. Their lack of diligence in pursuing discovery should not be rewarded.

Fed. R. Civ. P. 30(b)(6) requires that a corporate entity "designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf," and "[t]he persons designated must testify about information known or reasonably available to the organization." Rule 30(b)(6) does not require a responding entity to make subjective judgment calls about the

VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 11

"most qualified" or "most knowledgeable" individual to testify.[8] Rather, Viridian was obligated to "'make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer, completely, unevasively the questions posed . . . as to the relevant subject matters [set forth in the Rule 30(b)(6) deposition notice].'" *Lutes v. Kawasaki Motors Corp., USA*, No. 3:10CV1549 WWE, 2014 WL 657712, at *1-2 (D. Conn. Feb. 20, 2014) (citation omitted) (denying motion to compel further deposition testimony where Rule 30(b)(6) witness was unable to answer specific question contemplated by topics contained in deposition notice). Rule 30(b)(6) requires the deponent to educate himself thoroughly on the noticed topics, but "there must be a limit to the specificity of the information the deponent can reasonably be expected to provide." *United States ex rel. Fago v. M&T Mortg. Corp.*, 235 F.R.D. 11, 25 (D.D.C. 2006). Indeed, a Rule 30(b)(6) deposition is not a memory contest or an opportunity to require a witness to do detailed mathematical calculations on the spot. A corporate defendant and its counsel cannot be expected to anticipate every question or line of inquiry opposing counsel might ask in a Rule 30(b)(6) deposition in order to prepare their witness.

Whether there may be others at Viridian who can answer the small subset of questions that Parikh was unable to is not dispositive. Plaintiffs are not entitled to have absolutely every single question regarding the minutiae of Viridian's operations answered (many of which fall outside the scope of the topics contained in Plaintiffs' Rule 30(b)(6) deposition notice to which Viridian objected without any response from Plaintiffs in the first instance). Parikh is Viridian's Chief Operating Officer and has substantial knowledge regarding how Viridian purchases its energy and how it sets its rates. He has nearly two-decades of experience in the retail energy industry. Parikh spent many hours with Viridian's inside and outside attorneys preparing for his deposition. He answered nearly a thousand of Plaintiffs' counsel's questions relating to Viridian's energy purchasing and pricing practices, among other topics. In short, Parikh satisfied his obligations to be adequately prepared to testify as a Rule 30(b)(6) witness.

Plaintiffs are not entitled to further depositions or any additional discovery that they failed to take during the 15 months that this case has been pending. The dispute Plaintiffs raise and their request for 60 additional days for fact discovery and further amendment of all other pretrial dates is a thinly-veiled attempt to stall, and ratchet up Viridian's litigation costs in an effort to extract a settlement from Viridian. Another extension of the scheduling deadlines in this case also would create a log jam with the discovery and briefing deadlines set in two of the other cases against Viridian pending before the Court (*Steketee v. Viridian Energy, Inc.*, No. 3:15-cv-00585 (SRU)

---

[8]   Indeed, Viridian explained as much to Plaintiffs in General Objection No. 3 to its December 15, 2015 objections to the 35 topics and sub-topics contained in Plaintiffs' Rule 30(b)(6) Deposition Notice. Copies of Plaintiff's Rule 30(b)(6) Deposition Notice and Viridian's Objections thereto are attached hereto respectively as Exhibits "10" and "11."

VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 12

(D. Conn.), and *Hembling, et al. v. Viridian Energy, LLC*, No. 3:15-cv-1258 (SRU) (D. Conn.)).[9] In any event, if the Court finds that Plaintiffs are entitled to further answers to deposition questions, such deficiencies can be cured by having Viridian respond to such questions in writing. *See Lutes*, 2014 WL 657712, at *2. Alternatively, if the Court does order further Rule 30(b)(6) deposition testimony, Plaintiffs should not be permitted to re-ask questions already asked and answered, and, because they already have used up 5.5 hours of the seven hours allotted for depositions under Rule 30(d)(1), they should be allowed only an additional 1.5 hours for the balance of the deposition.

### III. PLAINTIFFS' POSITIONS

As set forth in the introduction to this letter, the parties have reached agreement on several issues, including, subject to the approval of the Court, entry of the following amended schedule, to accommodate the change in Plaintiffs' expert necessitated by circumstances outside Plaintiffs' control (discussed above):

| EVENT | CURRENT DATE | PROPOSED DATE |
|---|---|---|
| Close of Fact Discovery (as limited by the Court) | February 1, 2016 | March 15, 2016 |
| Service of All Affirmative Expert Reports by Both Parties | March 1, 2016 | April 1, 2016 |
| Plaintiffs' Motion for Class Certification | March 15, 2016 | April 1, 2016 |
| Service of All Rebuttal Expert Reports by Both Parties | May 1, 2016 | June 1, 2016 |
| Defendant's Opposition to Class Certification | May 15, 2016 | June 15, 2016 |
| Close of Expert Discovery, including Deadline for Deposition of All Experts | June 1, 2016 | July 1, 2016 |

---

[9] The deadlines in both *Steketee* and *Hembling* were agreed upon by the litigants specifically with the current schedule in this litigation in mind. *See, e.g.*, Exh. 2.

VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 13

| Plaintiff's Reply in Support of Class Certification | June 15, 2016 | July 1, 2016 |
| --- | --- | --- |
| Dispositive Motion Deadline | August 17, 2016 | September 1, 2016 |

In that regard, and as noted above, Plaintiffs have *agreed* to Defendant's request that it be allowed an extension of fact discovery to depose Mr. Glaser. Moreover, Plaintiff Sanborn openly disclosed her communication with Mr. Glaser at her deposition, and has nothing to hide. Accordingly, Plaintiffs remain confused about why Defendant has chosen to brief this uncontested issue so extensively in its lengthy position statement, other than, perhaps, to try to impugn wrongly Ms. Sanborn's and Plaintiffs' counsel's reputation before the Court.[10]

Defendant's refusal to agree to a short extension of the schedule to address Mr. Parikh's deficiencies as a 30(b)(6) witness is equally confounding. Last October, Defendant identified nearly 40 "decision makers" that Plaintiff arguably could depose. However, in order to conduct discovery as efficiently as possible, and after numerous discussions with Defendant, Plaintiff noticed only one deposition: the deposition of Defendant under Rule 30 (b)(6). Although defendants typically designate more than one witness to respond to a deposition of a corporate defendant, Defendant proffered only one witness, the Chief Operating Officer of Defendant's corporate parent, Mr. Parikh. Parikh Dep. Tr. at 3. Defendant assured Plaintiff that Mr. Parikh could testify as to all of the noticed subjects of inquiry.

But, Mr. Parikh was not able to answer many questions concerning Defendant's pricing practices which Plaintiff's expert needs for his analysis. For example, although under Defendant's variable rate contracts, Defendant's market costs are passed through to customers, Parikh did not know how certain cost components are determined. Parikh Dep. Tr. at 25. Similarly, he did not know how charges relating to transmission losses are handled. *Id.* at 39. He did not know how the prices of renewable energy credits vary. *Id.* at 47. Even though Defendant's variable rates purport to be based on "market conditions," in response to the critical question concerning identification of all market conditions factored into variable rates, he testified: SEALED CONFIDENTIAL INFORMATION
*Id.* at 81. On follow-up, Mr. Parikh similarly stated "SEALED CONFIDENTIAL INFORMATION
*Id.* at 82. While these are simply examples from the first portion of the transcript, and there are many more. *See Id.* at 87, 96-97, 112, 144-45,

---

[10] Defendant's position statement contains numerous representations that are either false or misleading concerning the content and course of discovery and related negotiations. But, because they are also irrelevant, Plaintiffs have elected not to respond. To the extent the Court would like a response to any additional statements by Defendant, they will do so at the Court's direction.

VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 14

150, 178-79, 184-85, 217. Given that the key issue in this case is Defendant's variable rate pricing and the market conditions that affect it, Plaintiff is entitled to follow-up inquiry of a representative with specific knowledge of Defendant's pricing policies and activities. Indeed, when asked about the pricing models Defendant produced, Parikh testified, for example, SEALED CONFIDENTIAL INFORMATION *Id.* at 172. Parikh gave similar answers concerning other schedules produced by Defendant. *See id.* at 137,169,172,175,191,197,202-206,210-211,221.[11]

The foregoing are simply examples; there are many more throughout the deposition. Given that the key issue in this case is Defendant's variable rate pricing and its relationship to market conditions, Plaintiffs are entitled to follow-up inquiry of a representative with specific knowledge of Defendant's pricing policies and activities. Critically, Defendant, not Plaintiff, selected a witness who lacked knowledge sufficient to respond to the noticed subjects of inquiry. Based on Mr. Parikh's testimony, the more proper representative may have been from the Supply Group. In any event, because Defendant failed to provide discovery on critical subjects, Plaintiffs are entitled to additional inquiry.

The follow-up deposition should take substantially less than a day, and given that the first deposition lasted only 4½ hours, the total time Plaintiffs will have spent in depositions of Defendant's employees will be substantially less than 2 days, and will likely be less than the more than 8 hours Defendant has already spent taking Plaintiffs' depositions. When Defendant's proposed deposition of Mr. Glaser is included, the deposition time imbalance between Plaintiffs and Defendant is even more glaring.

