REDACTED VERSION

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORI SANBORN, IRON MAN LLC and STEPHANIE SILVER, on behalf of herself and all others similarly situated, | Civil Action No. 3:14-cv-1731 |
| Plaintiff, | |
| vs. | |
| VIRIDIAN ENERGY, INC. | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

REDACTED VERSION

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................2

    A.  Market Background ........................................................................................2

    B.  Viridian Purchases of Power .........................................................................3

    C.  Viridian's Sales to Variable Rate Customers ...............................................6

    D.  Viridian's Variable Rate Pricing and Margins ............................................7

    E.  Viridian's Violation of its Contracts ...........................................................11

    F.  Damages .......................................................................................................13

III.    LEGAL STANDARD .........................................................................................14

IV.     PLAINTIFF HAS SATISFIED RULE 23(a) ......................................................15

    A.  The Class is Sufficiently Numerous ...........................................................15

    B.  There are Common Questions of Law or Fact ............................................16

        1.  Plaintiffs' Unfairness Claim Involves Common Issues ...................17

        2.  Plaintiffs' Claim for Breach of the Implied Covenant of
            Good Faith and Fair Dealing Involves Common Issues ...................22

        3.  Plaintiffs' Deception Claim Involves Common Issues ....................24

    C.  Plaintiffs' Claims are Typical of the Claims or Defenses of the Class ......27

    D.  The Named Plaintiffs Will Fairly and Adequately Protect
        the Interests of the Class .............................................................................28

V.      PLAINTIFF HAS SATISFIED RULE 23(b)(3) .................................................31

    A.  Common Questions of Law or Fact Predominate .......................................31

    B.  A Class Action is Superior to Other Methods of Adjudication .................32

        1.  Rule 23(b)(3)(A) ..............................................................................32

        2.  Rule 23(b)(3)(B) ..............................................................................34

        3.  Rule 23(b)(3)(C) ..............................................................................34

        4.  Rule 23(b)(3)(D) ..............................................................................34

VI.     THE CLASS IS ASCERTAINABLE ..................................................................36

VII.    CONCLUSION ...................................................................................................37

REDACTED VERSION

# <u>TABLE OF AUTHORITIES</u>

*Ackerman v. Coca-Cola Co.,*
No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) .................30

*Allen v. Dairy Farmers of Am., Inc.,*
No. 5:09-CV-230, 2012 WL 5844871 (D. Vt. Nov. 19, 2012)..................................30

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997)...................................................................................................2, 14

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds,*
133 S. Ct. 1184 (2013)......................................................................................1, 16, 25

*Artie's Auto Body v. Hartford Fire Ins. Co.,*
287 Conn. 208 (2008) ....................................................................................... 20-21, 27

*Aspinall v. Phillip Morris Cos.,*
442 Mass 381 (Mass. 2004) ......................................................................................2, 24

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
222 F.3d 52 (2d Cir. 2000)........................................................................................28, 30

*Bailey v. Lanou,,*
138 Conn. App. 661 (2012) ...................................................................................... 26-27

*Banyai v. Mazur,*
205 F.R.D. 160  (S.D.N.Y. 2002) ..............................................................................15

*Caldor, Inc. v. Heslin,*
215 Conn. 590 (1990) .............................................................................................. 24-25

*Carnegie v. Household Int'l, Inc.,*
376 F.3d 656 (7th Cir. 2004) ....................................................................................33

*Comcast Corp. v. Behrend,*
133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013) ..............................................................32

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473, 483 (2d Cir. 1995)................................................................................15

*Country Club Assocs. v. Shaw's Supermarkets, Inc.,*
643 F. Supp. 2d 243 (D. Conn. 2009).......................................................................18

*D'Arpa v. Runway Towing Corp.,*
No. 12-CV-1120, 2013 WL 3010810 (E.D.N.Y. June 18, 2013) ..............................34

*Diaz v. Residential Credit Solutions, Inc.*,
    299 F.R.D. 16 (E.D.N.Y. 2014) ............................................................................30

*Donovan v. Philip Morris USA, Inc.*,
    268 F.R.D. 1 (D. Mass. 2010) ..............................................................................2

*Druker v. Roland Wm. Jutras Assocs., Inc.*,
    370 Mass. 383, 348 N.E.2d 763 (1976) ..............................................................22

*Dura–Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) .............................................................................31

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) .............................................................2, 32, 35

*Einbinder v. Petro, Inc.*,
    No. AANCV116005353S, 2012 WL 1139032 (Conn. Super. Ct. Mar. 9, 2012) ........24

*Estate of Gardner v. Continental Casualty Co.*,
    No. 3:13-cv-1918(JBA), 2016 WL 806823 (D. Conn. March 1, 2016) .......................2

*F.T.C. v. Bronson Partners, LLC*,
    564 F. Supp. 2d 119 (D. Conn. 2008) ..................................................................25

*In the Matter of Figgie Int'l, Inc.*,
    107 F.T.C. 313, 1986 WL 722111 (1986) .............................................................25

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009).................................................................................28

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) .........................................................................30

*Fraser Engineering Co., Inc. v. Desmond*,
    26 Mass.App.Ct. 99, 524 N.E.2d 119 (1988) ........................................................24

*Gen. Tel. Co. of S.W. v. Falcon*,
    457 U.S. 147 (1982)...........................................................................................15

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981).............................................................................................15

*Gupta v. New Britain General Hospital*,
    239 Conn. 574 (1996) ........................................................................................22

REDACTED VERSION

*Hallmark v. Cohen & Slamowitz, LLP,*
   293 F.R.D. 410 (W.D.N.Y. 2013)................................................................................28

*Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.,*
   445 Mass. 790  (2006) .............................................................................................18

*Hickory Sec. Ltd. v. Rep. of Argentina,*
   493 Fed. App'x. 156 (2d Cir. 2012)....................................................................21, 31

*Hinchliffe v. American Motors Corp.,*
   184 Conn. 607 (1981) ...............................................................................18, 24, 26

*Hoffnagle v. Henderson,*
   No. CV020813972S, 2003 WL 21150549 (Conn. Super. Ct. Apr. 17, 2003).............22

*Izzarelli v. R.J. Reynolds Tobacco Co.,*
   117 F. Supp. 2d 167 (D. Conn. 2000)........................................................................24

*Kaye v. Amicus Mediation & Arbitration Grp., Inc.,*
   300 F.R.D. 67 (D. Conn. 2014)..................................................................................36

*LaFlamme v. Carpenters Local #370 Pension Plan,*
   212 F.R.D. 448 (N.D.N.Y. 2003) ..............................................................................15

*Linkage Corp. v. Trustees of Boston Univ.,*
   679 N.E.2d 191, 209 (Mass. 1997) ...........................................................................18

*Magnan v. Anaconda Industries,*
   193 Conn. 558 (1984) ...............................................................................................22

*Mahon v. Chicago Title Ins. Co.,*
   296 F.R.D. 63 (D. Conn. 2013)..........................................................16, 27, 31, 33

*Milford Paintball, LLC v. Wampus Milford Assocs., LLC,*
   156 Conn. App. 750 (2015) ......................................................................................18

*Neighborhood Builders, Inc. v. Town of Madison,*
   294 Conn. 651 (2010) .................................................................................................2

*In re Pharmaceutical Industry Average Wholesale Price Litig.,*
   230 F.R.D. 61 (D. Mass. 2005)..................................................................................35

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985)...................................................................................................33

REDACTED VERSION

*Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co., Inc.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) ...................................................................................28

*Richards v. Direct Energy Services LLC*,
  120 F. Supp. 3d 148 (D. Conn. 2015) ........................................................................20

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) .......................................................................................27

*Robinson v. Metro–North Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001)........................................................................................27

*Royal Indem. Co. v. King*,
  532 F. Supp. 2d 404 (D. Conn. 2008) ........................................................................23

