# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORI SANBORN, BDK ALLIANCE LLC, IRON MAN LLC, STEPHANIE SILVER, DAVID STEKETEE, SUSANNA MIRKIN, BORIS MIRKIN, ELIZABETH HEMBLING, PATRICIA KULESA, STEWART CONNARD and STEVEN LANDAU on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>VIRIDIAN ENERGY, INC., VIRIDIAN ENERGY PA, LLC, VIRIDIAN ENERGY NY, LLC and VIRIDIAN ENERGY, LLC,<br><br>　　　　Defendants. | No. 3:14-cv-01731 (SRU)<br><br><br>(CORRECTED) AMENDED CONSOLIDATED CLASS ACTION COMPLAINT<br><br><br><br>December 7, 2017 |

1.　　Plaintiffs Lori Sanborn, BDK Alliance, LLC, Iron Man LLC, Stephanie Silver, David Steketee, Susanna Mirkin, Boris Mirkin, Elizabeth Hembling, Patricia Kulesa, Stewart Connard and Steven Landau ("Plaintiffs"), on behalf of themselves and all persons similarly situated, by and through their attorneys, allege the following with knowledge as to their own acts, and upon information and belief as to all other acts.

## INTRODUCTION

2.　　Plaintiffs bring this action on behalf of themselves and classes of all similarly situated customers in against Defendants Viridian Energy, Inc., Viridian Energy PA, LLC, Viridian Energy NY, LLC and Viridian Energy, LLC (collectively "Viridian" or "Defendant") arising out of Viridian's unfair, deceptive, unconscionable and bad faith billing for "supplying" energy to residential and commercial consumers.

3.      Viridian entices customers to sign up for its service by offering low initial rates for energy.  When the "teaser rate" period expires, however, customers are rolled over into month-to-month variable rate plans with exorbitant rates.

4.      Viridian represents that it offers "variable rate" energy plans to  consumers that are tied to the market rate in the wholesale energy market.   However, contrary to Viridian's representations and contractual obligations, Viridian consistently and improperly charges an extraordinarily high premium rate for gas and electricity *regardless* of fluctuations in the underlying wholesale market price.  Indeed, as set forth below, Viridian can charge its consumers *four, five and even six times* the underlying market rate, notwithstanding Viridian's representations that its variable rates "reflect" monthly wholesale energy prices.

5.      In particular, Viridian's rates go *up* to match spikes in the underlying market price. However, when the market price goes *down*, Viridian's rate remains at an inflated level higher than the market rate.  Through this scheme, Viridian subjects consumers to consistent and unlawful "heads I win, tails you lose" pricing.

6.      Viridian  also  markets  itself  as  providing  green  energy  at  prices  lower  than conventional "brown" energy.  Viridian describes this seeming "win, win" in the following ways in its marketing materials and on its website:

> "With Viridian, the choice is simple – consumers are able to lower their energy bills and help the environment."[1]

> "[C]ustomers make a difference in the environment and save money[.]"[2]

> "How many . . . people would like to save money on their energy while helping the

---

[1] Viridian Power with Purpose Brochure, attached to the Consolidated Complaint as Exhibit 1.

[2] *Id*.

environment?"[3]

"[Y]ou'll be doing your part to do something better for the environment while saving money on your energy costs at the same time."[4]

"Choose Green Energy.  Get Affordability Too."[5]

"Our Mission: Viridian was built on the idea that customers should never have to choose between affordability and sustainability."[6]

"Choosing a more responsible energy product shouldn't hurt your budget."[7]

"MAKING A DIFFERENCE JUST GOT REALLY EASY"[8]

"Making the right choice for the environment doesn't have to cost more.  In fact the average Everyday Green customer saves money on energy costs over time."[9]

"AFFORDABLE GREEN ENERGY"[10]

"Finally, AFFORDABLE GREEN ENERGY[.]  It's safe and easy to switch!"[11]

"Ask us how to $AVE MONEY on your ELECTRIC BILL."[12]

---

[3] *Id.*

[4] October 16, 2013 Letter from Viridian Founder and CEO Michael Fallquist to the Mirkins, attached to the Consolidated Complaint as Exhibit 2.

[5] https://web.archive.org/web/20150817070637/http://www.viridian.com/.

[6] Viridian 2012 Sustainability Brochure, attached to the Consolidated Complaint as Exhibit 3.

[7] http://www.viridian.com/comp-affordably-green.asp?CO_LA=US_EN.

[8] Viridian Affordable Green Energy Brochure, attached to the Consolidated Complaint as Exhibit 4.

[9] *Id.*

[10] *Id.*

[11] Affordable Green Energy Flyer, attached to the Consolidated Complaint as Exhibit 5.

[12] $ave Money on Your Electric Bill Flyer, attached to the Consolidated Complaint as Exhibit 6.

7.     In addition to marketing touting that customers will save money compared to what their traditional utility would have charged, Viridian's customer contract promises that customers who switch will save money compared what their utility would have charged and that Viridian's energy prices will be affordable.

8.     The truth is, however, that Viridian's energy prices are not lower than the price of conventional energy, they are not affordable, and its rates are not based on wholesale market conditions.  Rather, Viridian charges much more than sellers of conventional energy, and its rates go up even when the wholesale market rate goes down.

9.     This unfair and deceptive scheme of charging inflated electric and gas prices is intentionally designed to maximize revenue for Viridian.

10.    Plaintiffs and other Viridian customers have been injured by Viridian's unlawful practices.  Accordingly, Plaintiffs, on behalf of themselves and the Classes, seek damages, restitution and injunctive relief for Viridian's violation of state consumer protection statutes, breach of contract and breach of the implied covenant of good faith and fair dealing.

11.    Only through a class action can the Company's customers remedy Viridian's ongoing wrongdoing.  Because the monetary damages suffered by each customer are small compared to the much higher cost a single customer would incur in trying to challenge Viridian's unlawful practices, it makes no financial sense for an individual customer to bring his or her own lawsuit.  Further, many customers don't realize they are victims of Viridian's deceptive conduct.

12.    With this class action, Plaintiffs and the Classes seek to level the playing field and make sure that companies like Viridian engage in fair and upright business practices.

## PARTIES

13.    Plaintiff Lori Sanborn is a resident of Stoughton, Massachusetts.

14.     Plaintiff BDK Alliance is limited liability corporation with its principal place of business in Guilford, Connecticut,

15.     Plaintiff Iron Man LLC is a limited liability corporation with its principal place of business in Monroe, Connecticut.

16.     Plaintiff Stephanie Silver is a resident of Enfield, Connecticut.

17.     Plaintiff David Steketee is a resident of Madison, New Jersey.

18.     Plaintiffs Susanna Mirkin and Boris Mirkin are married and reside in Brooklyn, New York.

19.     Plaintiff Elizabeth Hembling, is a resident of Madison, New Jersey.

20.     Plaintiff Patricia Kulesa,is a resident of Maryland.

21.     Plaintiff, Stewart Connard is a resident of  Maryland.

22.     Plaintiff Steven Landau is a resident of Jenkintown, Pennsylvania.

23.     Defendant Viridian Energy, Inc. is a corporation organized under the laws of Nevada whose principal place of business is located at 535 Connecticut Avenue, 6th Floor, Norwalk, C Connecticut 06824.  Upon information and belief, Viridian does not have an office or keep assets in the state of Massachusetts.