Plaintiffs' request is not at all unusual. For example, in *Lutes v. Kawasaki Motors Corp., ISA,* No. 10-cv-1549 WWE, 2014 WL 657712 (D. Conn. Feb. 20, 2014), Judge Fitzsimmons held that a plaintiff was entitled to designation of a second corporate representative, and to take an additional 30(b)(6) deposition, where the defendant's original witness proved unable to actually testify thoroughly as to some of the topics on which he had been designated. The court further noted that allowing the plaintiff to take the additional deposition would require an "extension of the scheduling order," and directed the parties to submit "a joint motion for extension of the discovery deadlines and, if warranted," subsequent deadlines.[12]

---

[11] In misleadingly representing that Plaintiffs "refused" to identify Parikh's failures, Defendant fails to acknowledge Plaintiffs' explanation that there were too many to go over on the phone and that they could be more efficiently identified from the transcript. In that regard, the list of deficiencies above was set forth in previous drafts of this letter exchanged between the parties beginning several days before this letter was completed.

[12] Defendant cites *Lutes* in its position statement for the proposition that additional 30(b)(6) witnesses are not required every time a proffered witness cannot answer *every* question posed to him (and that allowing written supplementation can be appropriate in those circumstances). However, the *Lutes* court reached that conclusion with

# VENABLE LLP

Hon. Stefan R. Underhill
February 16, 2016
Page 15

Plaintiffs seek the same result here. Under Plaintiffs' proposal, Plaintiffs seek to take one additional deposition – the continued 30(b)(6) deposition – by March 15, 2016. Plaintiff believes that this proposal is eminently reasonable given the inability of Mr. Parikh to answer obviously material questions.

Defendant's arguments in response are without merit. For example, Defendant's contention that Plaintiff has delayed discovery is false. Specifically: (1) Defendant did not provide its list of 40 witnesses with knowledge until October, (2) the parties worked diligently throughout the fall to limit the number of depositions to agree on a 30 (b)(6) deposition process, (3) Defendant did not make the deponent available until January 29, despite the request that the deposition occur the week of January 4, (4) Defendant did not complete its document production until late January and (5) Defendant, not Plaintiff, selected a witness who lacked sufficient knowledge. Defendant's position is particularly ironic in that any claim that Plaintiffs engaged in undue delay in deposing Defendant applies equally to Defendant: Defendant could have deposed Plaintiff Sanborn much earlier in the discovery period and learned that it wanted to depose Mr. Glaser long before the close of discovery.

Defendant contends that Plaintiffs agreed not to seek additional testimony of Defendant. However, that agreement assumed that Mr. Parikh was a fully knowledgeable witness as represented by Defendant. As discussed above, that turned out not to be the case, and Plaintiffs are entitled to the information Defendant agreed to provide.

Defendant's argument that Plaintiffs are attempting to stall and ratchet up litigation costs also is incorrect. Given the numerous employees with knowledge identified by Defendant, Plaintiffs could have taken numerous deposition. Instead, they have taken only one deposition for a total of 4.5 hours, which is much less time than the more than 8 hours Defendant has already spent taking depositions. Frankly, it is hard to imagine deposition discovery being handled more efficiently.

Particularly given that Defendant seeks additional fact discovery, Defendant unreasonably contends that Plaintiffs should be sharply and significantly limited in their own follow-up discovery. For example, Defendant contends that Plaintiffs should be forced to accept written responses to the unanswered questions. But Plaintiffs are entitled to a deposition, not carefully crafted responses written by lawyers.

---

regard to a specific topic where the witnesses "was not able to provide a specific answer to *one* question." *Lutes,* 2014 WL 657712 at *1-2 (emphasis added). With regard to a topic where the witness' deficiency was much more significant than failure to answer a single question, the court (as discussed above) ***did*** require designation of an additional 30(b)(6) witness. Here, Mr. Parikh was unable to fully testify concerning several essential subjects of inquiry, as discussed above.



Hon. Stefan R. Underhill
February 16, 2016
Page 16

In the same vein, Defendant argues that the Court should impose an arbitrary 1.5 hour limit on the deposition, which Defendant can obviously manipulate to deny Plaintiffs any meaningful information. Ironically, Defendant has not proposed that its deposition of Mr. Glaser be limited in any way. Moreover, Plaintiffs have already demonstrated a commitment to conduct deposition discovery efficiently. Assuming Defendant proffers a knowledgeable and cooperative witness, Plaintiffs are confident that the deposition can occur in much less than a day. However, Defendant should not be allowed to use an arbitrary time limit to give it the opportunity to "wait out" a 90-minute clock through vague, slow or indirect answers, denying Plaintiffs the discovery to which they are entitled. Moreover, given that Defendant has already spent twice the time Plaintiffs have spent taking depositions, even if Plaintiffs deposed Defendant for another full day, which they will not, Plaintiffs still will have spent less time than Defendants after Defendant takes the deposition of Mr. Glaser.

Both parties seek additional follow-up fact discovery and both should be allowed that discovery. Accordingly, Plaintiffs request should be granted.

Respectfully submitted,

Daniel S. Blynn

*An attorney for Defendant Viridian Energy, Inc.*

Robert A. Izard

*An Attorney for Plaintiffs Lori Sanborn, Ironman LLC, and Stephanie Silver*

cc: Alice Buttrick, Law Clerk, U.S. District Court for the District of Connecticut (via email)
    Counsel of Record (via email)