*Salvas v. Wal-Mart Stores, Inc.*,
  No. 013645, 18 Mass. L. Rptr. 651 (Mass. Super. Dec. 30, 2004)...............................2

*Scott v. Aetna Servs., Inc.*,
  210 F.R.D. 261 (D. Conn. 2002)..................................................................................31

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) .................................................................................25

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
  293 F.R.D. 287 (E.D.N.Y. 2013) ..........................................................................30, 36

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
  256 F.R.D. 284 (D. Conn. 2009)..................................................................................35

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
  282 U.S. 555 (1931)..............................................................................................31, 32

*Sykes v. Mel S. Harris & Associates LLC*,
  780 F.3d 70 (2d Cir. 2015)..........................................................................................16

*In re Symbol Technologies, Inc. Sec. Litig.*,
  No. 05-CV-3923 DRH AKT, 2015 WL 3915477 (E.D.N.Y. June 25, 2015) .............30

*Thompson v. Linvatec Corp.*,
  No. 06-0404, 2007 WL 1526418 (N.D.N.Y. May 22, 2007)......................................15

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)........................................................................................33

REDACTED VERSION

*Ventres v. Goodspeed Airport, LLC,*
    275 Conn. 105 (2005) ................................................................................18

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001) ....................................................................35

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ........................................................................15, 16

*Weiler v. PortfolioScope, Inc.,*
    469 Mass. 75, 12 N.E.3d 354 (2014) .......................................................23

*Wise v. Cavalry Portfolio Servs., LLC,*
    No. 3:09-CV-86 CSH, 2010 WL 3724249 (D. Conn. Sept. 15, 2010) .......................33

*Zyburo v. NCSPlus, Inc.,*
    44 F. Supp. 3d 500 (S.D.N.Y. 2014) .......................................................28


## STATUTES, REGULATIONS, RULES & MISCELLANEOUS

Class Action Fairness Act,
    Pub. L. No. 109-2, § 2(a)(1), 119 Stat. 4 (2005) ........................................14

Conn Gen. Stat. §16-245o(f)(1) .........................................................................23

Conn Gen. Stat. §16-245o(f)(2) .........................................................................19

Connecticut Unfair Trade Practices Act,
    Conn Gen. Stat. § 42-110a *et seq.*....................................2, 17-21, 24-27, 35

Conn Gen. Stat. § 42-110g.................................................................................20

Conn Gen. Stat. § 42-110g(a) ...........................................................................35

Fed. R. Civ. P. 23(a) .....................................................................................1, 15

Fed. R. Civ. P. 23(a)(1) .............................................................................. 15-16

Fed. R. Civ. P. 23(a)(2) .............................................................................. 16-27

Fed. R. Civ. P. 23(a)(3) .............................................................................. 27-28

Fed. R. Civ. P. 23(a)(4) .............................................................................. 28-30

Fed. R. Civ. P. 23(b)(3)........................................................... 1, 15, 17, 30-36

REDACTED VERSION

Fed. R. Civ. P. 23(b)(3)(A) .................................................................................. 32-33

Fed. R. Civ. P. 23(b)(3)(B) ....................................................................................34

Fed. R. Civ. P. 23(b)(3)(C) ....................................................................................34

Fed. R. Civ. P. 23(b)(3)(D) ................................................................................ 34-36

Fed. R. Civ. P. 23(g) ............................................................................................30

Fed. R. Civ. P. 23(g)(1)..................................................................................1, 30

Massachusetts Regulation of Business Practices for Consumers' Protection Act,
    Mass. Gen. Laws. Ann. Ch. 93A .......................................2, 17-21, 24-27, 35

Mass. Gen. Laws. Ann ch. 93A, § 9 .....................................................................36

Restatement (Second) of Contracts, § 205.....................................................22

220 CMR §11.06(4)(a).....................................................................................23

940 CMR §19.04................................................................................................19

REDACTED VERSION

Plaintiffs Lori Sanborn, Iron Man LLC and Stephanie Silver ("Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion for Class Certification.[1]

## I.   INTRODUCTION

Pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs seek certification of a class of Connecticut and Massachusetts consumers to whom Defendant Viridian Energy, Inc.  ("Viridian") promised an electric rate that would be tied to market conditions, but whom Viridian instead charged an extraordinarily high premium rate for electricity *regardless* of fluctuations in market conditions.  Specifically, Plaintiff seeks certification of the following Class:

> All individual residential and small business consumers enrolled (either initially or through "rolling over" from a fixed rate plan) in a Viridian Energy, Inc. variable rate electricity plan in connection with a property located within Connecticut or Massachusetts at any time during the following Class Period:
>
> (i)   in Connecticut from April 1, 2013, through October 26, 2015;
>
> (ii)   in Massachusetts in the National Grid and NSTAR service areas from May 1, 2013, through October 26, 2015; and
>
> (iii)   in Massachusetts in the WMECO service area from February 1, 2014 through October 26, 2015
>
> Specifically excluded from this Class are:  the Defendant, the officers, directors and employees of Defendant; any entity in which Defendant has a controlling interest; any affiliate, legal representative of Defendant; the judge to whom this case is assigned and any member of the judge's immediate family; and any heirs, assigns and successors of any of the above persons or organizations in their capacity as such.

Plaintiffs respectfully move that this Court certify the proposed Class, appoint Plaintiffs as the Representatives of the Class and appoint Plaintiffs' counsel as Counsel for the Class pursuant to Rule 23(g)(1).  As set forth below, Viridian's misconduct is an unfair practice under both the

---

[1]  Former plaintiff BDK Alliance LLC filed a Stipulation of Voluntary Dismissal of its claims [ECF No. 73], which was subsequently granted by this Court [ECF No. 76].

REDACTED VERSION

Connecticut Unfair Trade Practices Act ("CUTPA") and the Massachusetts Regulation of Business Practices for Consumers' Protection Act ("MCPA"); a breach of the covenant of good faith and fair dealing implied in every contract; and a deceptive practice under both CUTPA and the MCPA.

Consumer protection claims are particularly appropriate for class treatment since individual damages tend to be small and the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 689 (1997) (citation and quotation omitted); *see also Ebin v. Kangadis Food Inc.,* 297 F.R.D. 561, 567 (S.D.N.Y. 2014) ("the class action device, at its very core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit."). Indeed, Connecticut and Massachusetts courts have routinely certified classes alleging claims for breaches of CUTPA, the MCPA and breach of the covenant of good faith and fair dealing. *See Estate of Gardner v. Continental Casualty Co.,* No. 3:13-cv-1918(JBA), 2016 WL 806823 (D. Conn. March 1, 2016) (certifying CUTPA, breach of contract, and bad faith classes); *Donovan v. Philip Morris USA, Inc.,* 268 F.R.D. 1 (D. Mass. 2010) (certifying MCPA class); *Aspinall v. Phillip Morris Cos.,* 442 Mass 381 (Mass. 2004) (same); *Neighborhood Builders, Inc. v. Town of Madison,* 294 Conn. 651 (2010) (certifying CUTPA class); *Salvas v. Wal-Mart Stores, Inc.,* No. 013645, 18 Mass. L. Rptr. 651 (Mass. Super. Dec. 30, 2004) (certifying breach of covenant of good faith and fair dealing class).

## II.  FACTUAL BACKGROUND

The following facts are drawn from Viridian's document production and the deposition testimony of Viridian's two Rule 30(b)(6) designees, Chaitu Parikh and Christian McArthur, as

REDACTED VERSION

well as the analysis of Plaintiffs' experts in the Expert Report of Seabron Adamson and Edo Macan

dated April 1, 2016 ("Adamson Report") (attached hereto as Exhibit A).

### A.  Market Background

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████ ██████████████████

█████████████████████████████████████████████████████.