24.     Defendant Viridian Energy PA LLC, registered in Pennsylvania as a foreign company, is a Nevada Limited Liability Company whose registered agent is *CSC Services of Nevada, Inc.* with a service address of 2215-B Renaissance Drive, Las Vegas, Nevada  89119. Defendant Viridian Energy PA LLC, has an office address located at 535 Connecticut Avenue, 6th Floor, Norwalk, Connecticut 06824.

25.     Defendant Viridian Energy NY, LLC is a New York registered domestic Limited Liability Company whose registered agent is *Corporation Service Company* with an service

address of 80 State Street, Albany, NY 12207.  Defendant Viridian Energy NY LLC has an office

address located at 535 Connecticut Avenue, 6th Floor, Norwalk, Connecticut 06824.

26.     Defendant Viridian Energy, LLC is a Nevada corporation with its principal place

of business located at 535 Connecticut Avenue, 6th Floor, Norwalk, Connecticut 06824.

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over this civil action under 28 U.S.C. § 1332(d) because

this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, the amount in

controversy exceeds $5,000,000 and there are members of the Class who are citizens of a different

state than Defendant Viridian.

28.     This Court has personal jurisdiction over Viridian because Viridian maintains an

office in Connecticut and because Viridian has tens of thousands of customers in Connecticut and

thereby conducts business in this state.

29.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Viridian

resides in Stamford, Connecticut.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**A.     Energy Deregulation and the Role of Energy Suppliers like Viridian**

30.     In the late 90s and early 2000s, many states moved to deregulate at least part of the

gas and electricity supply services then performed by large public utilities.  Delivery of energy to

a consumer requires both the production of energy and the transmission of that gas or electricity

from the producer to the consumer.  The typical pattern of deregulation was to require the public

utilities to divest their energy generation assets such as coal, gas and nuclear power plants.  But,

the regulated utilities continued distributing energy from producers to consumers through

transmission lines.

31.     When deregulation occurred, the business of energy *supply* was opened to competition and consumers were allowed to select the companies from whom they would purchase their gas and electricity.  However, states generally set a "standard offer" or "default rate," available to all customers in each public utility's service area.  In some states, such as Connecticut, the standard offer is a single, flat rate which is fixed for a period of months, while other states such as Massachusetts have both a fixed rate standard offer and a standard offer rate that varies each month.

32.     As a result of the deregulation of energy supply, several different parties are now involved in the supply of gas and electricity to residential consumers.  Certain companies, such as Dominion, produce energy ("Generation Companies").  Other companies, such as Connecticut Light & Power ("CL&P") in Connecticut, Jersey Central Power and Light ("JCP&L") in New Jersey and the National Grid in Massachusetts and New York distribute gas and electricity from Generation Companies to the end user ("Distribution Companies").  Although some Generation Companies sell energy directly to consumers, including residential customers, most sell their energy on the wholesale market to companies that market to retail customers ("Energy Suppliers").

33.     The market for wholesale electricity in the New England states is under the administration of an independent, not-for-profit corporation formed in accordance with the recommendations of the Federal Energy Regulatory Commission, called ISO New England (an "Independent System Operator" or "ISO").  The market for wholesale electricity in New Jersey is under the administration of an independent, not-for-profit corporation formed in accordance with the recommendations of the Federal Energy Regulatory Commission, called PJM Interconnection LLC ("PJM").  The market for wholesale electricity in New York is under the administration of an independent, not-for-profit corporation formed in accordance with the recommendations of the

Federal Energy Regulatory Commission, called New York Independent System Operator ("NYISO").

34.     ISO New England, PJM, and the NYISO coordinate and direct the generation and flow of electricity throughout their regions, ensuring that electric supply exactly meets demand throughout the network.

35.     The wholesale markets managed by ISO New England, PJM, and the NYISO determine where and when electricity will be made by Generation Companies and the wholesale prices that will be paid for that electricity through competitive bids.   These markets are robust. For example, for New England alone "[m]ore than 500 companies participate in these markets, buying and selling between $6-$14 billion of electric power and related products annually." http://www.iso-ne.com/about/what-we-do/three-roles/administering-markets. The  bid  process determines the Generation Company that will make each unit of electricity and the wholesale price each Energy Supplier will pay to each Generator for each unit of energy delivered to specific locations throughout the region.

36.     The markets for wholesale natural gas in New England, New Jersey, and New York are an amalgamation of a number of subsidiary markets.  There is a physical market, in which natural gas is produced, transported, stored and consumed.  There is also a financial market in which physical natural gas is bought and sold as a financial product derived from physical natural gas.

37.     Energy Suppliers play a middleman role: they purchase energy directly or indirectly from Generation Companies and sell that energy to end-user consumers.  However, Energy Suppliers do not *deliver* energy to consumers.  Rather, Generation Companies deliver the energy to Distribution Companies, which in turn deliver it to the ultimate consumer.  Energy Suppliers

merely buy gas and electricity at the wholesale rate and then sell that energy to end-users with a mark-up. Thus, Energy Suppliers are essentially brokers and traders: they neither make nor deliver gas or electricity, but merely buy energy from the Generation Companies and re-sell it to consumers.

38.     Like other Energy Suppliers, Viridian purchases energy on the wholesale market and sells it to consumers. For example, as Viridian admits in its "Disclosure Label," the New England power grid receives power from a variety of power plants and transmits that power throughout New England as needed. Viridian buys and resells "System Power" pursuant to "system power contracts," which is power purchased from the regional electricity market, not from specific power generation plants.

39.     Viridian's prices are not approved by states' regulatory authorities. Rather, Viridian and other Energy Suppliers are free to set their own rates for supplying energy to consumers. And Viridian, like all other suppliers, relies upon the Distribution Companies to deliver the energy it purchases on the wholesale market to its customers. The Distribution Companies charge separately for their services, using rates that are reviewed and approved by the states' regulatory agencies.

40.     Energy Suppliers may contract with consumers to supply electricity and/or natural gas on either a "Fixed" or "Variable" rate basis. Under a Fixed contract, the Supplier agrees to supply energy at a set rate for a certain number of months.

41.     Under a Variable rate contract, the Supplier may vary the rate it charges on a periodic basis (often monthly).

   **B.     Viridian's Excessive Rates**

42.     Viridian has offered various Fixed and Variable rate plans in at least 13 states and the District of Columbia, including contracts that charge a low promotional "teaser" rate which is fixed for a set number of months before automatically rolling into a Variable rate plan.

43.     Viridian represents that its Variable rate plan is based upon the wholesale market rate.  For example, Viridian's Massachusetts Disclosure Statement states that the variable rate "may fluctuate from month to month" based on applicable "wholesale market conditions."

44.     Most importantly, Viridian's Variable rate "Terms of Service" make this express link between the variable rate charged by the company and the underlying wholesale market rate for gas and electricity.

45.     For example, Viridian's Massachusetts Terms of Service state that the variable rate "will vary based on several factors, including but not limited to, market conditions, operations costs, and other factors. . . ."

46.     Viridian's Connecticut and New York Terms of Service similarly state that the variable rate "may fluctuate each month based on the wholesale market conditions applicable" in the customer's area.