### B.  Viridian Purchases of Power

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

---

2  ██████████████████████████████████████████████████████████
████████████████████████████████████████████

█

REDACTED VERSION

**C. Viridian's Sales to Variable Rate Customers**

REDACTED VERSION

Viridian sold variable rate plans pursuant to uniform variable rate contracts. From the start of the Class Period through November 2013, Viridian's contract forms stated that Viridian's variable rates would fluctuate based on "***wholesale market conditions***" (emphasis added).  *See, e.g.,* Ex. E attached hereto (sample Connecticut contracts) at 1 ("variable charges are set by Viridian and will fluctuate with month-to-month wholesale market conditions applicable to the [local utility] service area"); Ex. F attached hereto (sample Massachusetts contracts) at 2 ("your price may fluctuate from month to month based on wholesale market conditions applicable to the [local utility's] service territory").[6]  From November 2013, through the end of the Class Period, Defendant's contracts stated that Viridian's variable rate "will vary based on several factors, including but not limited to ***market conditions***, operations costs, and other factors." *See, e.g.,* Ex. E (Connecticut contracts) at 3; Ex. F (Massachusetts contracts) at 5.[7]

### D.  Viridian's Variable Rate Pricing and Margins



----

[6] Exhibits E and F are excerpts from Exhibits 24 and 25 marked at the deposition of Chaitu Parikh, which were broader compilations of Connecticut and Massachusetts contracts.  Exhibits 24 and 25 are too large to be accepted by ECF.  Plaintiffs would be happy to manually submit these complete compilation exhibits upon request by the Court.

[7] On October 15, 2015, perhaps in response to this lawsuit, Viridian instituted a new contract in both Connecticut and Massachusetts that both introduced an arbitration clause and substantially expanded the description of Viridian's variable rate setting policy to specifically include factors not covered by the relevant contracts in this litigation, such as, for example, "hedging costs."  Sales of electricity pursuant to this new contract are not covered by this litigation.

[8] ████████████████████████████████████████████████████████

REDACTED VERSION

REDACTED VERSION



REDACTED VERSION

[REDACTED]

Indeed, Plaintiffs' experts have analyzed Viridian's gross margin throughout the Class Period, using Viridian's costs **based on actual market conditions** [REDACTED]

[REDACTED]. *See* Adamson Report (Ex. A) at §5. [REDACTED]

[REDACTED]

---

[12] The same methodology was used to calculate all of these figures as set forth in note 11 above.

REDACTED VERSION

██████████████████████████████████████████████████████████████████

████████████████████████████.

### E.  Viridian's Violation of its Contracts

Defendant's contracts during the Class Period did not accurately state Viridian's variable rate pricing practices.  As an initial matter, there is no meaningful distinction between "wholesale market conditions" (as used in the first version of the contract) and "market conditions" (as used in the second).  Specifically, there are no market conditions separate from wholesale market conditions that would affect retail prices.  *See* Adamson Report (Ex. A) at §3.5.  As Plaintiffs' experts explain, in an efficient market, retail market prices converge with wholesale procurement costs, plus a margin to cover retailing costs.  Costs *not* related to wholesale costs or retailing do not reflect "market conditions."  *Id.*

Plaintiffs' experts have calculated Viridian's ***actual*** procurement cost for electricity. Adamson Report (Ex. A) at §3. █████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████

Contrary to Defendant's contract language, Viridian's variable rates were wholly disconnected from underlying (wholesale) "market conditions." █████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████s

REDACTED VERSION

███████████████████████████████████████████████████

███████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

Nor does the inclusion of the "operations costs" language in Viridian's post-November 2013 contracts justify Viridian's exorbitant variable rates. ████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

REDACTED VERSION

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

In the final analysis, Viridian promised in its contracts that its variable rate would "fluctuate" or "vary" with "market conditions" – that is, its wholesale costs. ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ This is not the variable rate to which Viridian's customers agreed.

### F. Damages

As set forth in the Adamson Report, class-wide damages are readily calculable in at least three ways. First, Plaintiffs' experts compared the variable rate charged by Viridian to Viridian's actual, legitimate costs ████████████████████████████████████████ ████████ o calculate, for every relevant utility region on both an annual and monthly basis, Viridian's overcharge of its variable rate customers per unit of consumption (in \$/MWh).[14]  *See* Adamson Report (Ex. A) at §6, Figures 9-19 and Table 2.[15]

---

[13]   Finally, the inclusion of the phrase "other factors" in Viridian's contracts beginning in November 2013 is meaningless.  Allowing Viridian to set its prices based on vague, unspecified "other factors" would render the contract illusory, as it would allow Viridian to set whatever price it wanted.

[14] ███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████

[15] ███████████████████████████████████████████████████
███

REDACTED VERSION

Second, damages may be calculated by comparing Viridian's variable rate to Viridian's internal (and inflated) COGS figures ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████.

Finally, Plaintiffs believe that rescissionary relief is proper here.  If Viridian had not wrongly offered contracts promising variable rates tied to "market conditions," Plaintiffs and Class members may have remained with and/or enrolled with their local electric utility, as the largest and most dominant retailer in each service region.  Plaintiffs' experts have compared Viridian's variable rates to the rates offered by each local utility (*see* Adamson Report (Ex. A) at §4.2 and Figures 6 and 7) and can calculate damages based on the difference between the two (*id.* at §6 and Table 3).  Under any of these three damages scenarios, Plaintiffs can calculate damages by individual class member or on an aggregate basis simply by multiplying the rate differential by the relevant number of MWh of energy purchases.

## III.    LEGAL STANDARD

"Class action lawsuits are an important and valuable part of the legal system when they permit the fair and efficient resolution of legitimate claims of numerous parties by allowing the claims to be aggregated into a single action against a defendant that has allegedly caused harm." Class Action Fairness Act, Pub. L. No. 109-2 , § 2(a)(1), 119 Stat. 4 (2005); *see also Amchem*, 521 U.S. at 617 (the "very core" of the justification for a class action is offering a path to relief that

---

████████████████████████████████████████████████████████
████████████████████████████████████

REDACTED VERSION

otherwise would be too "paltry" for individual suit); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99

(1981) ("[C]lass actions serve an important function in our system of civil justice.").

 Class certification is appropriate if the court determines that the requirements of Rule 23

have been met. *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "On occasion 'it may be

necessary for the court to probe behind the pleadings before coming to rest on the certification

question.'" *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982). But merits questions may

be considered "only to the extent—that they are relevant to determining whether Rule 23

prerequisites for class certification are satisfied. *Amgen Inc. v. Conn. Retirement Plans & Trust

Funds*, 133 S. Ct. 1184, 1195 (2013).

As a prerequisite to class certification, Plaintiffs must demonstrate that the four factors of

Fed. R. Civ. P. 23(a) are met. In addition, Plaintiffs must show that at least one of the requirements

of Fed. R. Civ. P. 23(b) are met. Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(3).

## IV.  PLAINTIFF HAS SATISFIED RULE 23(a)

### A.  The Class is Sufficiently Numerous

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is

impracticable."  In order "[t]o establish that a 'class is so numerous that joinder of all members is

impracticable,' a plaintiff need not show that joinder is impossible."  *Banyai v. Mazur*, 205 F.R.D.

160, 163 (S.D.N.Y. 2002).  Rather, "[t]he Second Circuit has held that a prospective class of forty

or more raises a presumption of numerosity." *LaFlamme v. Carpenters Local #370 Pension Plan,*

212 F.R.D. 448, 452 (N.D.N.Y. 2003) (citing *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d

473, 483 (2d Cir. 1995)); *see also Thompson v. Linvatec Corp.,* No. 06-0404, 2007 WL 1526418,

at *4 (N.D.N.Y. May 22, 2007).

REDACTED VERSION

Here, there is no dispute that Viridian had several orders of magnitude more than forty customers. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ Accordingly, Rule 23(a)(1) is easily satisfied.