47.     Viridian's New Jersey Terms of Service also state that the variable rate will vary "based on several factors, including but not limited to market conditions, operations costs, and other factors and may include an introductory rate for such time as indicated in your Enrollment Documentation ("Variable Rate")."

48.     The Pennsylvania Terms of Service likewise provide that "[u]nder Viridian's Variable Price, your price may fluctuate each month based on wholesale market conditions applicable to the DC's service territory."

49.     The Maryland Contract provides, in relevant part, that the "variable price" of energy "may fluctuate from month-to-month generally based on such factors as load ratio, energy market pricing, transmission costs, company operating factors and other market price related factors."

50.     Upon information and belief, the Delaware Contract is identical in all relevant respects to the New Jersey Contract.

51.     Accordingly, a reasonable consumer would understand that Viridian's Variable rates would be reasonably related to and fluctuate in a manner correlated with the underlying wholesale market rate, and that, although prices would go up when wholesale prices rose, they would also go down when wholesale prices decreased, enabling consumers to take advantage of market lows.

52.     Instead, and contrary to reasonable consumer expectation, Viridian used its Variable rates as a pure profit center that was not tied to underlying wholesale market rates. Viridian increased the rates charged to Class members when wholesale prices rose, but kept them level, sometimes as much as *four, five or even six times* the wholesale market rates when the wholesale prices fell.

53.     For example, the chart below sets forth (1) the average wholesale price (in dollars per kilowatt hour) of electricity delivered to Connecticut for each month during the period from November 2013 through March 2015, as reported by ISO-New England;[13] (2) the highest non-

---

[13] This is the "Total Wholesale Rate" paid by Suppliers, including not only the wholesale price of power but also all of ISO-New England's charges, such as its charges for capacity, Net Commitment Period Compensation (NCPC), Ancillary Markets, and Wholesale Market Services, as reported in ISO New England's monthly Wholesale Load Cost Reports.

promotional variable rates Viridian charged to consumers in Connecticut for those same months;[14] (3) the resulting spread between Viridian's rates and the average wholesale price; and (4) the Viridian price compared to the average wholesale price, expressed as a percentage.

| Month | Total Wholesale Rate for Connecticut (cents/kilowatt hour) | Viridian Price (cents/kilowatt hour) | Viridian's Spread (cents/kilowatt hour) | Viridian's Price as Percentage of Wholesale Rate |
|---|---|---|---|---|
| **November 2013** | 5.344 | 14.49 | 9.146 | 271% |
| **December 2014** | 10.588 | 15.49 | 4.902 | 146% |
| **January 2014** | 18.615 | 16.49 | -2.125 | 89% |
| **February 2014** | 15.803 | 23.49 | 7.687 | 149% |
| **March 2014** | 12.312 | 24.00 | 11.688 | 195% |
| **April 2014** | 4.689 | 24.00 | 19.311 | 512% |
| **May 2014** | 4.192 | 24.00 | 19.808 | 573% |
| **June 2014** | 4.538 | 24.00 | 19.462 | 529% |
| **July 2014** | 4.182 | 24.00 | 19.818 | 574% |
| **August 2014** | 3.755 | 24.00 | 20.245 | 639% |
| **September 2014** | 4.632 | 24.00 | 19.368 | 518% |
| **October 2014** | 3.748 | 24.00 | 20.252 | 640% |
| **November 2014** | 5.140 | 19.00 | 13.86 | 370% |
| **December 2014** | 5.199 | 19.00 | 13.801 | 365% |
| **January 2015** | 7.382 | 20.00 | 12.618 | 271% |
| **February 2015** | 13.443 | 18.90 | 5.457 | 141% |
| **March 2015** | 6.669 | 18.90 | 12.231 | 283% |

---

[14] The information for the period from March of 2014-March of 2015 comes from Viridian's website, where, pursuant to Connecticut law, it is now required to post its highest and lowest rates for the past 12 months. For months prior to March of 2014, the chart includes Viridian's rates for its 100% renewable power option, as reported in filings Viridian made to Connecticut's Public Utility Regulatory Authority, which appears to correspond to Viridian's highest rate charged. This is a more than fair point of comparison, since on information and belief the cost to Viridian of purchasing the necessary Renewable Energy Credits, or "RECs", to market its plan as 100% renewable, is negligible. For example, CL&P offers a "Sterling Energy" 100% renewable energy plan for only ***$0.01*** more than its Standard rate.

54.     There was, accordingly, a huge disparity between the wholesale rates Viridian paid for electricity[15] and the variable rates that it charged its customers.  There was also a huge disparity between the Viridian variable rate and the fixed, no risk, market based rate offered by CL&P which was not reasonable given how low wholesale rates were.  This is graphically demonstrated by the following chart, which shows the total wholesale price paid by Viridian and the retail price it charged its Connecticut customers during the period from August of 2013 through March of 2015 (with CL&P's Standard Service Rate during the same period added for comparison):



55.     Accordingly, Viridian routinely charges Class members a Variable electric rate that is as much as six times higher than the underlying market rate.  Additionally, upon information

---

[15] The wholesale price for electricity in the three pricing zones ISO New England established in Massachusetts and the single pricing zone it established in Connecticut is not always identical, but it is always very close.  For example, during period covered by the chart in Paragraph 42, the difference in the monthly average wholesale price in Connecticut and in Southeast Massachusetts where Plaintiff Sanborn resides was only higher than 4 percent during one month (September of 2014), when it was 5 percent, and during 14 of the months the difference was less than 2 percent.

and belief, none of Viridian's non-promotional variable rates have matched, much less beat, the standard offer fixed rates in over two years.

56.     Viridian's Variable rate for consumers who did not purchase 100% renewable electricity was only slightly less egregious.  For example, throughout the summer and fall of 2014, Viridian charged Connecticut customers 17.49 cents rather than 23.99 cents per kWh, which is still, outrageously, over *four times* the total wholesale rates during that period.[16]

57.     The same is true in New Jersey.  Defendant's variable rates were not based on market conditions.  From March to September 2014, the variable rates Defendant charged Plaintiff Steketee rose.  During this same time period, wholesale electric rates fell over 50%, and Defendant's premium above the wholesale rate exploded, from 124% in March to 429% in August, 2014.

58.     For example, the chart below sets forth (1) the average wholesale price (in dollars per kilowatt hour) of electricity delivered in PJM's market for each month during the period from March 2014 through October 2014, as reported by PJM; (2) the rates Viridian charged to Plaintiff Steketee for those same months; and (3) the resulting percentage premium that Viridian charged Steketee over the wholesale rate on an average per-month basis:[17]

|  | Mar -14 | Apr-14 | May 14 | Jun-14 | Jul 14 | Aug-14 | Sep-14 | Oct-14 |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |

---

[16] Given that it does not cost Energy Suppliers that much more to offer plans that can be marketed as "100 percent renewable," Viridian's decision to charge its 100 percent renewable customers over *six cents more* per kilowatt hour flies in the face of the Company's claim that its "unique and inspiring value proposition" is to "[c]hange the way customers see green energy" and demonstrate "that green energy *doesn't have to cost more* . . . ." http://www.viridian.com/Custom/Cust077/PersonalPages/ AboutViridian.aspx (emphasis added).