### B.  There are Common Questions of Law or Fact

Rule 23(a)(2) (known as "commonality") requires that a plaintiff show that "there are questions of law or fact common to the class." *Wal-Mart,* 131 S. Ct. at 2550-51. To meet this standard, Plaintiffs must demonstrate "that the class members have suffered the same injury" and that the claims they allege "depend upon a common contention." *Id.* at 2551; *see also Sykes v. Mel S. Harris & Associates LLC,* 780 F.3d 70, 84 (2d Cir. 2015) (same). The "common contention" "must be of such a nature that is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart,* 131 S. Ct. at 2551. However, the commonality requirement does not require that the common elements resolve each element of each claim. *Sykes,* 780 F.3d at 86.

Moreover, although Plaintiffs are required to demonstrate the existence of common questions of law or fact to establish commonality, they are ***not*** required to establish that the answers to those common questions will be favorable to the Class. *Amgen,* 133 S. Ct. at 119; *Mahon v. Chicago Title Ins. Co.,* 296 F.R.D. 63, 73 (D. Conn. 2013). For class certification,

---

[16] The relevant document is too large to be filed with ECF, but is available upon request by the Court or should Defendant dispute that Plaintiff has established numerosity.

REDACTED VERSION

Plaintiffs need only establish that common issues *exist,* not that Plaintiffs will ultimately ***prevail***

on those issues.

All three of Plaintiffs' causes of action (unfairness, breach of the covenant of good faith

and fair dealing and deception) revolve around a core factual predicate: Defendant's form contracts

promised that Viridian's variable rates would "fluctuate" or "vary" based on market conditions,

when in fact they did not.  Accordingly, the fundamental question of interpretation of Defendant's

contract language is common to the entire Class.  Also common to all three claims – and to the

Class as a whole – is the question of whether Viridian's variable pricing actually did or did not

"fluctuate" or "vary" based on "market conditions."  As discussed above at Part II.C, this issue is

common to all Class members.  Finally, the issue of damages is also common to the Class.

Whichever theory or theories Plaintiffs ultimately prevail upon, the central question of how

Defendant's violations damaged the Class remains the same, and is addressed by Plaintiffs' expert

on a class-wide basis.  *See* Part F above and Adamson Report (Ex. A) at §6.  The questions not

only satisfy Rule 23(a)(2), but, as discussed in Part V.A below, they predominate as required by

Rule 23(b)(3).

In addition to the overarching common issues that permeate this entire litigation, each of

Plaintiffs' specific claims raises further questions of law or fact common to the entire Class.

### 1.  Plaintiffs' Unfairness Claim Involves Common Issues

The question of whether Viridian engaged in "unfair" pricing practices under CUTPA and

the MCPA is common to all members of the Class.  A CUTPA "unfairness" claim is governed by

the "cigarette rule," which entails an analysis of:

> (1) [W]hether the practice, without necessarily having been previously considered
> unlawful, offends public policy as it has been established by statutes, the common
> law, or otherwise—in other words, it is within at least the penumbra of some
> common law, statutory, or other established concept of unfairness; (2) whether it is

REDACTED VERSION

immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers . . . .

*Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 155 (2005).  A practice can be "unfair" because it violates all three prongs of the "cigarette rule" to a limited extent or because it violates just one of the prongs to a greater extent.  *Id.*  Similarly, Massachusetts law provides that "[a] practice is unfair if it is within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury."  *Linkage Corp. v. Trustees of Boston Univ.*, 679 N.E.2d 191, 209 (Mass. 1997).[17]  Each of these "cigarette rule" elements raises issues that are common to the entire class.[18]

### a.  *Defendant's Actions Offend Public Policy*

The first "unfairness" prong in both Connecticut and Massachusetts concerns whether the challenged practice violates public policy.  By the very definition of "public policy," this plainly is a question common to the entire Class: Plaintiffs either have or have not identified a public policy violated by Defendant.  Here, Plaintiff specifically pleads that Defendant's contracts "do not accurately describe the rates the consumer will be paying *or the circumstances under which*

---

[17]  As this Court (Hall, J.) has recognized, the substantive elements of CUTPA and MCPA claims are materially identical.  *See Country Club Assocs. v. Shaw's Supermarkets, Inc.,* 643 F. Supp. 2d 243, 253-55 (D. Conn. 2009) (declining to reopen judgment under CUTPA because, even if court should have required plaintiff to plead under MCPA rather than proceeding under CUTPA, the result would have been the same "[b]ecause Massachusetts does regulate trade practices in an analogous manner to Connecticut").

[18]  Notably, individual reliance is not an element of an "unfairness" claim in either Connecticut or Massachusetts.  *See Milford Paintball, LLC v. Wampus Milford Assocs., LLC,* 156 Conn. App. 750, 758-59 n. 5 & 6 (2015) ("The plain statutory language provides that a person violates CUTPA by committing deceptive *or* unfair acts … and the trial court in this case relied on the cigarette rule [applicable to unfair acts]. . .  We note that 'the CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain'") (emphasis in original; quoting *Hinchliffe v. American Motors Corp.*, 184 Conn. 607, 617 (1981)); *Hershenow v. Enterprise Rent-A-Car Co. of Boston, Inc.,* 445 Mass. 790, 800 n. 20  (2006).  Accordingly, whether or not Class members may have "relied" on Defendant's representations is irrelevant to the existence of a common question under Plaintiffs' unfairness theory.

REDACTED VERSION

*the rates may change*."  Second Amended Complaint [ECF No. 45] at ¶65(a) (emphasis added).

Not only do CUTPA and the MCPA themselves embody a public policy against lying to consumers, but statutory and regulatory (and therefore public) policy in Connecticut and Massachusetts specifically *require* Electric Supplier contracts to explain "the circumstances under which . . . rates may change" (Connecticut) and make it an "unfair or deceptive act or practice" to "mislead a reasonable consumer" about either "any term of any agreement" for "the distribution price" or the "total delivered price of electricity" (Massachusetts).[19]  As set forth above, ███

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████  Defendant may argue that it somehow has not substantively violated these provisions by charging exorbitant and unjustifiable rates that are not based on market conditions. But even if Defendant were correct (and it is not), the question is still *common* to the entire class.

    **b.  *Defendant's Actions Are Immoral, Unethical, Oppressive or Unscrupulous***

The second "unfairness" prong concerns whether Defendant's conduct is immoral, unethical, oppressive or unscrupulous.  Once again, this is a question common to the entire Class.

---

[19]  Conn. Gen. Stat. §16-245o(f)(2) expressly provides that "[e]ach contract for electric generation services shall contain all material terms of the agreement" including "a clear and conspicuous statement explaining the rates that such consumer will be paying" and "*the circumstances under which the rates may change*"(emphasis added).  Similarly, Massachusetts regulations state that "*[i]t is an unfair or deceptive act or practice* for a retail seller of electricity to make any material representation to the public or to any consumer, either directly or through any type of marketing or agreement. . . .  which the seller knows or should know has the capacity or tendency to deceive or mislead a reasonable consumer . . . in any material respect, including but not limited to representations relating to . . . (d) *any term of any agreement to be entered into by the retail seller of electricity and a consumer [for] the distribution price, the generation price or the total delivered price of electricity* . . . ."  940 CMR §19.04 (emphasis added).

REDACTED VERSION

As discussed above, Defendant's contracts throughout the Class Period promised that Viridian's Variable rate would "fluctuate" or "vary" based on "market conditions." Plaintiffs contend that Defendant has a contractual obligation to base its variable prices on market conditions. Contrary to this obligation, Viridian set its variable rates at levels that are wholly disconnected from market conditions. *See* Parts II.D and II.E above. This conduct would constitute "immoral, unethical, oppressive or unscrupulous behavior" under Connecticut and Massachusetts law. *See Richards v. Direct Energy Services LLC,* 120 F. Supp. 3d 148, 159 (D. Conn. 2015) (allegation that third party electric supplier promised in contract that its "energy prices would reflect the wholesale market rates" but that "the rates [defendant] charged were significantly higher than the wholesale market rates and did not always increase or decrease when the wholesale market rates did" are "the kinds of behaviors that may fall under CUTPA").[20] As with the "public policy" prong, Defendant may disagree, but the only relevant question for class certification is whether this issue is ***common*** to the entire Class.