[17] Although Plaintiff does not yet have the PJM prices for the period November 2014 through February 2015, Viridian charged Steketee 17.99 cents per kilowatt hour for each of those months except November, 2014, when it charged 16.99 cents.

| **Average Wholesale** | $0.0765 | $0.047 | $0.044 | $0.044 | $0.038 | $0.034 | $0.036 | $0.037 |
|---|---|---|---|---|---|---|---|---|
| **Viridian** | 0.1717 | 0.1749 | $0.1749 | $0.1799 | $0.1799 | $0.1799 | $0.1799 | $0.1799 |
| **Viridian Premium *ABOVE* Wholesale Price** | **124%** | **272%** | **298%** | **309%** | **373%** | **429%** | **399%** | **386%** |

59.     There was, accordingly, a huge disparity between the wholesale rates Viridian paid for electricity and the variable rates that it charged its customers.  By way of comparison, JCP&L's standard offer rates during the same period were 10.5403 cents per kilowatt hour during the winter months and, during the summer months, 9.5755 cents per hour for the first 600 kilowatts used, and 10.5012 cents per kilowatt hour thereafter.  Unlike Viridian's variable rates, the JCP&L rates were fixed and certain—customers knew in advance what they would be, and bore no risk of price increases in the event of a sudden spike in wholesale energy costs.  Under these circumstances, it would have been reasonable to expect that Viridian's rates would have been at least competitive, if not lower, than JCP&L's rates during those months when the wholesale price was at its lowest, such as the period from July to August of 2014.  In fact, Viridian's prices were *least* competitive during that period.

60.     Not only were Viridian's variable rates exceptionally high, they were also unaffected by declines in the wholesale price of power.  During the period from March to August of 2014, for example, wholesale prices declined by more than 50 percent—at first sharply, and then more gradually—going from 7.65 cents per kilowatt hour to 3.4 cents per kilowatt hour.  At the same time, Viridian's variable rates actually *increased.*  This is graphically shown by the

following chart, which shows the wholesale price paid by Viridian and the retail price it charged

Plaintiff Steketee during the period from March 2014 through October 2014:



61.      New York consumers were also harmed by Viridian's energy pricing practices.  In

or around the fall of 2013, Viridian, through one of its direct-marketing associates who used

Viridian's uniform marketing materials convinced the Mirkins that Viridian's green energy was

less expensive than conventional energy and was competitively-priced.  Based on these statements,

the Mirkins became Viridian energy customers in or around October 2013.  Plaintiffs believed that

by signing up with Viridian, they would be charged less than what their traditional utility would

have charged.  Only Susanna Mirkin's name is listed on Plaintiffs' energy bills, but both Susanna

Mirkin and Boris Mirkin participated in the decision to switch.

62.      Upon information and belief, the direct-marketing associate that solicited the

Mirkins showed Viridian's marketing material to the Mirkins.  Upon information and belief the

Viridian marketing material used by the associate was identical or substantially similar to the

material in Exhibits 3 and 4.

63.      On October 2, 2013 Viridian sent an email to Mr. Mirkin with the subject line

"Thank you for enrolling with Viridian Energy!"  The email states that Viridian's energy is

"affordable" and that by signing up to Viridian the Mirkins will "save money" on their energy costs as compared to what their utility would have charged. The email also contains a link to Viridian's Terms and Conditions.

64.     According to Viridian, on October 16, 2015 the Company then mailed the Mirkin Plaintiffs a copy Viridian's Terms and Conditions, a "welcome letter" congratulating them on selecting Viridian, and a copy of the Company's 2012 Sustainability Brochure. *See* Exhibit 2 (welcome letter); Exhibit 3 (Sustainability Brochure); attached to the Consolidated Complaint Exhibit 7 (Terms and Conditions). Similar to the October 2, 2013 email, the welcome letter begins with the statement "Thank you for enrolling with Viridian Energy!" Exhibit 2. Like the email the welcome letter states that Defendant's energy is "affordable" and that by switching to Viridian the Mirkins will "save money" on their energy costs as compared to what they would have paid their utility. *Id.*

65.     Viridian's Terms and Conditions state "[t]his Disclosure Statement/Terms and Conditions, the Welcome Letter and the Enrollment Form create your agreement with Viridian (the 'Agreement') . . . ." Exhibit 7.[18] The contract also states that Viridian's variable energy rates "may fluctuate each month based on the wholesale market conditions applicable" in the customer's area. *Id.*

66.     For their first six months as Viridian customers, the Mirkins paid a fixed "teaser" rate of 8.99¢ per kWh for their electricity.

67.     Starting on or about June 11, 2014, however, Viridian started charging the Mirkins a variable rate for their electricity. The Mirkins' rates immediately shot up. Specifically,

---

[18] Upon information and belief, other Class members received welcome letters with the same or a substantially similar statement that by switching to Viridian they would be saving money on their utility bills. Upon information and belief, these Plaintiffs' applicable Viridian customer contract incorporated the welcome letters' statements in to the contract.

Plaintiffs' teaser rate of 8.99¢ per kWh skyrocketed to 15.4889¢ per kWh for the billing period ending on July 10, 2014. In August 2014, Viridian increased the Mirkins' rate yet again, this time to 16.49¢ per kWh, almost twice the rate of their expired teaser rate. And in September 2014, the last month the Mirkins were on Viridian's variable rate plan, Viridian kept the rate at 16.49¢ per kWh.

68.   During just three months that the Mirkins were on Viridian's variable-rate plan, they paid $60.28 more than they would have if they had switched to their local utility (Con Edison) upon the expiration of Viridian's teaser rate.

69.   Similar to other reasonable consumers who were harmed by Viridian's conduct, the Mirkins had no choice but to pay Viridian's inflated rates.

70.   If Viridian had given the Mirkins adequate and legally compliant disclosures concerning its variable rates, they never would have signed up to Viridian, much less purchased energy through Viridian's variable rate plan. In fact, instead of alerting consumers to the risks of its variable rates, Viridian's marketing is deceptive because it highlights that Viridian's energy is less expensive than traditional energy.

71.   Yet Viridian's energy was not less expensive than the cost of conventional energy, because Viridian charged the Mirkins $60.28 more than their traditional utility would have charged. As such, Viridian's representation to consumers that its green energy is less expensive than traditional energy is demonstrably false.

72.   Viridian's prices are also not based on wholesale market rates. Rather, Viridian uses its variable rates as a pure profit center, charging well in excess of the wholesale market rate. From June through September 2014, when the Mirkins were enrolled in Viridian's variable rate plan, Viridian charged Plaintiffs rates that were well over the wholesale rate. Further, during July 2014 when market rates declined, Viridian's rates inexplicably *increased*. The chart below sets

forth (1) the wholesale price of the electricity the Mirkins consumed (in cents per kilowatt hour);[19] (2) the rates Viridian charged to Plaintiffs for those same months; and (3) the resulting percentage premium that Viridian charged the Mirkins over the wholesale rate for each bill.

| Billing Period | 6-11-14 to 7-11-14 | 7-11-14 to 8-11-14 | 8-11-14 to 9-10-14 |
|---|---|---|---|
| Wholesale Price | 11.58¢ per kWh | 8.79¢ per kWh | 9.17¢ per kWh |
| Viridian Rate | 15.4889¢ per kWh | 16.49¢ per kWh | 16.49¢ per kWh |
| Viridian Premium *ABOVE* Wholesale Price | 34% | 88% | 80% |

73.     By way of comparison, charges set by the Mirkins' traditional utility during the same time period would have resulted in bills that were lower than Viridian's by $11.86 (June), $26.17 (July), and $25.25 (August).  Accordingly, Viridian routinely charges its variable rate customers a rate that is well in excess of the underlying wholesale market rate and bears no discernable relationship to market conditions, going up when the market rate is declining.