### c.   *Defendant's Actions Are Substantially Injurious to Consumers*

The final prong of the "cigarette rule" addresses whether the alleged misconduct causes substantial injury to consumers. A plaintiff seeking monetary damages under CUTPA must show that an ascertainable loss was caused "as a result of" the prohibited act. Conn. Gen. Stat. Ann. § 42-110g. This "requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff." *Artie's Auto Body v. Hartford Fire Ins. Co.,* 287 Conn. 208, 218 (2008). Proximate cause is "an actual cause that is a substantial factor in the resulting harm." *Id.* A class-action plaintiff "may rely on generalized evidence to prove causation. . . ." In *Artie's Auto Body,* the

---

[20]  Indeed, such a determination is inherent in this Court's denial of Defendant's motions to dismiss in this litigation.

REDACTED VERSION

Connecticut Supreme Court held that causation was satisfied where defendant's misconduct was a substantial factor in the damages incurred by the class – the suppression of labor rates charged for auto body repairs in Connecticut.   *Id.* at 225.   Although Plaintiffs must estimate aggregate damages for the class as a whole that "roughly reflect the aggregate amount owed to class members … damages need not usually be demonstrated with precision." *Hickory Sec. Ltd. v. Rep. of Argentina*, 493 Fed. App'x. 156, 159 (2d Cir. 2012) (citations omitted).

Here, similarly, generalized evidence establishes causation as to Plaintiffs and the Class. As discussed above in Part II.F, Plaintiffs' damages experts have conducted a detailed analysis that enables them to determine, on a monthly basis, the overcharge per unit of consumption, calculated as the difference between the variable rate Defendant actually charged and the "market conditions" rate ███████████████. *See* Adamson Report (Ex. A) at §§4.1, 6.   This analysis reveals ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ The same substantial injury exists under Plaintiffs' two other damages models.   Moreover, Defendant's misconduct was a substantial factor in this injury: Plaintiffs and the Class would ***not*** have been injured had Defendant honored its contract and in fact based its variable rates on market conditions.

As with the other prongs, Defendant may challenge the sufficiency of Plaintiffs' claim. But as before, the entire Class rises or falls based upon this evidence; accordingly, the issue of damages and the "substantial injury" caused by Defendant's misconduct is common to the entire class.

REDACTED VERSION

### 2. Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Involves Common Issues

The question of whether Viridian violated the covenant of good faith and fair dealing is likewise common to all members of the Class.  In Connecticut and Massachusetts (as in most states), "[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement."  *Gupta v. New Britain General Hospital*, 239 Conn. 574, 598 (1996); *see Druker v. Roland Wm. Jutras Assocs., Inc.,* 370 Mass. 383, 385, 348 N.E.2d 763 (1976) (implied covenant provides "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract") (citation omitted); *see* Restatement (Second) of Contracts, § 205.  A claim for breach of the covenant of good faith and fair dealing is at heart just a claim for breach of contract.  "Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." *Magnan v. Anaconda Industries*, 193 Conn. 558, 567 (1984).  "The covenant logically does not create new contractual obligations, but rather suggests that if several alternative constructions of a contract are possible, the one consistent with fair dealing and the reasonable expectations of the parties ought to be adopted."  *Hoffnagle v. Henderson,* No. CV020813972S, 2003 WL 21150549, at *3 (Conn. Super. Ct. Apr. 17, 2003) (emphasis added), *on reconsideration in part,* 2003 WL 22206236 (Conn. Super. Ct. Sept. 10, 2003).  Accordingly, as with any claim for breach of contract, a signatory's individual "reliance" on specific terms is irrelevant; the contract provides what it provides, and both parties are bound.

In order to establish a violation of the covenant of good faith and fair dealing, a plaintiff must show that "(1) two parties entered into a contract from which the plaintiff reasonably expected a benefit, (2) the defendant's actions denied or obstructed the plaintiff's expected benefit

REDACTED VERSION

of the bargain, and (3) the injurious actions were the product of defendant's bad faith." *Royal Indem. Co. v. King,* 532 F. Supp. 2d 404, 414 (D. Conn. 2008); *see also Weiler v. PortfolioScope, Inc.,* 469 Mass. 75, 82, 12 N.E.3d 354 (2014) (noting that "we look to the [defendant's] manner of performance" in determining whether defendant breached covenant of good faith and fair dealing, and that "bad faith" need not be affirmatively shown, but can also be shown through "a lack of good faith … inferred from the totality of the circumstances"). Here, all of the elements of a claim for breach of the covenant of good faith and fair dealing are uniform across the Class.

First, there is no dispute that Defendant entered a contract with each Plaintiff and Class member. Indeed, Connecticut and Massachusetts law both ***require*** that third-party electric suppliers like Viridian provide (and adhere to) written terms of service.[21] Accordingly, unless Viridian is violating this requirement, there is no question that every Class member has a contract with Defendant. Moreover, all Class members reasonably expected the benefit of the bargain set forth in the contracts – that the variable rate would vary based on market conditions.

Second, Defendant denied every Plaintiff and Class member the benefit of the bargain. As explained above, Defendant's variable price was to vary based on market conditions (*i.e.,* the expected benefit of the bargain). However, as discussed above, Viridian did not provide this pricing. Instead, it exercised its discretion to set exorbitant variable rates that were not remotely based on market conditions, thereby denying the Class the expected benefit.

Finally, Plaintiffs' evidence of bad faith is also equally applicable to all Class members. For example, Defendants' decision to ██████████████████████████████████████████

---

[21] See, e.g., Conn. Gen. Stat. §16-245o(f)(1) ("each electric supplier shall prior to the initiation of electric generations services, provide the potential residential customer with a written notice describing the rates"); 220 CMR §11.06(4)(a) ("*Prior to Initiation of Service by a Competitive Supplier.* Following a Retail Customer's affirmative choice of a Competitive Supplier, the Competitive Supplier shall provide the Retail Customer with . . . the Terms of Service").

REDACTED VERSION

████████████████████████████████████████████████████ is

quintessential price gouging and "bad faith."  All Class members are equally affected by the

ultimate factfinder's resolution of this issue.

### 3.  Plaintiffs' Deception Claim Involves Common Issues

Whether Viridian engaged in "deceptive" practices under CUTPA and the MCPA is also

common to all members of the Class.  In order to establish a claim for a deceptive act or practice,

Plaintiffs must establish (a) that a reasonable consumer would understand Viridian's contract to

represent that Viridian's variable rate would fluctuate in accord with market conditions; (b) that

this representation would be material to reasonable consumers; (c) that Viridian in fact set its

variable rates in a manner that did not vary based on market conditions; and (d) that consumers

suffered an ascertainable loss as a result of the violation.  *See Caldor, Inc. v. Heslin*, 215 Conn.

590, 597 (1990); *Einbinder v. Petro, Inc*., No. AANCV116005353S, 2012 WL 1139032, at *10

(Conn. Super. Ct. Mar. 9, 2012); *Aspinall*, 442 Mass. at 396 (2004).[22]

Each of these elements is common to the entire Class.  As discussed above, a reasonable

consumer's understanding of the relevant contracts is a common issue.  The question of how a

***reasonable*** consumer Class member would understand the relevant contract language is a question

of objective interpretation equally applicable to all Class members.