74.     Notably, Viridian charges these exorbitant premiums without adding any value to the consumer whatsoever.  As detailed above, Viridian does not either produce or transport energy. It has no role in running or maintaining energy generation or transport facilities; it does no hook-ups or emergency response.  Indeed, Viridian does not even handle customer billing: that, too, is handled by the Distribution Company.  Essentially, all that Viridian does is act as a trader in the transaction.  Yet it charges much more than the Generation Companies receive for making energy

---

[19] This is the "Total Wholesale Rate" paid by Suppliers, including not only the wholesale price of electricity but also NYISO's charges, such as its charges for energy, capacity, ancillary services, uplift and NYISO Operations.

and the Distribution Companies receive for transmitting gas and electricity, maintaining power and gas lines, and handling emergency services and customer billing and calls.[20]

75.     Moreover, Viridian's costs, other than its wholesale cost of energy, are relatively fixed and could not have justified the massive increases alleged above.  For example, Viridian's ancillary and capacity charges and other regulatory costs did not fluctuate to any material extent and, in particular, did not fluctuate to a material extent in relation to wholesale energy prices (these additional costs are included in the "total wholesale rate" in the above charts).  Viridian's other material costs were for operations, and included costs, for example, relating to rent, equipment, overhead, employees, etc. were also relatively fixed and could not justify the price variations alleged above.

76.     Accordingly, Viridian's representation to consumers concerning its Variable pricing plan—that the Variable rate is "market-based"—is patently false.  In particular, although Viridian may *increase* its Variable rate in response to *rising* wholesale prices (as illustrated above), Viridian fails to *decrease* its prices in response to a *falling* wholesale market price.  For example, the average wholesale price in Connecticut dropped every month from January to May of 2014, ending the period at a price that was 77 percent lower than the January high.  During the same period, Viridian's price actually *rose* by *42* percent from January to February, and *stayed* at the astronomical rate of 24 cents per kilowatt hour through September.  At one point, Viridian's price premium was an incredible ***640 percent*** above the total wholesale price.

---

[20] For example, in May 2015 CL&P was charging 6.7 cents per kilowatt hour plus a flat charge of $19.25 for distribution services, while Viridian's price for its services was 18.9 cents per kilowatt hour for customers on its 100 percent renewable plan.  According to the U.S. Energy Information Administration, the   average   household   in   Connecticut   uses   731   kilowatt   hours   per   month. http://www.eia.gov/tools/faqs/faq.cfm?id=97&t=3   Such an average household would pay CL&P about $68 for electricity, but if they were with Viridian their energy supply charge would be $138—more than twice as much.

**C.     Plaintiffs Suffered Injury Due To Viridian's Improper Business Practices**

77.     Plaintiff Lori Sanborn has been on Viridian's Variable rate plan since January, 2014.

78.     Plaintiff Sanborn paid Viridian's exorbitant Variable energy rates and thereby suffered monetary damages as a result of Viridian's conduct as set forth above.  For example, from April through October, 2014, Plaintiff paid Viridian 17.49 cents per kWh for electricity, the same amount charged comparable customers in Connecticut, over *4 times* the total wholesale rate when she should have paid a substantially lower amount.[21]

79.     Plaintiff Sanborn suffered an ascertainable loss.  Defendant's acts as alleged above were a reasonably foreseeable result of and a substantial factor in causing that loss.

80.     Plaintiff BDK Alliance was on Viridian's Variable rate plan from March to September, 2014**.**

81.     Plaintiff BDK Alliance reasonably relied on Viridian's false statement in its Terms and Conditions that Viridian's Variable rate was based on the underlying wholesale market rate.

82.     Plaintiff BDK Alliance paid Viridian's exorbitant Variable electricity rates and thereby suffered monetary damages as a result of Viridian's conduct as set forth above. Its rate in March was 16.99 cents per kwh, and it was 17.49 cents per kwh for each month thereafter.

83.     Plaintiff Iron Man LLC was on Viridian's Variable rate plan from June 2013 to February, 2015.

84.     Plaintiff Iron Man LLC paid Viridian's exorbitant Variable energy rates and thereby suffered monetary damages as a result of Viridian's conduct as set forth above.  While its

---

[21] As noted above, the total wholesale rates in southeastern Massachusetts vary slightly from the total wholesale rates in Connecticut.  The variance was typically less than two percent and almost never more than 4 percent.

electricity rate in 2013 ranged from 11.99 to 13.99 cents per kWh, it skyrocketed from February 2014 to February 2015, where it ranged between 16.99 and 17.99 cents per kWh for each month during that period when it should have been a substantially lower amount.

85.     Plaintiff Iron Man LLC suffered an ascertainable loss.  Defendant's acts as alleged above were a reasonably foreseeable result of and a substantial factor in causing that loss.

86.     Plaintiff Stephanie Silver was on Viridian's Variable rate plan from July, 2013 to January, 2014**.**

87.     Plaintiff Silver paid Viridian's exorbitant Variable energy rates and thereby suffered monetary damages as a result of Viridian's conduct as set forth above.  For example, from July through December, 2014, Plaintiff paid Viridian 12.99 cents per kWh for electricity, and paid 14.99 cents per kWh in December and January when she should have paid a substantially lower amount.

88.     Plaintiff Silver suffered an ascertainable loss.  Defendant's acts as alleged above were a reasonably foreseeable result of and a substantial factor in causing that loss.

89.     Plaintiff David Steketee was on Viridian's Variable rate plan from March, 2014 to February, 2015.

90.     Plaintiff Steketee paid Viridian's exorbitant Variable energy rates and thereby suffered an ascertainable loss as a result of Viridian's conduct as set forth above.  As alleged above, Plaintiff paid Viridian between 17.17 and 17.99 cents per kWh for electricity during the period he was a variable rate customer which was far in excess of the amount he should have paid if Viridian's rates were based on market conditions.

91.     Plaintiffs Susana and Boris Mirkin were on Viridian's Variable rate plan from June, 2014 to September, 2014.

92. The Mirkins paid Viridian's exorbitant Variable energy rates and thereby suffered an ascertainable loss as a result of Viridian's conduct as set forth above.   As alleged above, the Mirkins paid Viridian between 15.49 and 16.49 cents per kWh for electricity during the period they were variable rate customers, which was far in excess of the amount they should have paid if Viridian's rates were based on market conditions.  The amounts the Mirkins paid Viridian were also in excess of what they would have paid their local utility.

93. During the relevant period, Plaintiff Patricia Kulesa switched energy suppliers from her local regulated utility to Viridian.  Plaintiff Kulesa did not obtain the savings promised by her contract. Plaintiff Kulesa paid substantially more for her energy than she would have had she stayed with her previous provider.  When she complained to Viridian, it offered Plaintiff Kulesa a refund of $221, which amount was never paid.