---

[22]   Reliance is ***not*** an element of a CUTPA or MCPA claim, even under a deception theory. *Hinchliffe v. Am. Motors Corp.,* 184 Conn. 607, 617, 619 (1981) (a CUTPA plaintiff "need not prove reliance or that the representation became part of the basis of the bargain"); *Izzarelli v. R.J. Reynolds Tobacco Co.,* 117 F. Supp. 2d 167, 176 (D. Conn. 2000) ("[u]nlike a claim of fraud, CUTPA does not require reliance or a claim that the misrepresentation became part of the basis of the bargain"); *Aspinall,* 442 Mass at 396 (advertisement is deceptive "when it has the ***capacity*** to mislead consumers") (emphasis added); *Fraser Engineering Co., Inc. v. Desmond,* 26 Mass.App.Ct. 99, 104, 524 N.E.2d 119 (1988) ("proof of actual reliance on a misrepresentation is not required so long as the evidence warrants a finding of a causal relationship between the misrepresentation and the injury to plaintiff").

REDACTED VERSION

A representation is "material" if it is "likely to affect consumer decisions or conduct." *Caldor*, 215 Conn. at 597.[23]   Materiality is judged by an objective "reasonable consumer" standard. *Amgen,* 133 S. Ct. at 1189 ("Because materiality is judged according to an objective standard, the materiality of [defendant's] alleged misrepresentations and omissions is a question common to all members of the class").  Accordingly, this issue is also a matter of common proof.  *See In re Scotts EZ Seed Litig.,* 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (citing *Amgen*).   Here, Defendant's representations concerning how it sets its variable rate – and thus what that price would be – were plainly material, as such fundamental pricing information is "likely to affect consumer decisions or conduct."  Indeed, given that all electricity instantaneously delivered to a consumer is the same, price is the primary material issue to consumers.

As discussed above, Plaintiffs will use common proof to establish the next element: that Viridian set its variable rates in a manner divorced from market conditions.  The Adamson Report shows that



and Defendant's own documents make clear why:

*See* Part II.D above.

---

[23]  The Federal Trade Commission's decision in *In the Matter of Figgie Int'l, Inc.,* 107 F.T.C. 313, 1986 WL 722111 (1986), *aff'd, Figgie Int'l Inc. v. F.T.C.,* 817 F.2d 102 (4th Cir. 1987), which was cited by the *Caldor* court in formulating Connecticut's standard for deceptive practices cases, defined a "material representation" as "one that is likely to affect a consumer's choice of, or conduct regarding, a product or service because it involves some characteristic of that product or service that is important to consumers." *Id.* at *54.  Moreover, as the *Figgie* decision noted, "express claims are presumed material." *Id.; accord, F.T.C. v. Bronson Partners, LLC,* 564 F. Supp. 2d 119, 135 (D. Conn. 2008) (explaining the rationale for the presumption – "[t]he underlying rationale for finding a claim to be presumptively material in both instances is "the assumption that the willingness of a business to promote its products reflects a belief that the consumers are interested in the advertising.") (internal citations and quotations omitted).

REDACTED VERSION

Finally, Plaintiffs will establish that every Class member suffered an ascertainable loss as a result of Defendant's breach through common proof.  As discussed with regard to Plaintiffs' unfairness claim in Part IV.B.1 above, the Adamson report and Defendant's own documents demonstrate that Defendant's failure to honor the language in its own contract caused Plaintiffs and every Class member to be billed exorbitantly high variable rates that were not based on contemporaneous market conditions at all, ███████████████████████  As noted above, Defendant "caused" this ascertainable loss even absent reliance by individual Plaintiffs or Class members on the contract itself, so long as, but for Defendant's breach, Plaintiffs would not have been damaged.

In *Hinchliffe v. Am. Motors Corp.,* 184 Conn. 607, 440 A.2d 810 (1981), a CUTPA deception suit alleging that defendant misrepresented a vehicle as having "full-time four-wheel drive," the Supreme Court held that a CUTPA plaintiff "need not prove reliance or that the representation became part of the basis of the bargain." *Id.* at 617, 440 A.2d at 816. Rather, plaintiff need only show "that, as a result of the unfair or deceptive trade practice, they received something different from that which they had bargained." *Id.* at 619, 440 A.2d at 816. The plaintiff met this standard by introducing evidence from the sticker:  "The trier [of fact] could infer that the presence of the advertised feature added some value to the vehicle because 'Quadra-Trac' was listed on the price sticker as an accessory item included in the vehicle's total price." *Id.* at 619-20, 440 A.2d at 817. Similarly, in *Bailey v. Lanou*, 138 Conn. App. 661, 675, 54 A.3d 198, 208 (2012), plaintiff hired defendant based in part on defendant's representation that he was a licensed home improvement contractor, and that, as a result of defendant's failure to do the job in a workmanlike manner, plaintiff suffered injury.  The Court concluded, "the plaintiff purchased the new driveway in part as a result of the defendant's false representation that he was a licensed home improvement

REDACTED VERSION

contractor, which driveway was different from that for which he bargained. On that basis, the court properly concluded that the plaintiff suffered an ascertainable loss." *Id.*

Here, the Class was told in Defendant's contracts that they would receive, and bargained for a rate based on market conditions. Instead, the Class received rates much higher than they bargained for. Accordingly, this element can be established on a class-wide basis. *Artie's Auto Body,* 287 Conn. at 229 (2008) (generalized proof shows causation and ascertainable loss where Plaintiffs offered to demonstrate, through expert testimony, the general impact of the challenged practice on labor rates, obviating the need for individualized inquiry).

### C. Plaintiffs' Claims are Typical of the Claims or Defenses of the Class

Plaintiffs have also satisfied Rule 23(a)(3), which requires that the representative parties have claims that are "typical of the claims or defenses of the class." This requirement is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Mahon,* 296 F.R.D. at 74. Moreover, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* (citing *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir. 1993) and *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir. 2001)).

Plaintiffs' claims are typical of the claims of all Class members. Plaintiffs, like all Class members, were subject to contracts with Viridian that include Defendant's uniform representations concerning variable pricing. Moreover, Plaintiffs, like all Class members, were variable rate Viridian customers during the Class Period. *See* Second Amended Complaint [ECF 45] at ¶¶40-42, 46-51. Accordingly, they were sold power at variable rates that, contrary to

REDACTED VERSION

Defendant's contract, were completely divorced from market conditions.[24]  *See* Adamson Report (Ex. A) at §4.1.  And, like all Class members, Plaintiffs were damaged by Defendant's conduct because they paid a tremendous premium for their electricity well beyond what Viridian contracted to charge.  *Id.* at §6.  Accordingly, Plaintiffs' claims are typical of the proposed Classes within the meaning of Rule 23(a)(3).

### D. The Named Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Plaintiffs will "fairly and adequately protect the interests of the class" under Rule 23(a)(4). This inquiry focuses on "whether: 1) plaintiff's interests are antagonistic to the interests of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000); *see also Sykes,* 780 F.3d at 90 (reaffirming *Baffa*).   Indeed, the Second Circuit has held that the adequacy requirement is satisfied with respect to lead plaintiffs in consumer cases unless "plaintiff's interests are antagonistic to the interest of other members of the class;" even then, "the conflict must be ***fundamental***" to disqualify a prospective lead plaintiff. *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29, 35 (2d Cir. 2009) (emphasis added); *see also Zyburo v. NCSPlus, Inc.,* 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (quoting *Flag Telecom*).   Plaintiffs who satisfy the typicality requirement are generally considered adequate class representatives. *Hallmark v. Cohen & Slamowitz, LLP*, 293 F.R.D. 410, 418 (W.D.N.Y. 2013); *Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 109 (S.D.N.Y. 2011). Plaintiffs have no conflicts with the Class, much less "fundamental" ones.

---

[24]  To the extent that Plaintiffs – or any Class member – was initially enrolled in a fixed-rate plan before being switched to a variable Plan, Plaintiffs are not pursuing a claim, or seeking damages, regarding such periods.