94. Plaintiff Stewart Connard owns homes in Maryland and Delaware.  Plaintiff Connard paid more for his energy in both Maryland and Delaware than he would have had he continued his pre-existing relationships with his previous providers and did not obtain the promised savings in his energy consumption.

95. In or around July 2013, Plaintiff Elizabeth Hembling switched her energy supplier from Baltimore Gas and Electric ("BGE") to Viridian.  After the expiration of Plaintiff Hembling's fixed rate term, Viridian, without notice, switched her to a variable rate plan.  At that point her energy bill skyrocketed, substantially increasing each month.  Viridian's electric rates were 82% higher than BGE's rates in April 2014 and continued to increase to 109% higher by November 2014.  Thus, Plaintiff Hembling did not obtain the promised savings on her energy consumption.

96. Plaintiff Landau's Viridian Energy account was established on or about July 18, 2013.

23

97.     Landau was initially placed on a fixed rate contract for a six-month period at 7.99¢ (0.0799) per kWh.

98.     On March 9, 2014, unbeknownst to Landau, Defendant placed him in Viridian's variable rate plan, and Landau was instantly charged almost 50% more than he would have been paying had he been receiving service from PECO, his local utility provider.

99.     On Defendant's variable rate plan, Landau was consistently over-charged well above market rates for electricity until he canceled his service with Defendant on or about April 15, 2014.  The following table compares the rates charged to Landau by Defendant to the rates that Landau would have been charged by his local utility provider, PECO.  From February 11, 2014 until April 15, 2015, Landau was paying, on average, 49.8% more for his electric service than if he had not signed up with Defendant.

| | Date | PECO | Viridian | |
|---|---|---|---|---|
| | 12/9/13-1/11/14 | 0.0977 | 0.079902 | |
| | 1/11/14-2/11/14 | 0.0977 | 0.079898 | |
| | 2/11/14-3/12/14 | 0.0877 | 0.1749 | |
| | 3/12/14-4/10/14 | 0.0877 | 0.1749 | |
| | 4/10/14-5/11/14 | 0.0877 | 0.1799 | |
| | 5/11/14-6/10/14 | 0.0858 | 0.1799 | |
| | 6/10/14-7/11/14 | 0.0858 | 0.1799 | |
| | 7/11/14-8/10/14 | 0.0858 | 0.1799 | |
| | 8/10/14-9/9/14 | 0.0825 | 0.1799 | |
| | 9/9/14-10/8/14 | 0.0825 | 0.1699 | |
| | 10/8/14-11/6/14 | 0.0825 | 0.1699 | |
| | 11/6/14-12/9/14 | 0.0907 | 0.1799 | |
| | 12/9/14-1/12/15 | 0.0907 | 0.1799 | |
| | 1/12/15-2/11/15 | 0.0907 | 0.176568 | |
| | 2/11/15-3/12/15 | 0.0866 | 0.169898 | |
| | 3/12/15-4/12/15 | 0.0866 | 0.164736 | |
| | 4/12/15-4/15/15 | 0.0866 | 0.149928 | |
| | Average price  2/11/14-4/15/15 | 0.08666 | 0.174002 | |
| | Viridian average price is 49.8% more | | | |

100.     Landau would not have enrolled in Defendant Viridian Energy's program but for Defendant's promises of savings and rates competitive with the market.  Had Landau known that the rates he would be charged by Defendant would be substantially higher than the rates he would have paid with PECO he would not have agreed to receive Defendant's services.

101.     As a result of Defendant's misconduct, Landau has incurred significant overcharges for his electrical service.

## CLASS ACTION ALLEGATIONS

102.     Plaintiffs, Lori Sanborn, Iron Man LLC, Stephanie Silver, David Steketee, Susanna Mirkin, Boris Mirkin, Elizabeth Hembling, Patricia Kulesa, Stewart Connard, and Steven Landau, bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure behalf of themselves and the following class of similarly situated persons:

> All persons enrolled in a Viridian Energy, Inc., variable rate energy plan in connection with a property located within the United States at any time within the applicable statutes of limitations preceding the filing of this action through and including the date of class certification (the "Residential Class").

103.     Plaintiff BDK Alliance brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure behalf of themselves and the following class of similarly situated persons:

> All commercial entities enrolled in a Viridian Energy, Inc., variable rate energy plan in connection with a property located within the United States at any time within the applicable statutes of limitations preceding the filing of this action through and including the date of class certification (the "Commercial Class").

104.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes or to propose additional sub-classes as might be necessary or appropriate.

105.     Excluded from the Classes are Defendant, including any parent, subsidiary, affiliate or person controlled by Defendant; Defendant's officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families.

106.    The proposed Classes meet all requirements for class certification.  The Classes satisfy the numerosity standard.  The Classes are believed to number in the hundreds of thousands of persons.  As a result, joinder of all Class members in a single action is impracticable.  On information and belief, Class members can be identified by Viridian and Distribution Company records.

107.    There are questions of fact and law common to the Classes which predominate over any questions affecting only individual members.  The questions of law and fact common to the Classes arising from Viridian's actions include, without limitation, whether Viridian:

        a.   committed unfair or deceptive trade practices by its Variable electric rate policies and practices;

        b.   breached its contracts with Plaintiffs and the Classes;

        c.   breached its covenant of good faith and fair dealing with regard to its Variable rate contracts;

        d.   and continues to commit wrongdoing through its Variable rate policies and practices.

108.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity to other available methods for the fair and efficient adjudication of this controversy.

109.    Plaintiffs are adequate representatives of the Classes because they are members of the Classes and their interests do not conflict with the interests of the members of the Classes they seek to represent.  The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their undersigned counsel, who have extensive experience prosecuting complex class action litigation.

Case 3:14-cv-01731-SRU   Document 159   Filed 02/13/18   Page 27 of 41

110.	Plaintiffs' claims are typical of the claims of the Classes because they arise out of the same conduct, policies, and practices of Viridian with respect to its Variable electric rate policies and practices.  Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other putative class member.

111.	Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy.  It would be impracticable and undesirable for each class member who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

112.	Notice can be provided to Class members by using techniques and forms of notice similar to those customarily used in other class actions.

## CLAIMS FOR RELIEF

## COUNT I

## VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT

113.	Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

114.	Plaintiffs bring this count individually and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Classes.

115.	Viridian is engaged in "trade" and "commerce" as it offers gas and electricity for sale to consumers.

116.	Viridian's conduct as alleged above constitutes unfair practices:

27

a. Viridian's contracts do not accurately describe the rates the customer will be paying or the circumstances under which the rates may change.

b. Viridian's acts and practices with regard to its exorbitant Variable energy rates as alleged above are immoral, unethical, oppressive and unscrupulous.

c. Viridian's conduct is substantially injurious to consumers. Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for energy but for Viridian's immoral, unethical, oppressive and unscrupulous practices and procedures. Consumers have thus overpaid for their energy and such injury is not outweighed by any countervailing benefits to consumers or competition. No benefit to consumers or competition results from Viridian's conduct, nor could consumers reasonably have avoided the injury.

117. Viridian's conduct as alleged above also constitutes a deceptive act or practice. Viridian's Variable energy rate representations as set forth above were and are likely to mislead consumers and Viridian intended that consumers rely upon those representations. Plaintiffs and other reasonable consumers reasonably interpreted Defendant's representations to mean that Viridian's Variable rates track the underlying wholesale energy rates (when in fact they do not). Viridian's representations were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of energy from Viridian pursuant to Variable rate contracts.