REDACTED VERSION

Moreover, Plaintiffs have demonstrated that they will vigorously prosecute this litigation on behalf of the Class.  They each consulted with counsel, and then read the complaint, before it was filed.  Deposition of Christopher Kirk / IronMan dated February 4, 2016 ("Kirk Depo") (attached as Exhibit J) at 36-41, 65; Deposition of Stephanie Silver dated February 5, 2015 ("Silver Depo") (excerpts attached as Exhibit K) at 60-61; Deposition of Lori Sanborn dated February 4, 2016 ("Sanborn Depo") (excerpts attached as Exhibit L) at 64, 93-94, 124-26.  They each participated in the discovery process (including sitting for depositions).  At deposition, they each demonstrated familiarity with the basic claims in this litigation.  *See, e.g.,* Kirk Dep. (Ex. J) at 41-42;[25] Silver Dep. (Ex. K) at 21-22;[26] Sanborn Dep. (Ex. L) at 95-96.[27]  They each understand that they are seeking to represent classes of consumers, and that they are responsible for acting on behalf of the class, not solely in their own interests.  *See* Kirk Dep. (Ex. J.) at 47-48; Silver Dep.

---

[25]  Q:   What's the case about?

   Kirk: The case is about the fact that Viridian is charging its customers, or the rate which they charge their customers was adjusted upward to compensate for an increase in the wholesale rate, but when that rate decreased, the rate, the retail rate did not decrease.  And because of that, their margins were artificially inflated.

[26]  Q:   Let me ask you, what are you hoping to accomplish with this lawsuit?

   Silver: I believe that, I believe that Viridian's rates did not follow the wholesale rates that they – I didn't have my contract in front of me.  I don't have the contract. But I do know that at the time, what my understanding was that they were going to follow the wholesale rates.  And I believe that the rates weren't.  The rates were higher than what the utility rates were.

[27]  Q:   You allege in your lawsuit that 'A reasonable consumer would understand that Viridian's variable rates would be reasonably relate to and fluctuate in a manner correlated with the underlying wholesale market rate.  And that although prices would go up when the wholesale prices rose, they would also go down when the wholesale prices decreased.'  Did I read that correctly?

   Sanborn: Yes.

   Q:    Is that the basis of your lawsuit?

   Sanborn:  Yes.

REDACTED VERSION

(Ex. K) at 12-13, 16, 19-21; Sanborn Dep. (Ex. L) at 23-26.   This level of knowledge is more than

sufficient for a class representative.  *Baffa,* 222 F.3d at 61 ("The Supreme Court . . . has expressly

disapproved of attacks on the adequacy of a class representative based on the representative's

[supposed] ignorance."); *see also Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.,*

301 F.R.D. 116, 134 (S.D.N.Y. 2014); *Diaz v. Residential Credit Solutions, Inc.,* 299 F.R.D. 16,

20 (E.D.N.Y. 2014); *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 293 F.R.D.

287, 302 (E.D.N.Y. 2013); *Ackerman v. Coca-Cola Co.,* No. 09 CV 395 DLI RML, 2013 WL

7044866, at *12 (E.D.N.Y. July 18, 2013).

Moreover, Plaintiffs are "entitled to rely on the expertise of counsel in conducting the

litigation*." In re Symbol Technologies, Inc. Sec. Litig.,* No. 05-CV-3923 DRH AKT, 2015 WL

3915477, at *8 (E.D.N.Y. June 25, 2015); *see also Allen v. Dairy Farmers of Am., Inc.,* No. 5:09-

CV-230, 2012 WL 5844871, at *8 (D. Vt. Nov. 19, 2012).

In that regard, Plaintiffs have retained attorneys with significant class action experience.

*See* Izard Nobel Firm Resume (attached hereto as Exhibit M).  Plaintiffs' counsel have already

demonstrated their willingness to prosecute this litigation vigorously through their investigation

of the claims in this action, their drafting of the initial and amended Complaints, their opposition

to Defendant's Motion to Dismiss, the significant discovery conducted to date, their retention of

highly qualified experts to address important elements of Plaintiff's claims and the filing of this

Motion for Class Certification. For these reasons, the adequacy requirement is satisfied.[28]

---

[28] For these same reasons, Rule 23(g) has been satisfied, and the Court should appoint Izard Nobel
LLP as Lead Counsel pursuant to Rule 23(g)(1).

REDACTED VERSION

## V.      PLAINTIFF HAS SATISFIED RULE 23(b)(3)

Plaintiff has also satisfied the requirements of Rule 23(b)(3). First, common questions of law or fact predominate over any purported individual questions. Second, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### A.      Common Questions Of Law Or Fact Predominate

As discussed above in Part IV.B, all three of Plaintiffs' claims rely on the same core theory of liability. Accordingly, not only are there common issues for purposes of Rule 23(a)(2), but those common issues predominate for purposes of Rule 23(b)(3). *See Mahon,* 296 F.R.D. at 75 ("In particular, courts should 'focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual ones.'") (quoting *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y. 1981)); *Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261, 267 (D. Conn. 2002) (propriety of defendant's conduct "is the common liability issue that predominates over all other factual and legal issues.").

Moreover, the common damages issues predominate here. As the Supreme Court has long held, Plaintiff needs only reasonable grounds for her damages calculations:

> While the damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate… [C]ases will often occur in which it is evident that large damages have resulted, but where no reliable data or element of certainty can be found by which to measure with accuracy the amount… To deny the injured party the right to recover any actual damages in such cases, because they are of a nature which cannot be thus certainly measured, would be to enable parties to profit by, and speculate upon, their own wrongs, encourage violence and invite depredation. Such is not, and cannot be the law…

*Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 563-64 (1931) (citations and quotation marks omitted); *see also Hickory Sec. Ltd.,* 493 Fed. App'x. at 159. This principle

REDACTED VERSION

remains in full force through the present day, particularly in the context of class certification. *See Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1433 (2013) (citing *Story Parchment,* 282 U.S. at 563-64). Plaintiffs' damages, and those of the Class as a whole, are established in the Adamson Report. The Adamson Report establishes that Defendant caused Plaintiffs and the Class harm by charging variable rates that, in contravention of Viridian's contract, did ***not*** "fluctuate" with market conditions. Adamson Report (Ex. A) at §4.1. The Adamson Report also provides a straightforward, uniform method (and, indeed, three uniform methods) for fairly calculating reasonable damages, as discussed above. Accordingly, Plaintiffs' model sufficiently measures damages attributable to their legal theories on a class-wide basis, and thus satisfies *Comcast.*

### B. A Class Action is Superior to Other Methods of Adjudication

Rule 23(b)(3) also provides that the Court determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Rule 23(b)(3) provides the following nonexclusive factors to guide the Court in determining "superiority":

> (A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . a member of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Consideration of the factors enumerated in Rule 23(b)(3)(A)-(D) confirm that a class action is the superior method for the fair and efficient adjudication of this case.

### 1. Rule 23(b)(3)(A)

In a case with thousands of claimants, a class member's interest in having the claims of the class aggregated in a single class action lawsuit substantially outweighs the interest of a class member in individual control of the litigation, especially where, as here, the damages suffered by each class member are not large. *See Ebin,* 297 F.R.D. at 567 ("the class action device, at its very

REDACTED VERSION

core, is designed for cases like this where a large number of consumers have been defrauded but no one consumer has suffered an injury sufficiently large as to justify bringing an individual lawsuit."); *see also Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("The more claimants there are, the more likely a class action is to yield substantial economies in litigation"). As the Supreme Court has observed, class actions permit plaintiffs to pool claims which would be uneconomical to litigate individually, and "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *see Carnegie,* 376 F.3d at 661 ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30") (emphasis in original).[29]

The same considerations apply here: the value of any individual's claim is so small that it cannot be effectively vindicated *except* through a class action. Few, if any, class members would have the resources to prosecute the claims individually, and the maximum possible recovery could never justify the cost of litigation. This benefit of the class action mechanism is compelling, and clearly outweighs any speculative interest of each class member in controlling the prosecution of separate actions.