118. The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiffs and the Class to suffer an ascertainable loss and substantial injury, and were a

substantial factor causing that injury, when Plaintiffs and Class members paid an exorbitant premium for energy over wholesale market rates.

119.    The foregoing actions constitute unfair and deceptive practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq*

120.    Plaintiffs and the Class are entitled to recover damages and other appropriate relief, as alleged below.

## COUNT II

## VIOLATION OF MASSACHUSETTS UNFAIR TRADE PRACTICES ACT

121.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

122.    Plaintiffs bring this count individually and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Classes.

123.    Viridian is engaged in "trade" and "commerce" as it offers gas and electricity for sale to consumers.

124.    Viridian's conduct as alleged above constitutes unfair practices:

   a.  Viridian's contracts do not accurately describe the rates the customer will be paying or the circumstances under which the rates may change.

   b.  Viridian's acts and practices with regard to its exorbitant Variable energy rates as alleged above are immoral, unethical, oppressive and unscrupulous.

   c.  Viridian's conduct is substantially injurious to consumers.  Such conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid such a high price for energy but for Viridian's immoral, unethical, oppressive and unscrupulous practices and procedures.

Consumers have thus overpaid for their energy and such injury is not outweighed by any countervailing benefits to consumers or competition. No benefit to consumers or competition results from Viridian's conduct, nor could consumers reasonably have avoided the injury.

125.    Viridian's conduct as alleged above also constitutes a deceptive act or practice. Viridian's Variable energy rate representations as set forth above were and are likely to mislead consumers and Viridian intended that consumers rely upon those representations. Plaintiffs and other reasonable consumers reasonably interpreted Defendant's representations to mean that Viridian's Variable rates track the underlying wholesale energy rates (when in fact they do not). Viridian's representations were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of energy from Viridian pursuant to Variable rate contracts.

126.    The foregoing unfair and deceptive practices directly, foreseeably and proximately caused Plaintiffs and the Class to suffer an ascertainable loss and substantial injury, and were a substantial factor causing that injury, when Plaintiffs and Class members paid an exorbitant premium for energy over wholesale market rates.

127.    The foregoing actions constitute unfair and deceptive practices in violation of the Massachusetts Regulation of Business Practices for Consumers' Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 1.[22]

128.    Plaintiffs and the Classes are entitled to recover damages and other appropriate relief, as alleged below.

---

[22] Although not required as alleged above, Plaintiff Sanborn has made demand under Mass. Gen. Laws Ann. ch. 93A.

## COUNT III

### VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT

129. Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

130. Plaintiffs bring this count individually and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Classes.

131. Viridian is engaged in "trade" and "commerce" as it offers gas and electricity for sale to consumers.

132. Viridian's conduct as alleged above constitutes an unconscionable and unlawful commercial practice.

133. Viridian's conduct as alleged above also constitutes a deceptive act or practice. Viridian's Variable energy rate representations as set forth above were and are likely to mislead consumers and Viridian intended that consumers rely upon those representations. Viridian's representations were material to a reasonable consumer and likely to affect consumer decisions and conduct, including purchases of energy from Viridian pursuant to Variable rate contracts.

134. The foregoing unlawful and deceptive practices directly, foreseeably and proximately caused Plaintiff and the Classes to suffer an ascertainable loss and substantial injury when they paid an exorbitant premium for energy over wholesale market rates.

135. The foregoing actions constitute unlawful and deceptive practices in violation of N.J.S.A. 56:8-2.

136.     Plaintiff and the Class are entitled to recover damages and other appropriate relief, as alleged below, under N.J.S.A. 56:8-19.

## COUNT IV

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349-d(3)

137.     Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

138.     In 2011 New York enacted a special consumer protection statute targeting deceptive conduct by Energy Supply companies ("ESCOs") like Viridian.  *See* N.Y. G.B.L. §349-d.  New York General Business Law §349-d(3) provides that "[n]o person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the marketing of energy services."

139.     Defendant offers for sale energy services for and on behalf of an ESCO.

140.     Plaintiffs bring this claim under New York General Business Law §349-d(3) on their own behalf and on behalf of each member of the Class.

141.     Defendant has engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. G.B.L. § 349-d(3) by marketing its green energy as less expensive than traditional energy.  Viridian also fails to disclose to consumers that the actual rates that it charges on its variable-rate plans are more expensive than the cost of conventional energy.

142.     The aforementioned acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

143.     As a direct and proximate result of Defendant's unlawful deceptive acts and

practices, Plaintiffs and the Classes have suffered injury and monetary damages in an amount to be determined at the trial of this action but not less than $500 for each violation, such damages to be trebled, plus attorneys' fees and expenses.

144.    Plaintiffs and the other members of the Class further seek an order enjoining Defendant from undertaking any further unlawful conduct.  Pursuant to N.Y. G.B.L. § 349-d(10), this Court has the power to award such relief.

## COUNT V

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

145.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

146.    Plaintiffs bring this claim under N.Y. G.B.L. §349 on their own behalf and on behalf of each member of the Classes.

147.    Defendant has engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. G.B.L. § 349 by marketing its green energy as less expensive than traditional energy.  Viridian also fails to disclose to consumers that the actual rates that it charges on its variable-rate plans are more expensive than the cost of conventional energy.

148.    The aforementioned acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

149.    As a direct and proximate result of Defendant's unlawful deceptive acts and practices, Plaintiffs and the Classes have suffered injury and monetary damages in an amount to be determined at the trial of this action but not less than $50 for each violation, such damages to be trebled, plus attorney's fees and expenses.

150.    Plaintiffs and the other members of the Classes further seek equitable relief

against Defendant.  Pursuant to N.Y. G.B.L. §349, this Court has the power to award such relief,

including but not limited to, an order declaring Defendant's practices as alleged herein to be

unlawful, an order enjoining Defendant from undertaking any further unlawful conduct, and an

order directing Defendant to refund to Plaintiffs and the Classes all amounts wrongfully

assessed, collected, or withheld.

## COUNT VI

### VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES
### AND CONSUMER PROTECTION LAW

151.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though

set forth herein.

152.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law

("UTPCPL") protects consumers against "unfair or deceptive acts or practices" in connection

with the sale or advertisement of any merchandise.  73 PS. § 201-1 *et seq*.

153.    Defendant engaged in unfair, unlawful, and deceptive acts in trade and commerce

which have the capacity and tendency to deceive and did deceive Plaintiffs and Class members

and damaged Plaintiff and Class members.

154.    Defendant represented that its energy supply rates would be market-based and

competitive.  However, consumers did not save money with Defendant.  In fact, Defendant 's

actual rates were excessive, unreasonable, and bore no reasonable relationship to market

conditions.

155.    Defendant committed an unlawful, deceptive, and unconscionable trade practice

by inducing its customers to switch from other providers and/or to remain with Viridian and then

charging them exorbitant, arbitrary rates that were not based on market.

156.    Defendant wrongfully concealed, suppressed, and omitted to disclose that its

average rates were not "market-based."

157.    Defendant's misrepresentations and omissions had the capacity to mislead consumers into believing that Defendant's rates would be significantly lower than the amounts Defendant actually charged.  Plaintiff and the Class Members suffered damages as a result Defendant's misrepresentations and omissions.