---

[29] *See also In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d at 130-31 ("As the Supreme Court has said, Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery"); *Sykes,* 780 F.3d at 93 (class action "is, without question, more efficient than requiring thousands of debtors to sue individually") (internal quotations and citations omitted); *Mahon,* 296 F.R.D. at 78-79 (finding class actions appropriate where "each potential plaintiff's claim amounts to but a few hundred dollars, at most because it is unthinkable that a potential plaintiff would have the resources or the desire to employ such resources in adjudicating individual claims.") (internal quotations and citations omitted); *Wise v. Cavalry Portfolio Servs., LLC,* No. 3:09-CV-86 CSH, 2010 WL 3724249, at *7 (D. Conn. Sept. 15, 2010) ("The reality is that no more than a few potential class members, at most, are likely to bring individual actions. Were it otherwise, Defendant would certainly jump at the opportunity to limit its potential liability through class certification.").

REDACTED VERSION

### 2.      Rule 23(b)(3)(B)

Although there are several litigations against Viridian on behalf of consumers in other markets, Plaintiff's Counsel are not aware of any pending litigation in which the claims at issue in this case are being separately pursued by any class members on behalf of any Connecticut and Massachusetts consumer(s).  As a result, the second factor (the extent and nature of any litigation concerning the controversy already commenced by members of the class) supports the conclusion that a class action is the superior method for resolution of the claims in the Complaint.  *D'Arpa v. Runway Towing Corp.,* No. 12-CV-1120, 2013 WL 3010810, at *22 (E.D.N.Y. June 18, 2013) (finding class action superior where "[n]one of the factors mentioned in Rule 23(b)(3) that might cast doubt on the superiority of a class action is present" such as the existence of "any other pending 'litigation concerning [this] controversy,' Rule 23(b)(3)(B).") (internal quotations and citations omitted).

### 3.      Rule 23(b)(3)(C)

Consideration of the third factor (the desirability of concentrating the litigation of the claims in the particular forum) further demonstrates that a class action is superior. Although Defendant previously filed a motion to dismiss, it made no claim that the case should have been brought in a more convenient forum.  The Class includes consumers only from Connecticut and the neighboring state of Massachusetts, and Defendant itself is headquartered in Connecticut. Accordingly, this Court has proven to be a convenient forum for all parties.

### 4.      Rule 23(b)(3)(D)

An analysis of the fourth factor (the difficulties that are likely to be encountered in the management of a class action) confirms the superiority of having the claims of the Classes resolved in a class action. The Second Circuit has cautioned that denying certification on manageability

REDACTED VERSION

grounds is disfavored. *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d at 140, *over'd on other grounds by Brown v. Kelly,* 609 F.3d 467 (2d Cir. 2010).

The Court will not encounter any difficulties in the management of the Class, which consists of consumers in Connecticut and Massachusetts.  As discussed above, the consumer protection statutes in these states (CUTPA and MCPA) are materially identical.  Both prohibit unfair and deceptive acts; (ii) do not require a showing of intent to deceive; (iii) do not require a showing of actual reliance by unnamed class members; and (iv) provide for a consumer's private right of action to recover damages**.**  *See* Parts IV.B. 1 and 3 above.  Similarly, the law in Connecticut and Massachusetts regarding breach of the covenant of good faith and fair dealing are substantively identical.  *See* Part IV.B.2 above.  Because there are ***no*** material differences among the state laws at issue, the Court will not encounter difficulties in the management of the litigation under Rule 23(b)(3)(D) and the Class should be certified.  *See, e.g., In re Pharmaceutical Industry Average Wholesale Price Litig.,* 230 F.R.D. 61 (D. Mass. 2005) (certifying class under ***vast majority of nationwide*** consumer protection statutes).[30]

Moreover, any slight variations between Connecticut and Massachusetts consumer protection law regarding punitive damages are easily manageable at trial.  While both Connecticut and Massachusetts provide that consumers are entitled to recover their actual damages, CUTPA also allows for "punitive damages" in an amount in the court's "discretion" (Conn. Gen. Stat. § 42-110g(a)), while the MCPA allows the court to award "up to three but not less than two times"

---

[30]   Where applicable state laws are substantially similar, courts have no difficulty certifying multistate classes.  *See, e.g., Spencer v. Hartford Fin. Servs. Grp., Inc.,* 256 F.R.D. 284, 288, 301 (D. Conn. 2009) (Hall, J.) (certifying nationwide state-law fraud claim brought by three class representatives because "the elements of fraud are substantially similar from state to state.").  *Ebin,* 45 F. Supp. 3d at 399 (certifying nationwide common law fraud and negligent misrepresentation class, noting that "while some variation exists among states . . . any such variation is unlikely to lead to actual variation in adjudication of liability").

REDACTED VERSION

actual damages "if the court finds that the use or employment of the act or practice was a willful or knowing violation" (Mass. Gen. Laws. Ann ch. 93A, § 9). These limited variations can easily be addressed at trial. Moreover, there are no statute of limitations issues given that the Class Period begins less than two years before this case was first filed in November 2014 [ECF No. 1].

As to the evidence, there are only two variations of the applicable contract language.

███████████████████████████████████████████████████████████████████

Finally, as set forth in the Adamson Report, evidence concerning the rates Viridian charged and should have charged is easily manageable. Accordingly, manageability is not a concern.

## VI.    THE CLASS IS ASCERTAINABLE

Although not specified in the Federal Rules, courts in the Second Circuit impose an additional requirement that a plaintiff define the class in such a way that it can be ascertained. The requirement "is not a demanding one, but is designed only to prevent the certification of a class whose membership is truly indeterminable." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 293 F.R.D. 287, 299 (E.D.N.Y. 2013) (internal quotations and citations omitted). As this Court has stated, "[a]n identifiable class exists if its members can be ascertained by reference to objective criteria. That is, the class description must be sufficiently definite so that it is administratively feasible for the [c]ourt to determine whether a particular individual is a member of the proposed class." *Kaye v. Amicus Mediation & Arbitration Grp., Inc.,* 300 F.R.D. 67, 77 (D. Conn. 2014) (internal quotations and citations omitted).

Plaintiff seeks to certify a class of every Connecticut and Massachusetts variable rate customer of Viridian during the Class Period. Viridian itself maintains records of its customers. Moreover, even if Viridian did not, Plaintiffs could subpoena that information from each of the relevant electric utilities (such as CL&P, UI, etc.).

REDACTED VERSION

## VII.   CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court certify the class described herein, appoint Plaintiffs as class representatives, and appoint Class Counsel as indicated in the proposed order.


DATED: April 1, 2016                    Respectfully submitted,


                                        PLAINTIFFS

                                          \s\ Robert A. Izard
                                        By: Robert A. Izard (ct01601)
                                           Seth R. Klein (ct18121)
                                           IZARD NOBEL LLP
                                           29 South Main Street, Suite 305
                                           West Hartford, CT  06107
                                           (860) 493-6292

                                        *Counsel for Plaintiffs*

REDACTED VERSION

## <u>CERTIFICATE OF SERVICE</u>

I, Seth R. Klein, hereby certify that on this 1st day of April, 2016, the foregoing was filed electronically in redacted form.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this document though the court's CM/ECF system.  In addition, an unredacted version (with all exhibits) was sent by electronic mail to the following counsel of record for Defendant:

> Daniel S. Blynn      DSBlynn@Venable.com
> Eric S. Berman      ESBerman@Venable.com
> Patrick McHugh    pmchugh@patrickmchughlaw.com

> <u>/s/ Seth R. Klein</u>
> Seth R. Klein

38