158.    Defendant's practices are grossly disproportionate with the industry.  Upon information and belief, most ESCOs do charge competitive market-based rates which generally meet or beat a customer's local public utility.  On the occasions where a private supplier's rates are higher than the public utility, it is usually only by a very small percentage.

159.    Because of Defendant's unlawful, deceptive, unfair, and unconscionable trade practice and scheme, Plaintiff and the Class Members have suffered injuries and damages in an amount to be determined at trial.  Pursuant to the *Pennsylvania Unfair Trade Practices and Consumer Protection Law*, this Court has the power to enjoin Defendant's conduct.  Unless enjoined by this Court, Defendant will continue its unlawful practice of charging excessive undisclosed rates to its customers.

<u>**COUNT VII**</u>

**BREACH OF CONTRACT**

160.    Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

161.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Classes.

162.    In relevant part, Viridian's customer contracts state that Viridian's variable rates will be based on wholesale market conditions.

163.   Defendant Viridian has breached its contract with Plaintiffs and the Class by charging exorbitant energy rates that are not based on wholesale market conditions.

164.   Viridian's customer contract states that customers who switch will save money on their energy costs compared to what consumers' utilities would have charged.

165.   Defendant Viridian has breached its contract with Plaintiffs and the Class by charging exorbitant energy rates that are higher than the rates the customers' existing utilities would have charged.

166.   Viridian's customer contract states that Defendant's energy rates are affordable.

167.   Defendant Viridian has breached its contract with Plaintiffs and the Class by charging exorbitant energy rates that are not affordable.

168.   By reason of the foregoing, Plaintiffs and the Class have suffered injury and money damages in an amount to be determined at the trial of this action.

## COUNT VIII

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

169.   Plaintiffs repeat and reallege the preceding and subsequent paragraphs as though set forth herein.

170.   All contracts contain an implied covenant of good faith and fair dealing, including Plaintiffs' and Class members' contracts with Viridian.

171.   Viridian's customer contract gives Viridian discretion concerning the monthly rates charged under Variable rate contracts and any increases or decreases to the rate to reflect the changes in the wholesale energy market.

172.   As alleged herein, Viridian has used its discretion to bill exorbitant rates that are not tied to the wholesale market.  For example, Viridian has used its discretion to *increase* the

monthly Variable rate when wholesale markets rise, but not to commensurately *decrease* the monthly Variable rate when wholesale markets fall. As a result, consumers are billed exorbitant energy rates.

173. Viridian's performance of its discretionary functions under the Terms of Service as alleged herein to maximize its revenue from Variable electric rates impedes the right of Plaintiffs and other Class members to receive benefits that they reasonably expected to receive under the contract.

174. On information and belief, Viridian's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Viridian's revenue at the expense of its customers and in contravention of their reasonable expectations as customers of Viridian.

175. Viridian has breached the covenant of good faith and fair dealing in the Terms of Service through its Variable electric rate policies and practices as alleged herein.

176. Plaintiffs and members of the putative Class have sustained damages as a result of Viridian's breaches as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the putative Classes, request that this Court enter judgment against Defendant and in favor of Plaintiffs and award the following relief:

(a) Certification of the proposed Classes;

(b) Injunctive relief enjoining Viridian from charging exorbitant Variable energy rates under their current policies and from engaging in the wrongful, deceptive, unfair, and unconscionable practices alleged herein;

(c)     A declaration that Defendant's actions as alleged herein are unlawful;

(d)     Damages in an amount to be determined at trial, including actual, statutory, and punitive damages;

(e)     Disgorgement and restitution of all exorbitant rates paid to Viridian by Plaintiff and the putative Class as a result of the wrongs alleged herein;

(f)     Pre- and post- judgment interest at the maximum rate permitted by applicable law;

(g)     Attorneys' fees, costs, and expenses as available under the law; and

(h)     Such other and additional relief as the Court may find just and equitable.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action so triable.

DATED: December 7, 2017

PLAINTIFFS

\s\ Robert A. Izard

By: Robert A. Izard, Esq. (ct01601)
Craig A. Raabe, Esq. (ct04116)
Seth R. Klein, Esq. (ct18121)
**Izard Kindall & Raabe LLP**
29 South Main Street, Suite 305
West Hartford, CT  06107
Phone: (860) 493-6292
e-mail: rizard@ikrlaw.com
craabe@ikrlaw.com
sklein@ikrlaw.com

*Attorneys for Plaintiffs Lori Sanborn, BDK Alliance, LLC. Iron Man LLC, Stephanie Sliver, David Steketee, and the Classes*

\s\ Steven L. Wittels

By: Steven L. Wittels, Esq.
J. Burkett McInturff, Esq.

38

Tiasha Palikovic, Esq.
**Wittels Law, P.C.**
18 Half Mile Road
Armonk, NY 10504
Phone: (914) 319-9945
Facsimile: (914) 273-2563
e-mail: slw@wittelslaw.com
        jbm@wittelslaw.com
        tpalikovic@wittelslaw.com


Daniel Hymowitz, Esq.
Andrey Belenky, Esq.
**Hymowitz Law Group, PLLC**
45 Broadway, 27th Floor
New York, NY 10006
Phone: 212-913-0401
Facsimile: (866) 521-6040
e-mail: daniel@hymowitzlaw.com
        abelenky@hymowitzlaw.com


***Attorneys for Plaintiffs Susanna Mirkin, Boris Mirkin,
and the Classes***


    \s\ Laurie Rubinow
By: Laurie Rubinow, Esq. (ct27243)
    James E. Miller, Esq. (ct21560)
    **Shepherd, Finkelman, Miller & Shah, LLP**
    65 Main Street
    Chester, CT  06412
    Phone: (860) 1100
    e-mail: lrubinow@sfmslaw.com
            jmiller@sfmslaw.com


Charles J. LaDuca, Esq.
Beatrice Yakubu, Esq.
**Cuneo Gilbert & LaDuca, LLP**
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Phone: (202) 789-3960
e-mail: byakubu@cuneolaw.com


Richard D. Greenfield, Esq.
Marguerite R. Goodman, Esq.
**Greenfield & Goodman, LLC**

250 Hudson Street – 8th Floor
New York, NY  10013
Phone: (917) 495-4446
e-mail: rdg@twowhitehats.com

***Attorneys for Plaintiffs Elizabeth Hembling, Patricia Kulesa, Stewart Connard and the Classes***


   \s\ Jonathan Shub          
By: Jonathan Shub, Esq.
     **Kohn, Swift & Graf, P.C.**
     Identification No: 53965
     One South Broad Street
     Suite 2100
     Philadelphia, PA 19107
     Phone: (215) 564-2300
     Fax: (215) 851-8029
     jshub@kohnswift.com

     Troy M. Frederick, Esq.
     **Marcus & Mack, P.C.**
     Identification No: 207461
     57 South Sixth Street
     Indiana, PA 15701
     Phone: (724) 349-5602
     Fax: (724) 349-8362
     TFrederick@MarcusandMack.com

***Attorneys for Plaintiff Steven Landau and the Classes***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certify that on this 13th day of February, 2018, a copy of the foregoing Amended Consolidated Class Action Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By:     \s\ Seth R. Klein
                       Seth R. Klein